# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

LLOYD MARTLEY,                          )
                                    )
           Plaintiff,        )
                                    )
v.                                      )      Case No.  19-02138-DDC-GEB
                                    )
CITY OF BASEHOR, KANSAS                 )
                                    )
           Defendant.        )
_____ )

## MEMORANDUM AND ORDER

On October 9, 2019, the Court convened a motion hearing to address Defendant's Motion to Disqualify Patrick Reavey as Plaintiff's Counsel (**ECF No. 7**).  Plaintiff appeared in person and through counsel, Patrick G. Reavey.  Defendant appeared through counsel, J. Steven Pigg.  After careful review of Plaintiffs' Motion and Memorandum in Support (ECF No. 8), Plaintiff's Response to Motion to Disqualify his Counsel (ECF No. 13), Plaintiff's Supplement to his Response (ECF No. 16), Defendant's Reply in Support of Motion to Disqualify (ECF No. 17), all attached exhibits, and hearing arguments of counsel, the Court, for the reasons outlined below, **DENIES** Defendant's Motion to Disqualify Patrick Reavey as Plaintiff's Counsel.

## I.      Factual Background

### A.      Nature of the Case

On March 12, 2019, Plaintiff Lloyd Martley ("Martley") filed a Complaint against Defendant City of Basehor, Kansas ("City") alleging violation of the Equal Pay Act

("EPA").[1]  Martley served as the City's police chief from 2008 until July of 2018.  At various times between 2009 and July of 2018, Martley, in addition to serving as police chief, also served as city administrator.  Martley retired from both positions in July of 2018.[2]

After Martley's retirement, the City hired a female as the city administrator ("New City Administrator").  Martley alleges the City paid the New City Administrator $180,000 more in benefits and wages than what Martley received in 2016, 2017 and 2018, despite Martley performing the same role, duties, and functions as the New City Administrator.  Thus, Martley contends the City paid him significantly less than what it paid the New City Administrator, who is the opposite sex, for performing the same job, in violation of the EPA.[3]

On May 20, 2019, the City filed an Answer denying it violated the EPA.[4]  The City's main defense is that Martley, due to his also serving as police chief, only served as a part-time city administrator, and therefore did not perform work substantially equal to that of the New City Administrator.[5]

Martley's counsel in the current case is Patrick Reavey ("Reavey").  Reavey served as city attorney for the City from July of 2007 until June of 2011.[6]  Based on his role as city attorney, the City filed the instant Motion to Disqualify Reavey from representing

---

[1] ECF No. 1.
[2] *Id.* at ¶¶ 5-7, 9-10.
[3] *Id.* at ¶¶ 14, 30, 31-34.
[4] ECF No. 4.
[5] *Id.* at ¶¶ 6, 8, 9, 28, 29.
[6] ECF No. 8, p. 1 at ¶ 1; ECF No. 13, p. 4 at ¶ 11.

Martley in this matter. The City seeks disqualification of Reavey under the conflict of interest and confidentiality provisions found at Kansas Rule of Professional Conduct ("KRPC") 1.11(a) and (b), and KRPC 1.9(a).[7] The Court held a hearing regarding the Motion to Disqualify on October 9, 2019. Martley and Reavey appeared in person for the hearing. The City appeared through its attorney, J. Steven Pigg.

### B. Facts Relevant to the Motion to Disqualify

#### 1. The 2009 Resolution Designating Martley as Interim City Administrator

Martley's first stint as city administrator came in the summer of 2009, where he served in an interim capacity for approximately two months.[8] Reavey, who was city attorney at the time, drafted the 2009 Resolution appointing Martley as the interim city administrator.[9] In terms of addressing Martley's dual position of police chief and interim city administrator, the 2009 Resolution, in relevant part, states:

> The City and Chief Martley agree that Chief Martley's first responsibility is to continue to be in charge of, and provide leadership to, the Basehor Police Department, and that his undertaking of City Administrator duties on a temporary basis will not adversely affect the Governing Body's view of his performance as Police Chief. In this regard, the Governing Body understands and acknowledges that Chief Martley is not trained as a City Administrator and likely is unfamiliar with many of the duties performed by an Administrator. However, the Governing Body recognizes Chief Martley's leadership skills and believes such skills will be beneficial to his performance of temporary City Administrator duties. When the Governing Body hires a new City Administrator, Chief Martley will be transitioned out of the City Administrator role and will return to performing full time Police Chief duties.[10]

---

[7] ECF No. 8, pp. 4-9.
[8] ECF No. 4 at ¶ 5; ECF No. 13, p. 2 at ¶ 2.
[9] ECF No. 8, p. 2 at ¶ 3; ECF No. 13, p. 2 at ¶ 1.
[10] *See* 2009 Resolution at ECF No. 8-1, pp. 3-5.

This Resolution also addressed Martley's compensation for his interim services. It states Martley's pay would be equal to an entry level city administrator, which, pursuant to the wage scale attached to the Resolution, was $32.76 an hour.[11]

Relying on an Affidavit prepared by current Mayor David Breuer ("Breuer"), the City states Reavey, in addition to preparing the 2009 Resolution, also provided the City advice on utilizing Martley as both police chief and interim city administrator.[12]

Reavey, on the other hand, insists his involvement in the City's appointment of Martley as interim city administrator in 2009 was limited to the routine matter of drafting the 2009 Resolution.[13] During the October 9, 2019 hearing, Reavey informed the Court the City told him what type of information needed to be in the 2009 Resolution, and he drafted it accordingly for approval by the City Council. Reavey's recollection of this conversation was the City needed a "warm body" to fill in until a permanent city administrator could be found. During the hearing, Reavey further stated he was not otherwise involved in the City's process of hiring Martley as the interim city administrator, and did not provide legal advice regarding Martley's compensation or performance of the dual roles.

---

[11] *Id.*
[12] *See* Affidavit of David K. Breuer at ECF No. 8-1, p. 2 at ¶ 10.
[13] ECF No. 13, p. 2 at ¶ 1 and p. 6.

