## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **LLOYD MARTLEY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No.  19-02138-DDC-GEB** |
| ) | |
| **CITY OF BASEHOR, KANSAS** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

### MEMORANDUM AND ORDER

On July 20, 2020, the Court convened a motion hearing to address Defendant's Motion to Quash Subpoenas and for Entry of Protective Order (ECF No. 39) and Plaintiff's Motion for Leave to File Amended Complaint (ECF No. 49).[1]  Plaintiff appeared through counsel, Patrick G. Reavey.  Defendant appeared through counsel, Michelle R. Stewart. After careful review of all pleadings, attached exhibits, and hearing arguments of counsel, the Court orally **GRANTED** Defendant's Motion to Quash Subpoenas and for Entry of Protective Order (ECF No. 39) and orally **GRANTED** Plaintiff's Motion for Leave to File Amended Complaint (ECF No. 49) at the hearing.[2]  Those rulings are now memorialized in this Memorandum and Order.

---

[1] ECF No. 58.
[2] ECF No. 59.

1

I.      **Background**[3]

On March 12, 2019, Plaintiff Lloyd Martley filed a Complaint against Defendant City of Basehor, Kansas ("City") alleging violation of the Equal Pay Act ("EPA"). Plaintiff served as the City's Police Chief from 2008 until July of 2018. At various times between 2009 and July of 2018, Plaintiff, in addition to serving as Police Chief, also served as City Administrator. Plaintiff retired from both positions in July of 2018.

After Plaintiff's retirement, the City hired Leslie Rivarola, a female, as the new City Administrator. Plaintiff alleges the City paid Ms. Rivarola $180,000 more in benefits and wages than what Plaintiff received in 2016, 2017 and 2018, despite Plaintiff performing the same role, duties, and functions as Ms. Rivarola. Thus, Plaintiff contends the City paid him significantly less than what it paid Ms. Rivarola, who is the opposite sex, for performing the same job, in violation of the EPA.

The City filed an Answer denying it violated the EPA. The City's main defense is that Plaintiff, due to his also serving as Police Chief, only served as a part-time city administrator, and therefore did not perform work substantially equal to that of Ms. Rivarola.

Currently before the Court is the City's Motion to Quash Subpoenas and for Entry of Protective Order and Plaintiff's Motion for Leave to File Amended Complaint. Each is addressed below.

---

[3] The information recited in this section is taken from the pleadings (Complaint, ECF No. 1; Answer, ECF No.4) and the briefs regarding the motions at issue (ECF Nos. 39, 40, 43, 49, 53, and 55). This background information should not be construed as judicial findings or factual determinations.

II.    **Motion to Quash Subpoenas and for Entry of Protective Order (ECF No. 39)**

    A.    **Parties' Positions**[4]

The City moves to quash two subpoenas issued by Plaintiff to Post Rock Rural Water District ("Post Rock") and Water District No. 7, Gardner, Kansas ("Water District 7"). The current City Administrator, Leslie Rivarola, owns and operates RR Municipal Advisory Services, LLC ("RR"). She operated this business prior to her employment with the City. The City specifically authorized and approved Rivarola to continue her consulting business while acting as City Administrator. Post Rock and Water District 7 are two of RR's consulting clients. The subpoenas at issue ask for documents from January of 2019 through the present regarding (1) the amount of time spent by Rivarola and/or RR performing consulting services for each water district; (2) the amount of money owed by each to Rivarola and/or RR for such services; and (3) a description of the services performed for each by Rivarola and/or RR.[5]

The City argues the subpoenas should be quashed for several reasons. First, the City states the subpoenas seek documents and information from a non-party about a non-party, making them irrelevant. In support, the City insists nothing in the requested documents would bear on the City's decision regarding Ms. Rivarola's compensation at the time of hiring as compared to Plaintiff's compensation. In addition, the City states the subpoenas seek information including work done and money paid during the time Ms.

---

[4] Unless otherwise specified, the parties' positions are taken from the briefs regarding the Motion to Quash Subpoenas and for Entry of Protective Order (ECF Nos. 39, 40, and 43).

[5] *See* ECF Nos. 36 and 37.

Rivarola has been serving as City Administrator, and not from a time when the City was determining what to pay when it hired her.

The City also asks for a protective order under Fed. R. Civ. P. 26(c) to prevent Plaintiff from seeking documents directly from RR and/or any client of RR regarding monies earned by or services provided by Ms. Rivarola.  The City argues that because the subpoenas do not seek any admissible or relevant information, it is apparent the subpoenas have been prepared and served for the sole purpose of harassing, embarrassing or annoying Ms. Rivarola.

