## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| LLOYD MARTLEY | ) |
| | ) |
|        Plaintiff, | ) |
| | ) |
| vs. | ) |
| | )Case No. 2:19-cv-02138-DDC-GEB |
| | ) |
| CITY OF BASEHOR, KANSAS, | ) |
| DAVID BREUER, | ) |
| | ) |
|        Defendants. | ) |

### PLAINTIFF'S MOTION TO ENFORCE
### DISCOVERY AND SUGGESTIONS IN SUPPORT

Plaintiff moves the Court to enforce Plaintiff's discovery requests as set forth below. Certification of Plaintiff's efforts to resolve this discovery dispute is attached as **Exhibit A.**

### I.    Nature of the Matter Before the Court and Factual Background.

Plaintiff initially brought this action on March 12, 2019 alleging a violation of the Equal Pay Act (hereafter "EPA Claim") against his former employer the City of Basehor (hereafter "City"). In Spring 2020, Plaintiff learned that the City, through its agents including Mayor David Breuer (hereafter Breuer and the City are jointly referred to as "Defendants"), took actions against Plaintiff after it became known Plaintiff was proceeding with his EPA Claim. Once Plaintiff learned of this, he moved to amend his lawsuit to add retaliation claims against Defendants.

Specifically, Plaintiff's retaliation claims were filed after he learned that Defendants notified the Kansas Public Employee Retirement Service (KPERS) in April 2019 of an alleged financial impropriety by Plaintiff with regard to his retirement wages. Then, also

while this case was pending, on January 30, 2020, Defendants caused a criminal investigation to be opened against Plaintiff.

Since amending his Complaint, Plaintiff served discovery requests seeking documents (e.g. e-mail, text messages, etc.) that pertain to his retaliation claims. As is evident from the timing of the events surrounding these claims, the retaliatory actions all occurred while Defendants were engaged with outside legal counsel to address Plaintiff's EPA Claim.

Defendants claim they did not retaliate against Plaintiff by reporting him to KPERS and causing a criminal investigation to be instituted against him. According to deposition testimony, Defendants are relying upon a defense that the reports made against Plaintiff to outside agencies were "completely disconnected" from the EPA Claim and motivated by a perceived "fiduciary responsibility". Plaintiff believes Defendants were motivated instead by a scheme to get back at him and gain leverage to force him to resolve his legal claims in light of Defendants' pursuit of criminal charges against Plaintiff via outside authorities. Because the locus of factual events pertaining to Plaintiff's retaliation claims occurred *post suit* and because Defendants' past and present legal counsel were involved in the reporting and criminal investigation, Defendants' communications with their attorneys and with third parties about Plaintiff are directly relevant to the question of Defendants' motive and intent in reporting Plaintiff.

## II.   Issues Presented and Argument.

Plaintiff seeks the documents, texts and emails reflecting Defendants' discussion about him amongst City employees and elected officials, Defendants' legal counsel and various third parties with whom it contacted about Plaintiff's alleged financial improprieties.

**A. Plaintiff seeks appropriate disclosure of attorney-client and work-product privileged documents and such disclosure is not overbroad nor unduly burdensome**

Plaintiff's discovery requests, as discussed above, unfortunately must implicate disclosure, and possibly production, of communications with legal counsel and by legal counsel pertaining to Plaintiff's retaliation case. Plaintiff has attached as **Exhibits B** and **C** the disputed discovery requests which include objections based on claimed privilege of one kind or another. *See* Responses to Requests for Production 1-8, **Ex. B**, and Supplemental Responses to Requests for Production, **Ex. C**. The Court should note that the objections apparently interposed by Defendants still rest on language in the scheduling order that permit them not to identify documents on a privilege log. On this point, Plaintiff has filed a motion to amend the scheduling order which he incorporates by reference for the Court's consideration. *See* Doc. 123.