### 2. Hiring of Mark Loughry as Permanent City Administrator in July of 2009

Martley's service as interim city administrator ended when the City hired Mark Loughry ("Loughry") as the permanent city administrator in July of 2009.[14]  The City, through Breuer's Affidavit, states Reavey provided advice on the hiring of Loughry, negotiated Loughry's city administrator contract, and had confidential communications with the City's governing body regarding Loughry's compensation.[15]

Reavey, on the other hand, insists he had no role in the decision to hire Loughry. Reavey says his first involvement with Loughry's contract came via an email from then Mayor Terry Hill wherein Mayor Hill indicated to Reavey the City's goal was to "match [Loughry's] current income."[16]  Reavey states the only discussion occurring between him and the City pertaining to Loughry's compensation came about from discrepancies noted in a background check and a salary survey submitted by Loughry to Reavey.[17]  However, before the City Council meeting wherein the contract with Loughry was discussed and approved by the City, Reavey informed Mayor Hill he would not pursue the discrepancy any further unless the Mayor told him to do so.[18]  Reavey was not present during the portion City Council Meeting wherein Loughry was interviewed by the Council and subsequently hired.[19]

---

[14] ECF No. 13, p. 2 at ¶ 2.
[15] ECF No. 8-1, p. 2 at ¶¶ 12-14.
[16] ECF No. 13, p. 2 at ¶ 3; ECF No. 13-2, pp. 3, 8.
[17] ECF No. 13, p. 2 at ¶ 4; ECF No. 13-2, p. 3.
[18] ECF No. 13, p. 2 at ¶ 5; ECF No. 13-2, pp. 3, 12.
[19] ECF No. 16-1, p. 43.

3. **Reavey No Longer City Attorney; Loughry Terminated as City Administrator; and Martley Again Appointed as Interim City Administrator in the Fall of 2011**

Reavey ceased being the city attorney on June 20, 2011, at which time the City appointed Shannon Marcano as his successor.[20] In September of 2011, the City terminated Loughry, and Mayor Hill asked Martley to serve again as interim city administrator.[21] Reavey states he had no role in Martley being asked to serve as interim city administrator in 2011, or what his compensation would be, as he was no longer city attorney at that time.[22]

4. **Martley Becomes Official City Administrator Pursuant to the 2014 Resolution**

Reavey, during the October 9, 2019 hearing, informed the Court that sometime within the year following Loughry's termination, Mayor Hill was recalled and Breuer was elected as the new Mayor. According to Reavey, when Breuer became Mayor, it was communicated to Martley the City had no plans to look for another city administrator and wanted him to be "the guy." It was at this time the City negotiated a new salary for Martley. That salary was $25,000 a year with substantial cost of living increases going forward. Reavey was not city attorney at this time and was not involved in these negotiations. Despite being told the City wanted him to be the permanent city administrator, Martley still held the title of interim. In 2014, Martley had grown weary of being referred to and

---

[20] ECF No. 8-1 at pp. 21-22; ECF No. 13, p. 4 at ¶ 11.
[21] ECF No. 13, p. 4 at ¶ 12; ECF No. 13-4.
[22] ECF No. 13, p. 4 at ¶ 13.

introducing himself as the interim city administrator, and asked the City to make it official. Martley testified at the October 9, 2019 hearing and corroborated these above statements by Reavey.

In 2014, the City did officially appoint Martley as the city administrator with passage of Resolution 2014-02 ("2014 Resolution").[23] The 2014 Resolution was prepared by Marcano, the city attorney who replaced Reavey.[24] Regarding Martley's dual role as police chief and city administrator, the 2014 Resolution states:

> That the Governing Body and Chief Martley agree that Chief Martley's first responsibility is to continue to be in charge of, and provide leadership to, the Basehor Police Department, and that his performance of City Administrator duties will not adversely affect the Governing Body's view of his performance as Police Chief. The Governing Body has determined that Chief Martley shall be the City Administrator, until it is determined that a separate, full time City Administrator should be hired. The City Administrator position and the Police Chief position are exclusive of each other, and a decision to make a change in one position will not impact the other.[25]

Regarding Martley's compensation, the 2014 Resolution provides "Chief Martley's pay as City Administrator shall continue at the rate previously established for him as the Interim City Administrator, and shall be subject to the cost of living and merit increases in accordance with the City's personnel policy. Because of the prior decision on pay and the nature of this action, the parties will not enter into an employment contract."[26] During the October 9, 2019 hearing, Martley testified this decision of pay refers to the negotiation

---

[23] ECF No. 8, p. 8; ECF No. 8-1, pp. 29-31; ECF No. 13, p. 4 at ¶ 14.
[24] *See* 2014 Resolution, ECF No. 8-1 at p. 30.
[25] *Id.* at p. 29.
[26] *Id.*

between Martley and Breuer wherein Martley's salary was set at $25,000.00, and not to any 2009 decision regarding Martley's pay for his 2-month service as interim city administrator.

## II. General Legal Standard Regarding Disqualification of Counsel

The Kansas Rules of Professional Conduct ("KRPC") have been adopted by this Court as the "applicable standards of professional conduct,"[27] and the Court must also look to Kansas case law for guidance in interpreting those rules.[28] The moving party bears the burden of showing that counsel should be disqualified.[29] "The proof must be more than mere speculation and must sustain a reasonable inference of a violation."[30] At the same time, showing a violation of a professional rule does not in every case necessitate disqualification. Instead, the court considers the facts of each case and balances the "interest of protecting the integrity of the [judicial] process against the right of a party to the counsel of its choice."[31]

Because disqualification involves the court's ability to control attorney behavior during litigation, it is a matter left to the court's sound discretion.[32] However, "[c]ourts have found disqualification of counsel appropriate only under limited circumstances"[33] and

---

[27] D. Kan. Rule 83.6.1(a).