Plaintiff, on the other hand, argues the documents sought are relevant, and that the subpoenas were not sent for any harassing purpose.  Plaintiff states the City repeatedly refers to him as a "part time city administrator," suggesting it was not possible for him to fulfill the duties of City Administrator given his additional duties as City Police Chief.  Additionally, in comparing the compensation of Plaintiff to that of Ms. Rivarola, Plaintiff states the City has made clear it will compare Plaintiff's total compensation from the City (for City Administrator and Police Chief) to the current compensation received by Ms. Rivarola from the City.

In hiring Ms. Rivarola as its full time City Administrator, Plaintiff argues the City has allowed her to maintain RR in addition to her City Administrator duties.  Plaintiff states the subpoenas seek to discover the amount of time spent by Ms. Rivarola in her consulting work, and the compensation she received for doing so, during the same time she also served as the full time City Administrator.  Plaintiff intends to use this information for comparison with Plaintiff's total compensation and time spent on work as City Administrator and

Police Chief.

Plaintiff also argues the City lacks standing to quash the subpoenas or seek a protective order because the City does not have any personal right to or privilege regarding the information sought from the third-party water districts.

## B.    Legal Standard

Fed. R. Civ. P. 45 provides guidelines for the issuance of subpoenas to non-parties. Rule 45(d)(3)(A) requires the court to quash or modify a subpoena that requires disclosure of privileged or protected information or subjects a person to undue burden.  Although Rule 45 does not specifically include relevance or overbreadth as bases to quash a subpoena, "this court has long recognized that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b) and Rule 34."[6]

 Rule 26(b)(1) outlines the scope of discovery.  This rule permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable."

---

[6] *Martinelli v. Petland, Inc.*, No. 10-mc-407-RDR, 2010 WL 3947526, at *3 (D. Kan. Oct. 7, 2010) (internal citations omitted); *Martin v. Grp. 1 Realty, Inc*., No. 12-2214-EFM-DJW, 2013 WL 3322318, at *2 (D. Kan. July 1, 2013).

Relevance at the discovery stage is broad,[7] and does not mean the information obtained would necessarily be admitted at trial.  When the discovery sought appears relevant on its face, the party resisting the discovery has the burden to establish the lack of relevance.  Conversely, when relevancy is not apparent on the face of the request, the party seeking the discovery has the burden to show the relevancy of the request.[8]

However, as a threshold matter, Defendant must demonstrate standing in order to oppose the subpoenas.  Generally, a "motion to quash or modify a subpoena duces tecum may only be made by the party to whom the subpoena is directed."[9]  The court may make an exception if the party seeking to challenge the subpoena has a personal right or privilege regarding the information requested.[10]  In its reply brief, the City admits it has no standing to move to quash the subpoena under Rule 45, rather it argues its standing to challenge the subpoenas comes under Rule 26 regarding the protective order request.  Pursuant to Rule 26(c), a "party or any person from whom discovery is sought may move for a protective order . . . . [and the] court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including  . . . forbidding the disclosure or discovery."[11]

---

[7] *See Speed Trac Techs., Inc. v. Estes Exp. Lines, Inc*., No. 08-212-KHV, 2008 WL 2309011 at *3 (D. Kan. June 3, 2008).
[8] *Johnson ex rel. Johnson v. Olathe Dist. Sch*., 212 F.R.D. 582, 586 (D. Kan. 2003).
[9] *Warkins v. Piercy*, No. 16-MC-216-CM-GEB, 2016 WL 7188284, at *3 (D. Kan. Dec. 12, 2016).
[10] *Id*.
[11] Fed. R. Civ. P. 26(c)(1)(A).

C.      Discussion[12]

The City cites *Firetrace USA, LLC v. Jesclard*[13] for the proposition that "a party may move for a protective order to protect ***itself*** from 'annoyance, embarrassment, oppression, or undue burden or expense,' regardless of whether the moving party is seeking to prevent disclosure of information by a nonparty, as long as the moving party can tie the protected information to an interest listed in the rule, such as annoyance, embarrassment, etc."[14]  This aligns with the District of Kansas caselaw which states the party moving for a protective order, even in relation to a third-party subpoena, must assert a protective order is needed to protect ***itself*** from any of the dangers listed in Rule 26(c).[15]

The City argues it is seeking to protect Rivarola, its employee, from the harassment and harm to her client relationships likely to result from issuance of the subpoenas.  The problem with the City's argument, however, is that the City, as the moving party, is not alleging any harassment or harm to ***itself***.  Rather, it is alleging harm to Rivarola's on-the-side consulting business, which has nothing to do with the City or the business the City conducts.  As such, the Court is doubtful the City has standing to seek a protective order in this circumstance.