It is Plaintiff's position with respect to these requests that Defendants must at least identify on a privilege log all responsive communications as to these requests to which they assert claims of privilege. Defendants have provided what appears to be a partial log of four responsive documents, but Defendants are also standing on objections of "overly burdensome" which clearly suggests Defendants do not believe they have an obligation to even provide a log as to the responsive records. *See e.g.* Supplemental Responses to Requests for Production #2, **Ex. C**.

Plaintiff maintains this information is relevant because of the timing during which it was created makes it reasonable to believe it reflects on the motive and intent of Defendants.

As this is a retaliation claim, Plaintiff must introduce circumstantial evidence that the alleged retaliatory motive actually relate[s] to the question of discrimination in the particular employment decision. *See Medlock v. Ortho Biotech, Inc.*, 164 F.3d 545, 550 (10th Cir. 1999). Plaintiff may prove a discriminatory motive by presenting evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged retaliatory attitude. *Id.* It thus stands to reason Plaintiff is entitled to discovery on such records that may reflect a retaliatory attitude with respect to the decision by Defendants to report him for alleged financial impropriety to State agencies and law enforcement.

With respect to the claims of privilege in this instance, as the Court is aware, privileges in the law are not favored because they operate to deny the factfinder access to relevant information. *Adams v. St. Francis Regional Med. Center*, 264 Kan. 144, Syl. ¶ 3, 955 P.2d 1169 (1998). To that end, not all communications with an attorney or created by an attorney are privileged. *See New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 443-44 (D. Kan. 2009) (O'Hara)(stating not all communications with lawyers are privileged).[1] Both the

---

[1]  "Not every communication between an attorney and client is privileged, only confidential communications which involve the requesting or giving of legal advice." "The focal point of the protection afforded by the attorney-client privilege lies with 'communications' between attorneys and their clients." And, although the privilege protects disclosure of substantive communication between attorney and client, "it does not protect disclosure of the underlying facts by those who communicated with the attorney." There must be a connection between "the subject of the communication and the rendering of legal advice" for the attorney-client privilege to shield the communication from disclosure. Legal advice must predominate for the communication to be protected. The privilege does not apply where the legal advice is merely incidental to business advice. There is a distinction between a conference with counsel and a conference at which counsel is present; the mere presence of counsel at a meeting does not make all communications during the meeting privileged. Further, the subject matter of meetings with an attorney, the persons present, the

attorney-client privilege and the work-product doctrine privilege are subject to a "clear showing" that it applies such that blanket or conclusory claims of protection do not suffice. ***Lawson v. Spirit AeroSystems, Inc.,*** 410 F. Supp. 3d 1195, 1207 (D. Kan. 2019).

Considering the state of Defendants' responses and the admission that they believe they do not need to disclose responsive communications on a privilege log and that logging the responsive privileged communications is an undue burden, this implies they have not logged all responsive documents to the discovery requests at issue. But considering the law, the Court must require Defendants to provide a privilege log as to the communications at issue so Plaintiff can assess the applicability of privilege claims to the records in the first place. The information sought by the discovery requests is directly relevant to the question of Defendants' motive and intent and if there is information that is responsive it must at least be disclosed as not all communications with an attorney are privileged. ***New Jersey v. Sprint Corp.***, 258 F.R.D. at 443-44. Plaintiff is not yet claiming he is entitled to production of those privileged documents nor claiming a waiver of privilege,[2] without seeing and assessing an appropriate log (though Plaintiff does intend to move to compel production of privileged communications if appropriate upon disclosure of the responsive documents).[3]

---

location of the meetings, or the persons arranging the meetings are also not protected by the privilege."

[2] Based on the deposition testimony thus far, insofar as the information is indeed privileged, Plaintiff anticipates that the documents withheld based on privilege may be subject to a claim of an "at issue" waiver of privilege. *See **Simmons Foods, Inc. v. Willis***, 191 F.R.D. 625, 635 (D. Kan. 2000).

[3] Plaintiff is however seeking an *in camera* review of the handful of documents that have been provided on a privilege log thus far, *see below* Section II D.

But it is not proper for Defendants to resist disclosing the responsive privileged documents on a privilege log by making blanket assertions of privilege.