[28] *Seifert vs. Unified Government of Wyandotte County and Kansas City, Kansas, et al.,* No. 11-2327-JTM, 2016 WL 187994, at *1 (D. Kan. Jan. 14, 2016) (citing *Graham by Graham v. Wyeth Labs. Div. of Am. Home Products Corp.*, 906 F.2d 1419, 1422-23 n.5 (10th Cir. 1990)).

[29] *Schneider v. CitiMortgage, Inc.*, No. 13-4094-SAC, 2014 WL 6632939, at *2 (D. Kan. Nov. 21, 2014).

[30] *Koch v. Koch Indus.*, 798 F. Supp. 1525, 1530–31 (D. Kan. 1992).

[31] *Id.* at 1531.

[32] *Coffeyville Res. Ref. & Mktg. v. Liberty Surplus Ins. Corp.*, No. 08–1204–WEB-KMH, 261 F.R.D. 586, 589 (D. Kan. 2009).

[33] *Schneider,* 2014 WL 6632939, at *2 (quoting *United States v. Oyer*, No. CIV. A. 08-2002-CM,

"give these motions serious, conscientious, and conservative treatment."[34] Because disqualification would affect more than the attorney in the case, the "[c]ourt should be satisfied that this blunt remedy serves the purposes behind the ethical rule in question."[35] The responding attorney retains the ultimate burden of proof to show he should not be disqualified.[36]

As stated above, the City seeks disqualification of Reavey under KRPC 1.11(a) and (b), or under KRPC 1.9(a). The text of each rule and legal standards specific to those rules are set forth as necessary in the following sections.

## III. Discussion

### A. KRPC 1.11 – Successive Government and Private Employment

#### 1. Applicability

At the outset, the Court notes that by its plain language, KRPC 1.11 only applies to a "public officer or employee" of a government agency. From the exhibits attached to the parties' briefs, the Court can easily discern Reavey was not a City employee. Rather, Reavey's contract with the City labels Reavey as an independent contractor. The contract also shows Reavey was in private practice while serving as city attorney with the ability to

---

2009 WL 1904308, at *1 (D. Kan. July 1, 2009)); *see also Uhlrig v. Harder*, No. 93-1009-PFK, 1993 WL 246006, at *4 (D. Kan. June 3, 1993) ("Courts have the power to disqualify, but they should do so only where the offending attorney's conduct threatens to taint the underlying trial with a serious ethical violation.").

[34] *Koch*, 798 F.Supp. at 1530 (noting that this conservative review is a reflection of the possibility that such motions are often used as a litigation strategy, or technique for harassing the other side).

[35] *Id.* at 1531.

[36] *Lowe v. Experian*, 328 F.Supp.2d 1122, 1125 (D. Kan. 2004).

pursue other business interests and representations not in conflict with his representation of the City.

The Court, however, could not discern whether Reavey was considered a public officer during his tenure as city attorney. During the October 9, 2019 hearing, the Court inquired of both Reavey and the City regarding their positions on this issue. Both confirmed Reavey was considered a public official because he was appointed to the position by the City. This comports with the Court's research which indicates when appointed by the Mayor and City Council, a city attorney is considered a public officer.[37] Thus, there is no dispute regarding whether Reavey was a public officer of the City. As such, KRPC 1.11, which governs a lawyer's former representation of a government agency, applies to Reavey.

### 2.	KRPC 1.11(a)

KRPC 1.11(a), in relevant part, states:

> Except as law may otherwise expressly permit, a lawyer shall not represent a private client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee . . . .

Thus, the issue for the Court under KRPC 1.11(a) is whether Reavey is representing Martley in "connection with a matter" in which Reavey participated "personally and substantially" as city attorney.

---

[37] *See* K.S.A. § 14-201; *Durflinger v. Artiles*, 234 Kan. 484, 500-505 (1983) (outlining characters of a public officer) (disapproved of on other grounds by *Boulanger v. Pol*, 258 Kan 289, 298 (1995)).

KRPC 1.11(d) defines "matter" to include "any judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, investigation, charge, accusation, arrest or other particular matter involving a specific party or parties" and "any other matter covered by the conflict of interest rules of the appropriate government agency."[38] Not finding this definition particularly helpful in the case at hand, the Court looked to case law in this District and in Kansas state courts for elucidation. However, case law analyzing KRPC 1.11 is sparse in these courts.[39] But, several other courts, including a case within the Tenth Circuit, and a Formal Opinion from the American Bar Association, observe that "matter" as used in KRPC 1.11 means the "same matter":

> The same lawsuit or litigation is the same matter. The same issue of fact involving the same parties and the same situation or conduct is the same matter. . . . [T]he same "matter" is not involved [when] . . . there is lacking the discrete, identifiable transaction of conduct involving a particular situation and specific parties.[40]

KRPC 1.11 does not define "personally and substantially." Nor do any Kansas or District of Kansas cases.[41] However, a persuasive case on the matter states:

> "[S]ubstantial responsibility" envisages a much closer and more direct relationship than that of a mere perfunctory approval or disapproval of the

---

[38] KRPC 1.11(d)(1), (2).

[39] *Uhlrig v. Harder*, No. 93-1009-PFK, 1993 WL 246006 (D. Kan. June 3, 1993) (discussing the previous version of KRPC 1.11, but does not define "matter" as used therein).

[40] *See, e.g., Poly Software Int'l, Inc. v. Su*, 880 F. Supp. 1487, 1492 (D. Utah 1995) (internal citations omitted); Conflicts of Interest: Successive Government and Private Employment, ABA Formal/Op. 97-409 ("A former government lawyer is therefore disqualified from representing private clients only where she 'participated personally and substantially as a public officer or employee' in the same 'particular matter' at issue in the subsequent representation.") and n.5 ("The definition of 'matter' in Rule 1.11(d) was intended to codify the discussion of that term in ABA Formal Opinion 342 (1975). . . . Opinion 342 described the disqualification provisions of Rule 1.11's predecessor Code provision, DR 9-101(B), as limited to the 'same' matter . . . .").