---

[12] Unless otherwise specified, the parties' positions are taken from the briefs regarding the Motion for Leave to File Amended Complaint (ECF Nos. 49, 53, and 55).

[13] No. CV-07-2001-PHX-ROS, 2008 WL 5146691, at *2 (D. Ariz. Dec. 8, 2008).

[14] *Id.*

[15] *See McDonald v. Kellogg Co.*, No. 08-2473-JWL, 2009 WL 10664465, at *2-3 (D. Kan. Nov. 5, 2009) ("Plaintiffs are seeking relief in the form of a protective order but have not asserted that a protective order is needed to protect them from any of the dangers listed in Rule 26(c)."); *Epling v. UCB Films, Inc.*, No. 98-4226, 2000 WL 1466216, at *2 (D. Kan. Aug. 7, 2000) (finding Rule 26(c) inapplicable where defendant sought a protective order regarding discovery sought from a third party but could not demonstrate that defendant would suffer annoyance, embarrassment, oppression, or burden).

Nonetheless, Rule 26(b)(2)(C) provides "[o]n motion or ***on its own***, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the proposed discovery is outside the scope permitted by Rule 26(b)(1)."[16]  Here, on its face, it does not appear to the Court the documents requested from the clients of Ms. Rivarola's consulting business are relevant to the instant lawsuit, and Plaintiff has not convinced the Court of such relevancy.  As stated above, when relevancy is not apparent on the face of the request, the party seeking the discovery has the burden to show relevancy.[17]

In this instance, the subpoenas request information having nothing to do with Ms. Rivarola's work or compensation as City Administrator, but rather seek information regarding her independent consulting business.  This case involves whether, based on sex, Plaintiff was compensated less than Rivarola for performing the same City Administrator functions.  While discovery is broad, the Court cannot discern how Rivarola's actions outside of her City Administrator duties are relevant to the issues at hand.  How many hours Rivarola worked and the compensation she received while performing her City Administrator duties, however, would be relevant, and such information can be sought at Ms. Rivarola's deposition or through a document request from the City.

Thus, the Court, in accordance with its authority pursuant to Rule 26(b)(2)(C), **GRANTS** the City's Motion to Quash Subpoenas and for Protective Order.

---

[16] Fed. R. Civ. P. 26(b)(2)(C)(iii) (emphasis added).
[17] *Johnson*, 212 F.R.D. at 586.

III.    **Plaintiff's Motion for Leave to File Amended Complaint (ECF No. 49)**

A.    **Proposed Amendment**[18]

Plaintiff seeks leave to amend his Complaint to add the City's Mayor, David Breuer, and Ms. Rivarola as Defendants, and to add two counts of retaliation against them and the City. Plaintiff proposes to allege (1) retaliation in violation of the EPA and (2) retaliation for his exercise of protected First Amendment speech in violation of 42 U.S.C. §§ 1983 and 1988. After thoughtful discussion during the July 20, 2020 hearing, Plaintiff withdrew his request to add Ms. Rivarola as a defendant. Therefore, the Court only considers the request to add Mayor Breuer and the two counts of retaliation.

On May 13, 2020, Plaintiff states he received a telephone call from Leavenworth County Sheriff's Lieutenant Josh Patzwald ("Patzwald") informing him he was under a criminal investigation based on "a complaint" by the City. Plaintiff alleges Patzwald referenced his lawsuit against the City during this telephone call. Patzwald informed Plaintiff the complaint was related to the Kansas Police and Retirement Fund ("KP&F"). The complaint alleges during Plaintiff's years as serving as City Administrator, Plaintiff should have segregated his City Administrator compensation from his Police Chief compensation and only reported the Police Chief compensation to KP&F. Plaintiff states Patzwold relayed to him the reason the Sheriff's office was investigating the matter was because someone was suggesting Plaintiff may have acted fraudulently in submitting his

---

[18] The information recited in this section is taken from Plaintiff's Motion for Leave to File Amended Complaint and the attached proposed First Amended Complaint. (ECF Nos. 49 and 49-1).

"total compensation" to KP&F without excluding his City Administrator compensation.