Plaintiff is not seeking disclosure of *all* privileged communications, rather his requests are limited to disclosure of records directly pertaining to Defendants' report of Plaintiff to outside agencies for alleged financial impropriety as tailored by the discovery request. Plaintiff has also agreed to cut off the disclosure obligation as of June 5, 2020 (the date Plaintiff's counsel notified defense counsel of his alleged retaliation claims). Thus, Plaintiff's discovery requests are appropriately limited in scope to discovery of records that could pertain to Defendants' motive and intent, or with the benefit of a privilege log, flesh out the timeline of events surrounding Defendants' retaliatory action against Plaintiff. It is also reasonable to conclude that there are documents that are not truly privileged (i.e. not containing legal advice or otherwise created in anticipation of litigation) which are being shielded from production by Defendants' blanket privilege assertion.

### B.  Production of Insurance Assessment Document.

Plaintiff's Requests for Production of Documents 3 and 4 (*See* **Exhibit C**) seek production of records exchanged with third party entities. Aside from a privilege assertion by Defendants which is addressed in the prior section, there is at least one particular document at issue that is responsive but Defendants have not produced, even though a portion of it (2 pages) was produced as part of the Leavenworth County Sheriff's Investigation Report. Specifically, within days of the City (through Rivarola) convincing the Sheriff's Office to undertake investigating Plaintiff, one of the very first documents provided by Rivarola to the criminal investigator, for use in his investigation, was titled "Initial Case Assessment and

Budget 7.8.19", which is a document sent by defense counsel to the City's insurance carrier

containing details about Plaintiff's lawsuit. Rivarola indicated to the investigator that the

document had "background information relevant to this case". The Sheriff's investigator

describes on page 3 of his report receiving the entire document from Rivarola[4] but he only

attached two of the pages to his Report:

> I drove to Basehor City Hall, where I met with Rivarola. I collected the pay records Rivarola had compiled, a copy of an e-mail between Martley and Kristine Olson March 19th 2014, and a document titled Initial Case Assessment and Budget 7.8.19. Rivarola advised the Case Assessment document was reference a separate, civil matter, and has background information relevant to this case.
>
> ***
>
> The Initial Case Assessment document pertained to matters involving a separate civil issue between the City of Basehor and Martley. Of interest to this case was background information contained on pages two and three of the document "Liability-Causation." This information documents the time frame of Martley's job assignments regarding City Administration, along with a yearly pay break down from 2009 to 2018. I have attached these pages to the file.

Despite Plaintiff's requests for any documents that the City provided to third parties in

connection with the investigation of Plaintiff, Defendants failed to provide any portion of

the "Initial Case Assessment and Budget 7.8.19" document, even though it clearly was

provided by Rivarola as part of the investigation. Plaintiff's counsel raised this with defense

counsel but she still refuses to produce the document, now claiming perhaps Rivarola did

not turn over the entire document and, even if she did, it would constitute an inadvertent

disclosure of a privileged document. This, even though it is clear the entire document *was*

*provided* and done so with the intent that it would play a role in the investigator's

---

[4] When asked in her deposition about the investigator's reference to her (Rivarola) providing him the document, Rivarola confirmed that -- assuming the investigator is correct that he received the document from Rivarola -- she likely would have provided him the entire document, not just a few pages of it.

investigation.[5] Defendants have no basis to continue to withhold this record and any claim of privilege has been waived because the communication was provided to a third party outside of the privilege relationship. ***Lawson***, 410 F. Supp. 3d at 1206 ("Generally, when a client communicates with his or her attorney in the presence of a third party or voluntarily discloses privileged communications, attorney-client privilege is waived."). As such, Defendants should be compelled to produce the entire document titled "Initial Case Assessment and Budget 7.8.19", and any other documents Defendants provided to third parties as part of the investigation but have withheld even though responsive to Plaintiff's document requests 3 and 4.