[41] *Uhlrig*, 1993 WL 246006 (discusses the previous version of KRPC 1.11, but does not define "personally and substantially" as used therein).

matter in question. It contemplates a responsibility requiring the official to become personally involved to an important, material degree, in the investigative or deliberative processes regarding the transactions or facts in question.[42]

Keeping these standards in mind, the Court turns to addressing the City's two arguments for disqualification under KRPC 1.11(a): (1) Reavey's involvement in the 2009 Resolution, which appointed Martley as interim city administrator for two months in the summer of 2009; and (2) Reavey's involvement in hiring Loughry as the full-time city administrator in July of 2009.

### a.    The 2009 Resolution

The City argues Martley's Complaint indicates he was performing all the functions of a full-time city administrator while still serving as the full-time police chief. The City asserts Reavey represented the City when it first thought to utilize Martley in this dual role by providing advice to the City's governing body regarding the dual role and by preparing the 2009 Resolution. Thus, the City contends Reavey's involvement in drafting the 2009 Resolution was substantial and is the same matter at issue in the current litigation because both involve: (1) Martley's dual role of police chief and city administrator; (2) the division of Martley's time and duties between the two roles; and (3) how to compensate Martley for the dual roles and additional duties.

Reavey, on the other hand, argues the matters are not the same. He also argues his involvement in the 2009 Resolution was much less substantial than what the City contends. Reavey asserts he did not give the City legal advice regarding Martley's duties and dual

---

[42] *Babineaux v. Foster*, No. CIV.A. 04-1679, 2005 WL 711604, at *5–6 (E.D. La. Mar. 21, 2005).

role as police chief and interim city administrator or provide input regarding how or what Martley should be paid for performing interim city administrator duties. Rather, Reavey insists he simply prepared the 2009 Resolution at the City's direction as a routine matter for the City Council's consideration without any substantive communication with the City.

### i.     The Same Matter

The Court first considers whether the matters at issue are the same. As stated above, the same matter is "the same issue of fact involving the same parties and the same situation or conduct."[43] While both the 2009 Resolution and the current litigation involve the same parties−Reavey, Martley, and the City−it is not apparent the same issue of fact or situation is present. The 2009 Resolution states Martley will perform police chief duties in addition to his interim city administrator duties, but this is not at issue in the present case. Neither party is disputing Martley served in this dual capacity. Rather, the issue here is whether Martley, during 2016, 2017 and 2018, performed the same city administrator duties as the New City Administrator, but received less pay for doing so. The 2009 Resolution does not divide out Martley's city administrator duties or how much time should be spent performing them. Additionally, the 2009 Resolution was only in effect for two months in the summer of 2009.

The 2014 Resolution, not the 2009 Resolution, governs the relevant time period in this litigation. And, Reavey was not city attorney in 2014. To account for this gap in time and attorneys, the City contends the language of the 2009 Resolution suggests much

---

[43] *See supra* note 40 and accompanying text.

thought was given to how the dual roles would overlap. The City, creatively yet unconvincingly, argues the 2014 city attorney included this same language from the 2009 Resolution into the 2014 Resolution such that Martley essentially stepped back into the city administrator role he occupied in 2009 when Reavey was city attorney, making the matters the same.

A comparison of the two Resolutions, however, show they do not address the same situation. The 2009 Resolution regards Martley's role as interim city administrator for two months in the summer of 2009. Consistent with Martley's testimony at the October 9, 2019 hearing, the 2014 Resolution concerns Martley's elevation from interim city administrator in 2011 to official city administrator. At the hearing, Martley testified when Breuer became Mayor, the City wanted him to be the permanent city administrator and negotiated a new salary of $25,000 a year as compensation. But, his title was not changed from interim until the 2014 Resolution. The City did not dispute this testimony. And, Martley remained in this position for four more years until his retirement in 2018. Thus, the Court does not consider the events surrounding the 2009 Resolution to be the same situation as the 2014 Resolution or the current litigation.

## ii.    Personal and Substantial Involvement

But, even if the matters were the same, Reavey must have been "personally and substantially" involved regarding the 2009 Resolution and the City's accompanying decisions involving Martley's dual appointment, division of duties, and compensation for disqualification to occur under KRPC 1.11(a). As stated above, personal and substantial involvement "envisages a much closer and more direct relationship than that of a mere

14

perfunctory approval or disapproval of the matter in question."[44]  Rather, "it contemplates a responsibility requiring the official to become personally involved to an important, material degree, in the investigative or deliberative processes regarding the transactions or facts in question."[45]

To show Reavey was personally and substantially involved, the City relies on Breuer's Affidavit, which states Reavey provided the City advice on utilizing Martley as both police chief and city administrator.  Reavey, however, states he prepared the 2009 Resolution as a routine matter without any substantive communication with the City. Reavey says he was not involved, and did not provide any legal advice, concerning the City's decision-making process regarding Martley's interim position.

The City, neither in its reply brief nor during the October 9, 2019 hearing, has disputed, or provided evidence contrary to, Reavey's statements of non-involvement. Additionally, Reavey's billing records, which show a minimal amount of time preparing the 2009 Resolution support Reavey's statements.[46]  Furthermore, while Breuer was a city council member during this timeframe, Reavey's billing records show no communication with Breuer regarding these matters, putting into question Breuer's source of knowledge.[47]

---

[44] *See supra* note 42 and accompanying text.

[45] *Id.*

[46] ECF No. 13-1, p. 6 (The May 25, 2009 time entry is the only entry discussing Reavey's work regarding Martley's interim city administrator position.  It states "[p]repare Resolution regarding Lloyd serving as interim City Administrator."  The total time entry is 5.75 hours, but it is split between preparing a severance agreement for the outgoing city administrator).

[47] *See generally* ECF No. 13-1.