Plaintiff denies this accusation and insists that when he served as City Administrator, he reached out to KP&F and specifically discussed the "total compensation" issue with a representative who gave him explicit direction to report his total compensation to KP&F, and not exclude his City Administrator compensation.

Plaintiff further states Mayor Breuer knew about Plaintiff's reporting of his total compensation to KP&F and knew about the instruction he received from KP&F. Plaintiff alleges no one at the City (prior to Plaintiff filing his lawsuit) ever raised any concern about Plaintiff's reporting his total compensation to KP&F. Plaintiff alleges the only reason the City and Mayor Breuer are now making an issue of Plaintiff's reporting of his total compensation is because of his filing and prosecution of this lawsuit.

### B.    Discussion

#### 1.    Standing

The City opposes Plaintiff's proposed amendment based on timeliness and futility concerns. Although not addressed by either party, it should be noted current parties unaffected by a proposed amendment do not have standing to assert claims of futility on behalf of a proposed defendant. Rather, current parties only possess standing to challenge an amended pleading directed to proposed new parties on the basis of undue delay or prejudice.[19] Therefore, while the City does have standing to oppose the Motion to Amend based on timeliness, it does not have standing to oppose on futility grounds.

---

[19] *Coleman v. Apple Eight Hosp. Mgmt., Inc.*, No. 6:16-CV-01343-JTM, 2017 WL 1836974, at *3 (D. Kan. May 8, 2017).

2.      **Timeliness**

The City argues Plaintiff's proposed amendment is untimely because the motion to amend deadline passed on January 31, 2020 and Plaintiff filed his Motion to Amend on June 5, 2020, which in addition to being past the amendment deadline, was filed less than a month before the close of discovery.  Plaintiff argues, however, he only recently found out about the criminal complaint on May 13, 2020.  Plaintiff states he thereafter promptly filed this Motion to Amend on June 5, 2020.

When a proposed amendment is offered after the deadline to amend pleadings has passed, Fed. R. Civ. P. 16(b)(4) is implicated.  It provides a "schedule may be modified only for good cause and with the judge's consent."  "Good cause" requires the moving party to "show that the amendment deadline could not have been met even if it had acted with due diligence."[20]  Thus, the party requesting an untimely amendment "is normally expected to show good faith on its part and some reasonable basis for not meeting the deadline."[21]

Because Rule 16 requires diligence, if a party knows of "the underlying conduct but simply failed to raise [its] claims, . . . the claims are barred."[22]  On the other hand, "Rule 16's good cause requirement may be satisfied . . . if a [party] learns new information

---

[20] *Carefusion 213, LLC v. Prof'l Disposables, Inc.*, No. CIV.A. 09-2616-KHV, 2010 WL 4004874, at *3 (D. Kan. Oct. 12, 2010) (internal citations omitted); *see also Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1240-41 (10th Cir. 2014).
[21] *Livingston v. Sodexo & Affiliated Co.*, No. 11-4162-EFM-KGS, 2012 WL 2045292, at *1 (D. Kan. June 6, 2012) (internal citations omitted).
[22] *Gorsuch*, 771 F.3d at 1240 (internal citations omitted).

through discovery or if the underlying law has changed."[23]  It is in the Court's discretion to decide whether the movant has established good cause sufficient to modify the scheduling order deadlines.[24]

Thus, because Plaintiff found out about the criminal complaint on May 13, 2020, Plaintiff has established good cause to seek an amendment of the pleadings after the deadline.

### 3.    Futility

The City also argues the amendment as to Mayor Breuer is futile.  The City's response makes no opposition of adding the two retaliation claims against the City. However, as stated above, the City does not have standing to oppose the addition of Mayor Breuer based on futility, and as such the Court cannot bar the proposed amendment on this basis.[25]  But, even considering the merits of the City's arguments, the Court would still allow the amendment because it finds adding the retaliation claims against Mayor Breuer is not futile.

"A proposed amendment is futile if the complaint, as amended, would be subject to dismissal."[26]  The proposed pleading is then analyzed using the same standard as a motion to dismiss under Rule 12(b)(6).  When utilizing this standard, "the court must accept as true all well-pleaded factual allegations and view them in the light most favorable to the

---

[23] *Id.*
[24] *Carefusion 213*, 2010 WL 4004874, at *3 (internal citations omitted).
[25] *See, e.g., Silva v. Ekis*, No. 15-3007-CM, 2017 WL 5465531, at *1 (D. Kan. Nov. 14, 2017).
[26] *Farmers Bank & Trust, N.A. v. Witthuhn*, No. 11-2011-JAR, 2011 WL 5920941, at *2 (D. Kan. Nov. 28, 2011) (citing *Jefferson Cnty. Sch. Dist. No. R–1 v. Moody's Investors's Servs., Inc.,* 175 F.3d 848, 859 (10th Cir. 1999)).

pleading party."[27]  Only if the court finds "the proposed claims do not contain enough facts to state a claim for relief that are plausible on their face or the claims otherwise fail as a matter of law"[28] should the court find the amendment futile.