### C.   Complete Requested Searches by RFP 2.

Plaintiff's Request for Production 2 requests that certain searches, which by their terms seek information directly relevant to Plaintiff's retaliation claims, be conducted on electronic devices used by various custodians, including servers. It appears, based on Defendants' responses and objections, the requested search has not been done. Moreover, the objections and response to RFP 2 should be overruled and a complete response by Defendants should be ordered.

*1. Request 2 is not improper under the Federal Rules.*

Defendants assert that Plaintiff's request is not permitted under the federal rules of civil procedure. Plaintiff in no way sees how that is the case. The request seeks the

---

[5] Plaintiff's counsel has sought the entire document through the Sheriff's office but it has taken the position that, since the document in question was not created by the Sheriff's office, it is not at liberty to produce it.

production of relevant documents and the relevance of the material sought is plain on its face as pertaining to Plaintiff's retaliation claims.

### 2. Search of non-party devices is required.

Defendants resisted conducting the requested searches in part because the request sought that Defendants conduct searches on "non parties" including its City Council Members and City Attorney. This objection is not proper because Defendants are obliged to produce documents in their possession custody or control. This requirement is understood to include when a party has a "legal right to obtain the documents on demand" and that therefore Rule 34 enables a party seeking discovery to require production of documents beyond actual possession if such party has the "right or *ability to influence* the person in whose possession the documents lie." **Ice Corp. v. Hamilton Sundstrand Corp.**, 245 F.R.D. 513, 517 (D. Kan. 2007). Considering this, it is in no way clear how Defendants' objection that it need not search for responsive documents on the devices of its City Council Members or its City Attorney (Marcano) can stand. Moreoever, this particular objection was lodged *after* the deadline for objecting had passed.

### 3. Defendants' responses and objections should be overruled for noncompliance with the federal rules.

Defendants' objections do not comply with the requirements of FRCP 34(b)(2)(B) and are problematic on several bases. First, they do not clearly state what, if any, documents responsive to the searches are being withheld based on the objections. *See* **Ad Astra Recovery Servs., Inc. v. Heath**, No. 18-1145-JWB-ADM, 2020 WL 374685, at *7 (D. Kan. Jan. 23, 2020) (stating that FRCP 34(b)(2)(B) requires a party to state whether anything is being held on the basis of the objection). Second, Defendants' response identifies

approximately 144 documents that "have been produced previously" as responsive to the search. *See* Response to Request for Production #2, **Ex. C**, (identifying CITY003544-3688 as responsive previously produced documents). But Plaintiff's counsel reviewed the documents in the identified bates range and a majority of the documents are facially not even responsive to the request. In other words, the search terms in RFP 2 do not even appear in most of the documents that Defendants identify as responsive, and Plaintiff suspects there are numerous other documents *that are responsive* to the search terms but have not been produced because the requested search has not been done. Despite this, Defendants' objection and response claims they have "conducted the requested searches". But as the Court can see by the incoherence and the flat failure to identify documents withheld based on objections and reliance upon *previously* produced documents that are not even responsive, Defendants' representations and responses are afoul of the federal rules of discovery.

The intent of subsection 34(b)(2)(C) was to "end the confusion that frequently arises when a producing party states several objections and still produces information, leaving the requesting party uncertain whether any relevant and responsive information has been withheld on the basis of the objections." *See* **Ad Astra**, 2020 WL 374685, at *7. Failure to follow subsection 34(b)(2)(C) by stating whether responsive documents were withheld based on the objection could subject a responding party to having the objection overruled, or even lead to sanctions. *See, e.g.,* **Chow v. SentosaCare, LLC**, 19-cv-3541, 2020 WL 559704, at *3 (E.D.N.Y. Jan. 23, 2020) (threatening sanctions for violating the requirements of Rule 34(b)(2)(C)); **Bally v. First Nat'l Bank Omaha**, 17-cv-10632, 2018 WL 1558861, at *1 (E.D. Mich. Jan. 17, 2018) (compelling responding party to produce withheld documents

and awarding attorney fees against it); ***Polycarpe v. Seterus, Inc.***, 6:16-cv-1606, 2017 WL
2257571, at *4 (M.D. Fla. May 23, 2017) (overruling objections for failing to comply with
Rule 34(b)(2)); ***Watkins v. Trans Union, LLC***, 2:14-cv-00135, 2018 WL 3008639, at *2
(S.D. Ind. June 15, 2018) (overruling objections and precluding limitations on the scope of
employee's deposition).