Thus, the Court concludes while Reavey was personally involved (in that he drafted the 2009 Resolution), he was not substantially involved in these 2009 matters. Based on the evidence before it, the Court views Reavey's involvement in preparing the 2009 Resolution as perfunctory in nature because he prepared the Resolution at the City's direction without any substantive communication with the City. Neither does it appear Reavey was materially involved in the City's deliberative process regarding Martley's dual appointment, division of duties, and compensation as interim city administrator in 2009. As such, disqualification under KRPC 1.11(a) is not appropriate.[48]

### b. Loughry's Hiring

The City's second argument for disqualification under KRPC 1.11(a) regards Reavey's involvement in hiring Loughry as the full-time city administrator in July of 2009. The City argues Reavey had a substantial role in hiring Loughry because Reavey: (1) provided the City advice on the hiring of Loughry, (2) drafted and negotiated the City's contract with Loughry, and (3) had confidential communications with the City's governing

---

[48] *See, e.g., Uhlrig*, 1993 WL 246006, at *4–5 (declining to disqualify counsel where the attorney stated he was not involved in the relevant decision and was not privy to the confidential information, and the opposing party only submitted bare allegations attorney was involved or had access to the confidential information); *Babineaux*, 2005 WL 711604, at *6-7 (declining to disqualify attorney where there was no evidence showing attorney conducted any investigation, provided any legal advice, or spend any substantial amount of time on the matter in question, and where the City submitted no evidence questioning the validity of the attorney's statements); *Richards v. Lewis*, No. CIV.A.05-0069, 2005 WL 2645001, at *3 (D.V.I. Oct. 14, 2005) (declining disqualification where attorney's involvement was minimal and where she was not involved in any investigative or deliberative process to warrant disqualification); *Franklin v. Clark*, 454 F. Supp. 2d 356, 367 (D. Md. 2006) (finding disqualification inappropriate where attorney spent minimal time drafting the memorandum in question).

body regarding Loughry's compensation. Thus, the City insists Reavey is privy to confidential information which would provide insight into how the City views the role of a full-time city administrator and how the City considers rate of pay for a full-time city administrator. The City contends these things are presently at issue due to Martley's allegations involving the City's hiring of the New City Administrator, who the City considers to be full-time. Specifically at issue, per the City, is the City's negotiation of the New City Administrator's compensation—namely that Martley contends in his Complaint the New City Administrator's salary was based upon her previous salary.[49]

Reavey contends the matters are not the same and he was not "personally and substantially" involved in hiring Loughry or setting his compensation. Instead, Reavey says the decision to pay Loughry the same compensation he was making at his previous job was already made and communicated to him by Mayor Hill for inclusion in Loughry's contract. Reavey insists the only "compensation" issue he dealt with concerned a discrepancy in what Loughry said his former salary was and what his actual salary was, but that issue was dropped prior to Loughry's hiring because Mayor Hill did not ask Reavey to pursue it. Reavey further states he was not present at the July 21, 2009 City Council Meeting when the City Council interviewed and voted to hire Martley.

### i. The Same Matter

The Court must first decide whether the matters involved are the same, that is whether the "same issue of fact involving the same parties and the same situation or

---

[49] *See* ECF No. 1, ¶¶ 17-19, ¶¶ 24-26.

conduct" is present.[50]   As with the City's 2009 Resolution argument, the Court cannot conclude Reavey's involvement in hiring Martley, and in particular setting Loughry's pay, is the same matter at issue in the current litigation.  At the outset, the parties involved in the matters are not the same because Loughry is not a party to the present lawsuit.

Additionally, the negotiation of Loughry's compensation does not involve the same issue of facts or situation at issue in the present matter.  At issue presently is whether Martley was paid less than the New City Administrator for performing the same duties based on sex.  Like Martley, Loughry is a male, and Loughry's stint as city administrator substantially preceded the time period involved in the lawsuit.

### ii.   Personal and Substantial Involvement

However, even if the matters were the same, Reavey must have been "personally and substantially" involved in hiring Loughry and setting his compensation in order for disqualification to occur under KRPC 1.11(a).  As stated previously, to be personally and substantially involved, the official must be "personally involved to an important, material degree, in the investigative or deliberative processes regarding the transactions or facts in question."[51]

To show Reavey was personally and substantially involved, the City relies on Breuer's Affidavit, which states Reavey (1) provided the City advice on the hiring of Loughry, (2) was tasked with negotiating the City's contract with Loughry, and (3) had

---

[50] *See supra* note 40 and accompanying text.
[51] *See supra* note 42 and accompanying text.

confidential communications with the City regarding Loughry's compensation.

Reavey argues his involvement was not as substantial as the City contends. He states he provided no legal advice regarding hiring Loughry and was not present when the City Council interviewed and hired Loughry. Reavey further states the decision to pay Loughry the same as he was previously paid was made independently by Mayor Hill, and was communicated to him after the fact for inclusion in the contract. He also insists the discrepancy regarding Loughry's previous pay was not pursued at the Mayor's direction.

The City, in neither its reply brief nor at the October 9, 2019 hearing, disputed, or provided evidence contrary to, Reavey's statements of non-involvement. Additionally, the 2010 letter Reavey sent to the City and attached emails substantiate Reavey's statements that: (1) the decision to compensate Loughry the same as in his previous job was communicated to him from Mayor Hill without Reavey's input; and (2) the discrepancy in pay issue, while commenced, was not pursued by Reavey.[52] Furthermore, the City Council Meeting minutes show Reavey was not present when the City Council interviewed or hired Loughry.[53] Thus, based on the evidence before it, the Court concludes Reavey was not substantially involved in the City's deliberative process regarding hiring Loughry or setting his compensation, making disqualification under KRPC 1.11(a) improper.[54]

---

[52] ECF No. 13-2, pp. 3, 8, 12, 26.
[53] ECF No. 16-1, p. 43.
[54] *See, e.g., Uhlrig*, 1993 WL 246006, at *4–5 (declining to disqualify counsel where the attorney stated he was not involved in the relevant decision, and the opposing party only submitted bare allegations attorney was involved); *Babineaux,* 2005 WL 711604, at *6-7 (declining to disqualify attorney where there was no evidence showing attorney conducted any investigation or provided any legal advice, and where the City submitted no evidence questioning the validity of the attorney's statements); *Richards,* 2005 WL 2645001, at *3 (declining disqualification where attorney was not involved in any investigative or deliberative process to warrant disqualification).