First, the City argues Plaintiff has failed to state enough facts in his proposed amended complaint to state a retaliation claim against Mayor Breuer.  To make out a claim of unlawful retaliation by government officials in response to the exercise of a First Amendment right to petition, a plaintiff must show:  (a) engagement in a constitutionally protected activity; (b) the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (c) the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.[29]

The Court finds Plaintiff has sufficiently pled these elements to survive a futility argument.  First, Plaintiff has adequately pled he was engaged in a constitutionally protected activity as filing and pursuing a lawsuit against the City to address a grievance is a First Amendment right.[30]  Second, Plaintiff alleges Mayor Breuer's actions caused a criminal investigation to be opened against him for allegedly fraudulent conduct, which satisfies the second element regarding injury.[31]  Finally, as to the third element, Plaintiff

---

[27] *Carefusion 213*, 2010 WL 4004874, at *5 (citing *Anderson v. Suiters,* 499 F.3d 1228, 1238 (10th Cir. 2007) (internal citations omitted)).

[28] *Id*. (citing *Raytheon Aircraft Co. v. U.S.,* 501 F. Supp. 2d 1323, 1327 (D. Kan. 2007)).

[29] *See Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000).

[30] *Van Deelen v. Johnson*, 497 F.3d 1151, 1156, 1158 (10th Cir. 2007).

[31] *Marten v. Godwin*, No. 08-4031-EFM, 2010 WL 11526759, at *5 (D. Kan. Aug. 2, 2010), aff'd, 445 F. App'x 65 (10th Cir. 2011) (stating the injury can be having to face charges of a serious nature).

alleges the only reason Mayor Breuer and the City filed the criminal complaint was in retaliation of the his bringing this lawsuit.  In support, Plaintiff alleges Mayor Breuer knew about the reporting of his total compensation to KP&F and knew about the instruction Plaintiff received from KP&F to not segregate the funds, but did not take any action regarding it until after the filing of this lawsuit.  He also states Breuer, as Mayor, would have been the official with the authority to sign off on any criminal complaint.  In his Motion to Amend, Plaintiff further states Mayor Breuer personally attended Plaintiff's deposition on June 3, 2020 and that during the deposition, the City's counsel questioned Plaintiff about the reporting of his total compensation to KP&F.  Thus, it is plausible to conclude the filing of the criminal complaint was substantially motivated as a response to Plaintiff's exercise of constitutionally protected conduct.

The City also argues that even if there are enough facts to state a plausible claim for relief against Mayor Breuer, he would be entitled to qualified immunity.  When a defendant asserts qualified immunity, the responsibility shifts to the plaintiff to meet the burden of demonstrating first, the defendant's actions, examined in the light most favorable to plaintiff, violated a constitutional or statutory right; and, second, "the right at issue was clearly established at the time of the defendant's allegedly unlawful conduct."[32]

At this stage of the case, the Court must take the factual allegations and view them in the light most favorable to the pleading party.  Accordingly, if Plaintiff's allegations are taken as true–that Mayor Breuer filed a criminal complaint as retaliation for his filing and

---

[32] *Van Deelen*, 497 F.3d at 1158.

pursuing of this lawsuit–its reasonable to conclude Plaintiff's First Amendment right has been violated.[33]  Additionally, based on caselaw, the right at issue–a private citizen's filing of a lawsuit against the government to seek redress of a grievance–appears to be clearly established.[34]

Based on the foregoing, the Court cannot find the proposed amendment as to Mayor Breuer is futile, and will allow the same to proceed.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Quash Subpoenas and for Entry of Protective Order is **GRANTED** and Plaintiff's Motion for Leave to File Amended Complaint, as modified during oral argument to exclude Ms. Rivarola, is **GRANTED**.  Plaintiff shall have until **July 31, 2020** to file his First Amended Complaint.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 28th day of July, 2020.


s/Gwynne E. Birzer
GWYNNE E. BIRZER
United States Magistrate Judge

---

[33] *Id.* at 1158-1159.
[34] *Id.*