     The confusing nature of Defendants' response is further illustrated by their written
response that is "subject to" the objections. Such a response is "invalid and unsustainable".
***Sprint Commc'ns Co., L.P. v. Comcast Cable Commc'ns, LLC***, No. 11-2684-JWL,
2014 WL 545544, at *2 (D. Kan. Feb. 11, 2014) ("The court recognizes that it has become
common practice among many practitioners to respond to discovery requests by asserting
objections and then answering 'subject to' or 'without waiving' their objections. This
practice, however, is manifestly confusing (at best) and misleading (at worse), and has no
basis at all in the Federal Rules of Civil Procedure. The court joins a growing number of
federal district courts in concluding that such conditional answers are invalid and
unsustainable.").

     Considering this, Plaintiff asks the Court to find that Defendants have waived their
objections as to this request. The responses provided are at best confusing, and given the
information in the discovery response, Defendants clearly did not run the actual searches
requested in the RFP. This leaves Plaintiff to wonder what responsive information is being
withheld under the smokescreen of objections. The rules guiding discovery responses have
been in place for years now and given the responses by Defendants in light of those rules, it
is appropriate to find the objections waived because the objections were not preserved given

the noncompliant discovery response. Judge Vratil made a similar determination in a different matter due to improperly formulated objections. *See* Hearing on Discovery Motion, **Ex. D** P. 67-68. Similarly, Plaintiff believes Judge Vratil's decision is an appropriate finding to apply here as to Defendants' non-compliance with the discovery rules.[6]

###       D.      *In Camera* Review Request.

On November 30, 2020, Defendants provided a privilege log containing four separate entries, all of which directly relate to the investigation of Plaintiff. *See* **Exhibit E**. Plaintiff believes these communications may contain factual information about whether Defendants and/or their attorneys viewed the reporting issue as a means of pushing back (i.e. retaliating) against Plaintiff for exercise of his constitutional right of filing his EPA Claim. Plaintiff's counsel has asked that Defendants submit these communications to the Court for *in camera* review to assess whether they contain factual information that is not appropriate for being withheld as privileged. Defendants have indicated they do not believe the communications are "relevant", thus they need not be submitted for *in camera* review. Plaintiff believes they clearly are relevant just from the descriptions contained in the privilege log and should be submitted for *in camera* review to determine whether they truly contain an exchange of legal advice or instead reflect the direct motive and intent of Defendants in making the report of Plaintiff to state authorities.

### III.    Conclusion.

Plaintiff's discovery requests seek simply to obtain documents about his retaliation claims during the relevant time period. While it is true that attorney-client communications

---

[6] Notably, the discovery request considered by Judge Vratil's ruling was substantially similar to Request for Production 2 which is at issue in this motion.

and privileged documents may be withheld from production, there is no legal basis to

prevent those documents from, at least, being disclosed on a privilege log and potentially

subject to *in camera* review, or subject to a motion asserting waiver of privilege after assessing

the evidentiary basis for the privilege assertion. In addition, Plaintiff seeks to ensure a

complete and appropriately thorough search has been performed in order to obtain the

documents responsive to RFP 2. Defendants' objections and responses are confusing and

can only lead Plaintiff to question the extent to which a complete search has been

performed.

Respectfully submitted,

REAVEY LAW LLC

By:    /s/ Patrick G. Reavey              .
          Patrick G. Reavey KS# 17291
          Kevin C. Koc KS# 24953
          Livestock Exchange Building
          1600 Genessee Suite 303
          Kansas City, MO 64102
          Ph: 816.474.6300
          Fax: 816.474.6302
          Email: preavey@reaveylaw.com
          Email: kkoc@reaveylaw.com
          Website: www.reaveylaw.com