### 3. KRPC 1.11(b)

KRPC 1.11(b), in relevant part, states:

> Except as law may otherwise expressly permit, a lawyer having information
> that the lawyer knows is confidential government information about a person
> acquired when the lawyer was a public officer or employee may not represent
> a private client whose interests are adverse to that person in a matter in which
> the information could be used to the material disadvantage of that person.

Thus, to disqualify Reavey under KRPC 1.11(b), the City must establish Reavey knowingly acquired "confidential government information" while city attorney, which could be used to the material disadvantage of the City in the present lawsuit.

The City suggests that due to Reavey's involvement in drafting the 2009 Resolution and hiring of Loughry, Reavey gained confidential information regarding: (1) the use of Martley in the dual role of city administrator and police chief and the City's thought process of how it intended that arrangement to work; (2) how Martley should be compensated; (3) whether Martley would be expected to be a full-time city administrator; and (4) what the City considers in determining compensation for a full-time city administrator like Loughry, including prior pay.[55] The City insists this information will materially disadvantage it because pay and qualifications for the city administrator position are at issue in the present action.

Reavey, however, argues he has no such confidential information because the City directed his involvement in the 2009 Resolution and Loughry's hiring without seeking

---

[55] ECF No. 17, pp. 4-5.

input or legal advice from him.  Reavey also contends the City has not shown he actually possesses any confidential information.

### a.    Actual Knowledge

The Court finds the City has not established Reavey was actually privy to any of the information it alleges he acquired.  The City argues it does not have to demonstrate actual confidences were disclosed to Reavey.  Rather, the City insists Reavey being personally involved in drafting the 2009 Resolution and negotiating Loughry's contract is enough to suggest he received the confidential information outlined above.[56]  However, the City is confusing KRPC 1.11 with KRPC 1.9.  While proving actual knowledge of confidential information is not necessary under KRPC 1.9,[57] comment 7 to KRPC 1.11 makes clear it is required for disqualification under KPRC 1.11(b).  Comment 7 states KRPC 1.11(b) "operates only when the lawyer in question has knowledge of the information, which means actual knowledge; it does not operate with respect to information that merely could be imputed to the lawyer."[58]  The City has put forth no evidence showing Reavey has actual knowledge of the information it alleges he does.[59]  The Court would not expect the City to

---

[56] ECF No. 17, p. 4.

[57] *See Koch*, 798 F. Supp. at 1536 (Regarding KRPC 1.9, the "court need not inquire into whether the confidential information was actually revealed or whether the attorney would be likely to use the information to the disadvantage of the former client.").

[58] KRPC 1.11, comment 7.

[59] *See, e.g., Uhlrig*, 1993 WL 246006, at *4–5 (declining to disqualify counsel where the attorney stated he was not privy to the confidential information, and the opposing party only submitted bare allegations attorney had access to the confidential information); *Babineaux*, 2005 WL 711604, at *6-7 (declining to disqualify where there was no evidence attorney possessed confidential information that could be used to the material disadvantage of the city; city only contended "it can be presumed" that confidential communications transpired); *Hawkins v. Eslinger*, No. 607CV1261ORL19GJK, 2008 WL 11435671, at *6 (M.D. Fla. Mar. 24, 2008) ("Eslinger argues that it is not reasonable to believe that Ross did not advise Eslinger about

divulge the substance of any privileged communications, but some proof other than the City "suggesting"[60] confidential information was acquired is required.[61]

## b. Confidential Government Information

Additionally, it is not clear to the Court the information outlined by the City is "confidential government information." KRPC 1.11(e) defines "confidential government information" as "information which has been obtained under governmental authority and which, at the time this Rule is applied, the government is prohibited by law from disclosing to the public or has a legal privilege not to disclose, and which is not otherwise available to the public."

Most of the "confidential government information" the City alleges Reavey has regarding Martley is contained in the 2009 Resolution, which is a public document.[62] The document reveals how the City intended for the dual arrangement to work. It states: (1) Martley will act in a dual role, with his police chief duties being primary to his city

policies at issue in this case during his tenure as Eslinger's general counsel. Yet, Eslinger is obviously aware of what matters Ross counseled him about and has failed to offer any proof that he and Ross had privileged communications about such policies.").

[60] *See* ECF No. 17, p. 4 ("The City suggest as city attorney Reavey acquired confidential information regarding . . . .").

[61] *Hawkins*, 2008 WL 11435671, at n.3 ("The Court . . . would not require Eslinger to divulge the substance of privileged communications. However, if Ross did counsel Eslinger about the policies at issue in this case, Eslinger could certainly provide evidence of that without divulging more about the substance of those communications."); *Doe v. City of Memphis*, No. 2:13-CV-03002-JTF, 2015 WL 4019550, at *7 (W.D. Tenn. Apr. 8, 2015) ("Without proof or evidence on this matter, general conclusory statements will not allow the Defendant to carry its burden. It is true that the City is not required to disclose confidences. However, the City's election to remain silent has been done at its own peril.").

[62] The 2009 Resolution can be found on the City of Basehor's website under the "2009" folder at Resolution 2009-9 at https://cityofbasehor.org/DocumentCenter/Index/31. Additionally, the City filed the 2009 Resolution in public court as an exhibit to its Motion to Disqualify (ECF No. 8-1, pp. 3-5). *See infra* note 69 and accompanying text.

administrator duties; (2) Martley will serve on a temporary basis until a new city administrator is hired, and then return to performing full time police chief duties; (3) Martley's undertaking of temporary city administrator duties will not adversely affect the City's view of his performance as police chief; and (4) the City understands and acknowledges Martley's lack of training or experience as a city administrator, but hired Martley as interim city administrator because of his leadership skills.[63]

The 2009 Resolution also states how Martley should be compensated as interim city administrator. It provides Martley will be paid "at a wage rate equal to an entry level City Administrator," which pursuant to the City of Basehor wage scale, would be $32.76 an hour.[64]

And, regarding the "confidential government information" about whether the City expected Martley to be a full-time city administrator, the City, in its Reply brief (a document filed in open court) states its defense to Martley's EPA claim is the City intended Martley to only be a part-time city administrator.[65] Thus, the City has made available to the public knowledge of the fact it never intended Martley to be a full-time city administrator.[66]

---

[63] ECF No. 8-1, p. 3.
[64] *Id.*
[65] ECF No. 17, pp. 1-3 ("The City will argue Plaintiff and the current City Administrator did not perform substantially equal work because Martley was a part-time city administrator and the current, female Administrator is full-time. . . . The City contends Martley was never expected to be a full time City Administrator but to only perform those duties as time and necessity allowed."); *see also* Answer, ECF No. 4, ¶¶ 6, 8, 9.
[66] *See infra* note 69 and accompanying text.

Pertaining to the "confidential government information" for compensating full-time city administrators that Reavey allegedly learned in preparing Loughry's contract, the City points to Martley's Complaint. The Complaint contends the City's primary consideration in setting the New City Administrator's pay was based upon her prior job as a city administrator.[67] The City argues Reavey would not have known this information but for his dealings with Loughry's contract on behalf of the City. Reavey states he included the information in Martley's Complaint to head off a potential defense by the City, and not because of inside knowledge regarding the City's practices.

Regardless, the Court finds information regarding Loughry's compensation is not "confidential government information" as the City attached a letter it received from Reavey regarding the same to its Motion to Disqualify, thus making the document and its contents available to the public. In the letter, Reavey states the "direction I was given was the City was prepared to offer [Loughry] the same salary he was receiving at Hays . . . ."[68] Any confidentiality the City may have had regarding this information was lost when it filed the letter in public court without redacting or seeking leave to seal the same.[69] Additionally, an email attached to Martley's response brief shows Mayor Hill told Loughry, before he

---

[67] *See* ECF No. 1, ¶¶ 17-19, ¶¶ 24-26.
[68] ECF No. 8-1, p. 7.
[69] *See, e.g., United States v. Pickard*, 733 F.3d 1297, 1302 (10th Cir. 2013) (noting judicial records are open to the public unless sealed).

was hired, it was the City's goal to match his current income.[70]  Thus, the City shared this information with a third party, also waiving any confidentiality that might have existed.[71]

### c.  Material Disadvantage

Finally, the City does not explain how any of this information could be used to materially disadvantage it in the present action.  On the contrary, the "confidential information" seems to consist of the City's stated defense in this case, *i.e.*, Martley and the New City Administrator did not get equal pay because Martley was only a part-time city administrator, while the New City Administrator was full-time.  Therefore, based on the above, the Court declines to disqualify Reavey under KRPC 1.11(b).

### B.  Applicability of KRPC 1.9(a) – Duties to Former Clients

In addition to arguing disqualification is appropriate under KRPC 1.11(a) and (b), the City also insists KPRC 1.9(a) is applicable and requires Reavey's disqualification. KRPC 1.9(a), in relevant part, states:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client . . . .

---

[70] ECF No. 13-2, p. 8 (email from Mayor Hill to Reavey stating "Mark let us know that he currently gets 86000+ along with a 6000 car allowance phone and benefits.  I told him it was our goal to match his current income as possible with our benefit package and other possible unknown restrictions.").

[71] *High Point SARL v. Sprint Nextel Corp.*, No. CIV.A. 09-2269-CM, 2012 WL 234024, at *6 (D. Kan. Jan. 25, 2012) ("Because confidentiality is key to the privilege, the attorney-client privilege is lost if the client discloses the substance of an otherwise privileged communication to a third party.") (citing *In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006)).

The City contends the standards under KRPC 1.11(a) and (b), which governs a lawyer's former representation of a government client, and KRPC 1.9(a), which governs a lawyer's former representation of a client in general, are substantially the same, making either rule applicable to the situation at hand. Martley argues only KRPC 1.11 should apply because it is specific to situations where a government attorney later represents a private client against the government.

The Court could not locate any controlling state or federal authority discussing this issue. However, in a Formal Opinion, the ABA Committee on Professional Ethics analyzed the issue in detail and determined that if KRPC 1.11 applies, then KRPC 1.9(a) cannot also apply:

> The Committee concludes that Rule 1.11 alone determines the conflict of interest obligations of a former government lawyer, and that the provisions of Rule 1.9(a) and (b) do not apply. This conclusion is grounded in inconsistencies in the text of the two rules, and finds support in their commentary and legislative history.[72]

Regarding the textual differences, the standard of disqualification under the two rules are not the same. KRPC 1.9(a) bars a lawyer who formerly represented a client in a matter from subsequently representing another client in the "same or a substantially related" matter, where the new client's interests are "materially adverse" to the former client. Under KRPC 1.11(a), however, a former government lawyer is disqualified from representing private clients where the lawyer "participated personally and substantially as

---

[72] Conflicts of Interest: Successive Government and Private Employment, ABA Formal/Op. 97-409.

a public officer or employee" in the same "particular matter" at issue in the subsequent representation.[73]

Thus, because KRPC 1.9(a) would require disqualification of non-government attorneys who have formerly represented a client in any "substantially related" matter, regardless of the attorney's involvement, it imposes a lower threshold for disqualification. KRPC 1.11(a), on the other hand, requires a former government attorney to have "personally and substantially" participated in the same "particular matter," thus requiring a higher threshold for disqualification.[74] In other words, KRPC 1.9(a) sweeps more broadly than KRPC 1.11(a) and may require disqualification in situations where it would be not required under KRPC 1.11.[75]

---

[73] KRPC 1.11(d)(1) defines "matter" as a "particular matter involving a specific party or parties."

[74] *See* ABA Formal/Op. 97-409 ("[A] a former government lawyer would be subject under Rule 1.9 to disqualification from any matter in which she was deemed to have 'represented' the government, while under Rule 1.11(a) she would be disqualified only if her prior involvement in the matter amounted to 'personal and substantial participation.' The concept of 'representation' is broader than 'personal and substantial participation,' and the range of matters from which the lawyer would be disqualified under Rule 1.9(a) is correspondingly broader than under Rule 1.11(a) in this important respect. In addition, quite apart from the 'representation v. participation' issue, the range of adverse 'matters' from which a former government lawyer would be disqualified under Rule 1.9, if it applied, would be considerably broader ('same or a substantially related matter') than the range of adverse matters subject to disqualification under Rule 1.11(a) ('particular matter involving a specific party or parties')"); *see also Babineaux*, 2005 WL 711604, at *4.

[75] *See* ABA Formal/Op. 97-409 ("While Rule 1.9 applies on its face to all lawyers, and does not specifically exempt former government lawyers from its coverage, in most situations Rule 1.9 and Rule 1.11 cannot both be given full effect. . . . [T]he standard of personal disqualification under the two rules is not the same. This means that applying both rules to the same situation will not always produce the same result, and indeed these results will often be inconsistent with one another. While compliance with the personal disqualification standard of both rules is theoretically possible, the resulting disability for former government lawyers is considerably broader than would be produced by application of either rule standing alone.").

Additionally, it is a fundamental rule of construction that whenever reasonably possible, a construction that gives meaning to and reconciles all provisions is preferable to one that renders a provision superfluous.[76]  If KRPC 1.9(a) and 1.11(a) both applied to government lawyers, the result would render KRPC 1.11(a) superfluous:

> The fact that the provisions of Rules 1.9(a) and (b) and 1.11 overlap and sometimes conflict with one another leads the Committee to conclude that both rules were not intended to apply in the same situation.  While a former government lawyer could in theory comply fully with the requirements of both rules, the result would render Rule 1.11(a) surplusage in adverse representations, and enlarge the scope of the lawyer's resulting disability beyond that contemplated by either rule standing alone.  Because Rule 1.11 was plainly intended to define the conflict of interest obligations of former government lawyers, vis-a-vis their former government client as well as adverse third parties, the Committee concludes that Rule 1.11 occupies the field to the exclusion of Rule 1.9(a) and (b).[77]

While ABA Formal Opinions are not binding on this Court, federal courts often look to them for guidance in interpreting rules of professional conduct.[78]  After reviewing the Formal Opinion and due to the lack of caselaw in the State of Kansas or this District, the Court finds the reasoning in the Formal Opinion persuasive and agrees that KRPC 1.9(a) cannot apply when KPRC 1.11 applies.[79]

---

[76] *See, e.g., Chevron Mining Inc. v. United States*, 863 F.3d 1261, 1274 (10th Cir. 2017) ("It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" (quoting *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001)).

[77] ABA Formal/Op. 97-409.

[78] *See, e.g., Aiken v. Bus. & Indus. Health Grp., Inc*., 885 F. Supp. 1474, 1478 n.2 (D. Kan. 1995).

[79] *See also Babineaux*, 2005 WL 711604, at *2-5*; Richards,* 2005 WL 2645001, at *5.  The City heavily relies on this Court's prior decision in *McDonald v. City of Wichita, Kansas*, No. 14-1020-GEB, 2016 WL 305366 (D. Kan. Jan. 26, 2016).  However, that decision applied KRPC 1.9(a), which is not applicable here.

## IV.    Conclusion

The Court finds, and both parties agree, Reavey was considered a public officer when serving as city attorney.  As such, KRPC 1.11, which specifically governs the conflict of interest obligations of a lawyer formerly serving as a "public officer" of a government agency, applies to the situation at hand.  However, based on the reasons outlined in Section III.A. above, the Court declines to disqualify Reavey under KRPC 1.11(a) or (b).  Additionally, because the Court finds KRPC 1.9(a) inapplicable to former government attorneys in this situation, there is no basis to disqualify Reavey under that rule either.  Accordingly, the City's Motion to Disqualify is denied.

Finally, in coming to the conclusion that disqualification is not warranted under the present circumstances, the Court has carefully considered the facts of the case and balanced the interest of protecting the integrity of the judicial process against the right of a party to the counsel of its choice.[80]  Here, in addition to the reasons outlined above, the Court finds the passage of time between Reavey's relevant service as city attorney in 2009 and the present (ten years) protects the integrity of the judicial process, and thus does not override Martley's choice of counsel.[81]

The Court also considered whether the remedy of disqualification would serve the purpose behind the ethical rule in question.[82]  The main purpose behind KRPC 1.11 is to

---

[80] *See supra* note 31 and accompanying text.
[81] *Chapman Engineers, Inc. v. Nat. Gas Sales Co.*, 766 F. Supp. 949, 954 (D. Kan. 1991) ("The right to be represented by counsel of choice is an important one, subject to override only upon a showing of compelling circumstances.").
[82] *See supra* note 35 and accompanying text.

prevent a lawyer from exploiting public office for the advantage of a private client.[83]  Based on Martley's testimony during the October 9, 2019 hearing, the Court is confident Martley neither hired Reavey because of his prior service as city attorney, nor based on any belief Reavey had access to information which could prove beneficial in his case.  Martley testified he has not spoken with Reavey since Reavey's tenure as city attorney ended, and he only sought out Reavey's firm because he knew they handled employment matters. Additionally, from the evidence presented to it, the Court cannot ascertain Reavey has possession of any confidential information to use against the City.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Disqualify Patrick Reavey as Plaintiff's Counsel (**ECF No. 7**) is **DENIED**.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 27th day of November, 2019.

s/Gwynne E. Birzer
GWYNNE E. BIRZER
United States Magistrate Judge

---

[83] KRPC 1.11, comment 1.