**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

LLOYD MARTLEY,          )
         )
      **Plaintiff,**     )
         )
v.         )    **Case No. 19-2138-DDC-GEB**
         )
CITY OF BASEHOR, KANSAS,   )
         )
      **Defendant.**   )
         )

**MEMORANDUM AND ORDER**
**MEMORIALIZING RULINGS FROM JANUARY 27, 2021 HEARING**

On January 27, 2021, the Court conducted a motion hearing. Plaintiff appeared through counsel, Patrick Reavey and Kevin Koc. Defendants and Movant Hinkle Law Firm appeared through counsel, Michelle Stewart. Movant Fisher, Patterson, Sayler & Smith, LLP appeared through counsel, David Cooper. After hearing arguments from counsel, the Court orally entered the following orders (*see* Order, ECF No. 149): Plaintiff's Motion to Amend Complaint (**ECF No. 90**) was **GRANTED** and Plaintiff was ordered to file his amended complaint by February 5, 2021; all three Motions to Quash/Motions for Protective Order (**ECF Nos. 123, 124, 128**) were **DENIED**, in that regardless of which party produces the information, all billing records and/or any applicable privilege logs were ordered produced by February 18, 2021; and Plaintiff's Motion to Amend Scheduling Order (**ECF No. 129**) was **GRANTED** in that the described modifications are made to the privilege log requirement paragraph and the schedule is briefly extended as set forth below. Finally,

1

Plaintiff's Motion to Compel Discovery (**ECF No. 130**) was **GRANTED in part and DENIED in part**. This order memorializes the Court's rulings from the conference.

## I.      Background[1]

On March 12, 2019, Plaintiff Lloyd Martley filed a Complaint against Defendant City of Basehor, Kansas ("City") alleging violation of the Equal Pay Act ("EPA"). Plaintiff served as the City's Police Chief from 2008 until July of 2018. At various times between 2009 and July of 2018, Plaintiff, in addition to serving as Police Chief, also served as City Administrator. He retired from both positions in July of 2018.

After Plaintiff's retirement, the City hired Leslie Rivarola as the new City Administrator. Plaintiff contends the City paid him significantly less than what it paid her for performing the same job in violation of the EPA. The City denies it violated the EPA, primarily contending Plaintiff, because he served as Police Chief, only served as a part-time city administrator and therefore did not perform work substantially equal to that of Rivarola.

Suffice it to say, this case has not lacked contention throughout the discovery process, particularly among counsel. Nor has this case lacked multiple status conferences, discovery hearings, and modifications to the schedule. Scheduling was initially set for September 2019 but was delayed after the City filed a motion to disqualify Plaintiff's counsel. After a formal hearing, the undersigned denied the motion to disqualify (ECF No.

---

[1] Unless otherwise indicated, the information recited in this section is taken from the Complaint (ECF No. 1), Amended Complaint (ECF No. 71), the Answers (ECF Nos. 4, 75), and the briefing surrounding the pending motions (ECF Nos. 90, 95, 104, 123, 124, 128-132, 136-139, 142, 146). This background information should not be construed as judicial findings or factual determinations.

22) and established a schedule in January 2020. (ECF No. 24.) Following the scheduling conference, the parties participated in discovery and engaged in an unsuccessful mediation in May 2020. (ADR Report, ECF No. 46.)

After mediation failed, it appears the partied engaged in a battle of the motions. Defendant filed a motion to quash subpoenas issued by Plaintiff (ECF No. 39). Soon after, Plaintiff filed a motion to amend the complaint (ECF No. 49) to add the City's Mayor, David Breuer, and Rivarola as Defendants, and to add two counts of retaliation against them and the City. Because the Motion to Amend, if granted, would have resulted in additional discovery, all deadlines were stayed and the Pretrial Conference, originally set for July 20, 2020, was converted to a motions hearing. During the July 20 hearing, Plaintiff withdrew the request to add Rivarola as a defendant. After hearing arguments of counsel and consideration of the briefs, both motions were granted. (Mem. & Order, ECF No. 61.) The undersigned found good cause for Plaintiff to amend after the scheduling order deadline and found the addition of Mayor Breuer was not futile on its face. (*Id.*) The order quashing the subpoenas was upheld by District Judge Daniel D. Crabtree. (Mem. & Order, ECF No. 96.)

Plaintiff filed his Second Amended Complaint on August 14, 2020. (ECF No. 71.) This revised pleading added two claims of retaliation against the Mayor and the City after Plaintiff learned through discovery he was the subject of a criminal investigation by the Leavenworth County Sheriff's office ("Sheriff"). He contends the investigation was based on a complaint by the City regarding his alleged fraudulent failure to segregate his City

Administrator compensation from his Chief of Police compensation for purposes of reporting his earnings to his retirement account.

A status conference on September 24, 2020 resulted in a new schedule, which required completion of discovery by January 15, 2021 and a pretrial conference was set for February 16, 2021. (ECF No. 93.) Discovery was progressing, and the parties sought and received numerous extensions to file discovery motions. (*See* ECF Nos. 42, 102, 115, 133.)

Just prior to the conference, Plaintiff filed a new Motion to Amend the Complaint (ECF No. 90); then five additional motions were filed by various parties and non-parties in December 2020. In an effort to address all pending motions, the undersigned set a motion hearing for January 27, 2021. (Notice, ECF Nos. 135, 143.) Each motion is addressed below.

## II.    Plaintiff's Motion for Leave to File a Third Amended Complaint (ECF No. 90)

### A.    Parties' Positions

Plaintiff seeks leave to file a Third Amended Complaint to add Rivarola as a defendant. He argues he received multiple documents through discovery detailing how the criminal investigation was initiated and by whom. (ECF No. 90 at 2.) He contends these "New Documents clearly indicate Rivarola was not only involved in the investigation but she spearheaded it. According to Plaintiff, she repeatedly sought action and updates on it, and she involved the City Attorney and the City's outside litigation counsel (first Terelle Mock and then later Michelle Stewart) in the investigation long before Plaintiff learned of its existence." (*Id.*)

Plaintiff argues he only recently received these new documents so there is no undue delay or bad faith on his part. He contends there is no prejudice to the City because the new documents and the proposed Third Amended Complaint only contain information of which the City was already aware. Although the City previously opposed the addition of Rivarola, Plaintiff says the City has known all along she was instrumental in getting the Sheriff's office to pursue the investigation. (*See* Pl.'s Motion and Reply, ECF Nos. 90, 104.)

The City and the Mayor argue Plaintiff's motion should be denied as untimely, because the deadline for amendment was in January 2020, nine months prior to Plaintiff's current motion. Defendants contend the amendment would prejudice them because it would belatedly join a new party to the lawsuit, and either Rivarola would have to get up to speed very quickly before the current close of discovery, or it would further delay the case. Defendant also make a "bad faith" argument, suggesting Plaintiff is well aware it is Rivarola's duty as City Administrator to act as a point of contact for an investigation. As such, she had fiduciary and ethical duties to the City to assist. And, because Plaintiff should know this, his attempt to add her to this lawsuit suggests bad faith. Finally, Defendants argue the amendment is futile because the proposed amendment does not include allegations that Rivarola was acting outside her City Administrator duties, so she is entitled to a defense of qualified immunity. (Defs.' Resp., ECF No. 95.)

### B. Legal Standard

#### 1. Fed. R. Civ. P. 16 – Good Cause

When a proposed amendment is offered after the deadline to amend pleadings has passed, Fed. R. Civ. P. 16(b)(4) is implicated. It provides that a "schedule may be modified

only for good cause and with the judge's consent." When considering a motion to amend the pleadings filed past the scheduling order deadline, "judges in this District have consistently applied a two-step analysis based on both Rule 16(b) and Rule 15(a)."[2] In such cases, the court "first determines whether the moving party has established good cause within the meaning of Rule 16(b)(4) so as to justify allowing the untimely motion."[3] Only after finding good cause has been shown will the court proceed to the second step and evaluate whether the broader Rule 15(a) standard for amendment has been satisfied.

"Good cause" under Rule 16(b)(4) requires the moving party to "show that the amendment deadline could not have been met even if it had acted with due diligence."[4] Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief."[5] The party requesting an untimely amendment "is normally expected to show good faith on its part and some reasonable basis for not meeting the deadline."[6] A lack of prejudice to the nonmovant does not constitute "good cause."[7] The district court has discretion to decide whether the movant has established good cause sufficient to modify the scheduling order deadlines, and such a decision is reviewed only for abuse of discretion.[8] If the Court finds Rule 16 is satisfied, the Court then analyzes the request for amendment under Fed. R. Civ. P. 15.

---

[2] *Carefusion 213, LLC v. Professional Disposables, Inc*., No. 09–2616–KHV–DJW, 2010 WL 4004874, at *3 (D. Kan. Oct. 12, 2010) (citations omitted).
[3] *Id*.
[4] *Id*.
[5] *Livingston v. Sodexo & Affiliated Co.*, No. 11-4162-EFM-KGS, 2012 WL 2045292, at *1 (D. Kan. June 6, 2012) (citing *Deghand v. Wal–Mart Stores, Inc*., 904 F. Supp. 1218, 1221 (D. Kan. 1995) (internal citations omitted)).
[6] *Id.*
[7] *Id.* (citing *Deghand*, 904 F. Supp. at 1221).
[8] *Carefusion 213*, 2010 WL 4004874, at *3 (citations omitted).

### 2.    Fed. R. Civ. P. 15 – Factors for Amendment

The Rule 15 standard for permitting a party to amend his or her pleading is well-established. A party may amend its pleading as a matter of course under Rule 15(a)(1), either before the responding party answers or within 21 days after service of a responsive pleading. However, in cases such as this where the time to amend as a matter of course has passed, without the opposing party's consent a party may amend its pleading only by leave of court under Rule 15(a)(2).

Rule 15(a)(2) provides leave "shall be freely given when justice so requires," and the decision to allow an amendment is within the sound discretion of the court.[9] The court considers a number of factors in deciding whether to allow an amendment, including timeliness, prejudice to the other party, bad faith, and futility of amendment.[10] In exercising its discretion, the court must be "mindful of the spirit of the federal rules of civil procedure to encourage decisions on the merits rather than on mere technicalities."[11] The Tenth Circuit acknowledged Rule 15 is intended "to provide litigants 'the maximum opportunity

---

[9] *See J. Vangel Elec., Inc. v. Sugar Creek Packing Co.*, No. 11–2112–EFM, 2012 WL 5995283, at *2 (D. Kan. Nov. 30, 2012) (citing *Panis v. Mission Hills Bank*, 60 F.3d 1486, 1494 (10th Cir. 1995)).

[10] *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Monge v. St. Francis Health Ctr., Inc.*, No. 12–2269–EFM-JPO, 2013 WL 328957, at *2 (D. Kan. Jan. 10, 2013), *report and recommendation adopted*, 2013 WL 328986 (D. Kan. Jan. 29, 2013).

[11] *Hinkle v. Mid-Continent Cas. Co.*, No. 11–2652–JTM-KMH, 2012 WL 2581000, at *1 (D. Kan. July 3, 2012) (citing *Koch v. Koch Indus.*, 127 F.R.D. 206, 209 (D. Kan. 1989)).

for each claim to be decided on its merits rather than on procedural niceties,'"[12] especially in the absence of bad faith by an offending party or prejudice to a non-moving party.[13]

### C.    Discussion

The Court first considers the threshold issue under Rule 16 whether Plaintiff has shown good cause for not seeking amendment before the scheduling order deadline. Defendants' only good cause argument is simply that it's been too long (nine months past the deadline). However, both parties are well aware discussions during the July 2020 conference clearly contemplated adding Rivarola as a defendant if discovery revealed her involvement.[14] Therefore, the Court finds all parties were previously on notice of Plaintiff's potential later motion, and Defendants' arguments opposing a finding of good cause fall flat.

Finding good cause under Rule 16, the Court moves on to address all Rule 15 factors:  timeliness, prejudice to the other party, bad faith and futility.

---

[12] *Carefusion 213*, 2010 WL 4004874, at *4 (citing *Minter*, 451 F.3d at 1204) (quoting *Hardin v. Manitowoc–Forsythe Corp.,* 691 F.2d 449, 456 (10th Cir. 1982)).

[13] *See AK Steel Corp. v. PAC Operating Ltd. P'ship*, No. 15-9260-CM-GEB, 2016 WL 6163832, at *4 (D. Kan. Oct. 24, 2016) (collecting cases; internal citations omitted).

[14] The July 20, 2020 motion hearing was recorded but a transcript was not filed on the docket. (FTR recording, 11:00am-12:09pm, maintained in Chambers' file.) The Court's own handwritten notes from the July 20, 2020 hearing are also maintained in the Chambers file. The Plaintiff's transcript notes the following:

> COURT: Well -- . . . Ms. Rivarola should be on notice that, you know, if discovery reveals she had any part -- played any part . . .in the allegations that are made by Mr. Martley that she was part of instigating and pursuing a criminal complaint for stuff that the plaintiff claims the mayor knew about and advised him about, then. . . we're going to have a different conversation . . . she's going to have to, you know, be subjected to that. If it's plausible enough to state a claim, she's not going to be able to hide. Okay? So, she needs to understand that.

8

### 1.   Timeliness

"Denial of leave to amend is appropriate 'when the party filing the motion has no adequate explanation for [his] delay.'"[15] When arguing lack of timeliness, Defendants repeat their good cause arguments, and such arguments are dismissed summarily. Plaintiff learned of the criminal complaint initiated by the City on May 13, 2020, and soon thereafter first asked to amend on June 5, 2020. With regard to this new request to amend, this is the precise situation discussed at the July hearing—were Plaintiff to gain information through discovery implicating Rivarola's involvement, the Court anticipated further discussion regarding amendment.[16] Here, Plaintiff notes he obtained information through subpoenas to the Sheriff's office and Kansas Public Employees Retirement System ("KPERS") in the "past few weeks" prior to his instant motion, implicating Rivarola's involvement in the filing of the criminal complaint against him. Because Plaintiff acted without appreciable delay, the Court finds Plaintiff's motion timely.

### 2.   Bad Faith

As noted above, Defendants contend Plaintiff knows Rivarola is simply doing her job, serving as a point of contact for an investigation, so Plaintiff likewise knows this is not a proper basis for a retaliation claim. Plaintiff maintains if anyone is guilty of bad faith, it is Defendants because they have known all along of Rivarola's involvement in the criminal complaint. Based on the previous discussions on this topic, the Court tends to agree with Plaintiff and finds no bad faith on Plaintiff's part.

---

[15] *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1206 (10th Cir. 2006) (internal citation omitted).
[16] *See* discussion *supra* note 14.

### 3. Prejudice to Defendants

As the party opposing the amendment, Defendants bear the burden to demonstrate undue prejudice within the meaning of Rule 15.[17] Under Rule 15, "undue prejudice" means "undue difficulty in prosecuting or defending a lawsuit as a result of a change of tactics or theories on the part of the movant."[18] While any amendment invariably causes some "practical prejudice," undue prejudice means that the amendment "would work an injustice to the defendant."[19]

Defendants claim they would be prejudiced by amendment because discovery was set to end January 15, 2021 and this would not provide Rivarola the chance to mount a defense. But Defendants do not explain how Rivarola is truly prejudiced, nor do Defendants take into account potentially remedying the situation by extending the discovery deadline—which is discussed herein by separate motion.[20] Again—considering Defendants have known about Rivarola's involvement and the discussion during the July hearing—the Court cannot ascertain any true prejudice which would occur as a result of amendment. Though all parties may suffer some practical prejudice due to deadlines being extended yet again, such prejudice does not rise to the level of "undue."

---

[17] *Carefusion 213*, 2010 WL 4004874, at *4 (internal citations omitted).
[18] *Id*. (citing *U.S. v. Sturdevant,* No. 07–2233–KHV–DJW, 2008 WL 4198598, at *3 (D. Kan. Sept. 11, 2008) (citing *Minter*, 451 F.3d at 1208; *Jones v. Wildgen,* 349 F. Supp. 2d 1358, 1361 (D. Kan. 2004))).
[19] *Id*. (citing *Sturdevant,* 2008 WL 4198598, at *3; other internal citations omitted).
[20] *See infra* Section IV.

### 4. Futility

In this Court's July 2020 order, it made clear "current parties unaffected by a proposed amendment do not have standing to assert claims of futility on behalf of a proposed defendant. Rather, current parties only possess standing to challenge an amended pleading directed to proposed new parties on the basis of undue delay or prejudice." (ECF No. 61 at 10, 12.[21]) Therefore, the Court incorporates its prior analysis here, and Defendants' futility argument is overruled.

### D. Conclusion on Plaintiff's Motion for Leave to Amend (ECF No. 90)

As noted above, all Rule 15 factors weigh in favor of amendment. For the reasons discussed in the January 27, 2021 hearing and as set forth herein, in the Court's discretion, Plaintiff's Motion for Leave to File a Third Amended Complaint (**ECF No. 90**) is **GRANTED**. Plaintiff was ordered to file his amended pleading no later than February 5, 2021, and he did so as ordered. (Third Am. Compl., ECF No. 150.) However, Plaintiff is cautioned any future request for amendment will be disfavored and highly scrutinized.

## III. Three Motions to Quash the Subpoenas of Law Firm Billing Records (ECF Nos. 123, 124, 128)

The three instant motions to quash are related to the same topic: two subpoenas issued by Plaintiff for law firm billing records he contends are directly related to his claims of retaliation. Plaintiff argues Defendants' litigation counsel were directly involved in communications to third parties (the Sheriff, KPERS, and KP&F) which resulted in the

---

[21] Citing *Coleman v. Apple Eight Hosp. Mgmt., Inc.*, No. 6:16-CV-01343-JTM, 2017 WL 1836974, at *3 (D. Kan. May 8, 2017); *Silva v. Ekis*, No. 15-3007-CM, 2017 WL 5465531, at *1 (D. Kan. Nov. 14, 2017).

criminal investigation against him. In the initial phases of this case, the City was represented by the Fisher Patterson Sayler & Smith law firm. Plaintiff contends within weeks of the filing of this case, the City's counsel—Terrell Mock of Fisher Patterson—reported Plaintiff to KPERS for misreporting his wages. On January 20, 2020, the City reported the wage issue to the Sheriff's office. At that point, the City's current counsel—Michelle Stewart of Hinkle Law Firm—became involved in the investigation.

To prove his theory of retaliation, Plaintiff seeks discovery suggesting the reports to KPERS and law enforcement were not disconnected from his initial lawsuit. The disputed requests are contained in Exhibit A, Item 1 of the subpoenas, seeking:

> copies of any billing or invoice entries . . . describing specific services performed during the period February 6, 2019 through June 5, 2020 by [outside legal counsel] and which (a) are included in an invoice or billing sent to the City's insurance carrier [for] the defense of legal claims asserted by Lloyd Martley against the City of Basehor, Kansas AND (b) the billing or invoice references, in any way, issues or concerns about how Mr. Martley's City income was reported to KPERS (including KP&F). (Subpoenas, ECF Nos. 119, 120 at 4.)

A.    **Arguments**

1.    **Hinkle Law Firm** (Motion, ECF No. 123; Reply, ECF No. 138)

Hinkle asks the Court to quash Item 1 of Plaintiff's subpoena which seeks legal invoices. Hinkle claims the request is not relevant on its face, because the actions of non-party defense counsel—which would be contained in the records—are not relevant to any claim for Defendants' own conduct. Because Plaintiff has developed his case through depositions and other documents, Hinkle contends Plaintiff cannot show why this information is relevant or necessary.

Hinkle also argues a lack of relevance regarding the time frame of the request. It contends the first communication with KPERS regarding Plaintiff's reporting of his income to KP&F occurred on May 28, 2019 when Fisher Patterson attorney Terelle Mock contacted KPERS to inquire whether Plaintiff combined his two salaries when reporting them. (*See* ECF No. 123, Ex. 1.) On January 30, 2020, Rivarola asked the Sheriff's office to investigate Plaintiff's payroll reporting; therefore, Hinkle argues by that date, the alleged retaliatory act had already occurred. Therefore, any invoices prior to May 28, 2019 and after January 30, 2020 lack relevance.

Hinkle also contends the invoices are presumptively attorney-client and work product privileged under the portion of the Scheduling Order addressed below.[22] Additionally, Hinkle claims the request is overly broad, because the records are not relevant to Plaintiff's retaliation claim (as argued above), and unduly burdensome because it will require the preparation of a privilege log, an objection, and potentially even line by line objections on irrelevant invoices. Hinkle maintains this is not "proportional to the benefit of producing the invoices which provide no relevant information." (ECF No. 123 at 7.)

Hinkle contends the purpose of the subpoena is to harass Defendants and counsel. As part of its motion, Hinkle asks the Court to issue a protective order, prohibiting Plaintiff from issuing further subpoenas to Hinkle related to this case.

### 2. **Defendants' position** (Motion, ECF No. 124; Reply, ECF No. 137)

Defendants' legal arguments are substantially similar to those presented by Hinkle, restating the relevancy, privilege, and overly broad/burdensome arguments Hinkle makes.

---

[22] S*ee infra* Section IV.

Defendants similarly contend the billing invoices from the law firms who represent them are presumptively privileged under the Scheduling Order and a privilege log is unnecessary.

Defendants argue although all narrative statements in attorney billing statements are not per se privileged, the *Cypress*[23] caselaw cited by Plaintiff is distinguishable. Defendants also contend not only are the invoices privileged, they are also protected by the work product doctrine. Defendants further argue they have waived no privilege (attorney-client or work product) for the billing records. Finally, Defendants maintain the subpoena is unduly burdensome because if the subpoenas are not quashed, "defense counsel would necessarily be required to divert their attention from the defense of their client to reviewing nearly two years of billing records from two different law firms so that a privilege log could be prepared." (ECF No. 137 at 5.)

### 3.    **Fisher Patterson** (Motion ECF No. 128, Reply ECF No. 139)

Fisher Patterson filed a one-paragraph motion (ECF No. 128) and a one-sentence Reply (ECF No. 139), noting its former client, the City, has asserted attorney-client privilege, and because that privilege belongs to the client, Fisher Patterson is unable to waive it. Fisher Patterson incorporates the arguments presented in Hinkle and Defendants' motions.

### 4.    **Plaintiff's position** (Response, ECF No. 131)

Plaintiff argues the billing records are plainly relevant and sought for a proper purpose, not for harassment. He claims Defendants' lawyers took a direct role in the

---

[23] *Cypress Media, Inc. v. City of Overland Park*, 997 P.2d 681 (Kan. 2000).

retaliation by communicating with and forwarding records about him to government agencies and law enforcement, so the requested billing records reflecting their actions are relevant. He contends it is reasonable to "review the events recorded in the billing records as it sets forth a timeline of events and the relation between the retaliatory action and the underlying lawsuit." Such billing entries could show dates of activities where litigation counsel was communicating with third parties or Defendants in connection with the investigation, which forms the basis of Plaintiff's retaliation claim. He argues the request is narrowly tailored, as it only seeks billing entries related to how Plaintiff's income was reported to KPERS and KP&F, and is limited to the time period around the filing of Plaintiff's lawsuit (February 6, 2019, a few weeks before the case was filed) through the time he asked to amend his compliant to include the retaliation claim (June 5, 2020).

Plaintiff claims a blanket privilege does not apply to the attorney billing records, and in fact, many of the potential entries on the billing records are likely not privileged. Citing *Wittig*,[24] Plaintiff argues the law "indicates that billing records are to be disclosed, but it does allow for limited redaction of certain categories of information that meets the evidentiary burden for claiming privilege." Plaintiff maintains Defendants can assert privilege to specific line items but not completely prohibit all records from disclosure. Plaintiff also restates his arguments regarding the application/modification of the provision in the Scheduling Order—entered before his claim of retaliation—which presumes attorney-client/work product information does not have to be placed on a privilege log.[25]

---

[24] *United States v. Wittig,* No. 03-40142-01/02JAR, 2008 WL 5232786, at *2 (D. Kan. Dec. 15, 2008).
[25] *See infra* Section IV.

Plaintiff also contends the parties did not "meaningfully confer" as required by D. Kan. Rule 37.2. He argues "the only conference that occurred was defense counsel bluntly and emphatically stating over the telephone she would not be producing her billing records." (ECF No. 131, p. 4, n.2.)

## B.     Legal Standard

### 1.     Subpoenas

Fed. R. Civ. P. 45 provides guidelines for the issuance of subpoenas to non-parties. Rule 45(d)(3)(A) requires the court to quash or modify a subpoena that requires disclosure of privileged or protected information or subjects a person to undue burden. Although Rule 45 does not specifically include relevance or overbreadth as bases to quash a subpoena, "this court has long recognized that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b) and Rule 34."[26]

When considering a motion to quash, non-parties subject to a Rule 45 subpoena are generally provided heightened protection from discovery abuse.[27] But determining "whether a subpoena imposes an undue burden . . . is a case-specific inquiry requiring consideration of 'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'"[28] Courts must balance the need for

---

[26] *Martinelli v. Petland, Inc.*, No. 10-mc-407-RDR, 2010 WL 3947526, at *3 (D. Kan. Oct. 7, 2010) (internal citations omitted); *Martin v. Grp. 1 Realty, Inc.*, No. 12-2214-EFM-DJW, 2013 WL 3322318, at *2 (D. Kan. July 1, 2013).

[27] *XPO Logistics Freight, Inc. v. YRC, Inc.*, No. 16-MC-224-CM-TJJ, 2016 WL 6996275, at *3 (D. Kan. Nov. 30, 2016) (citing *Speed Trac Techs., Inc. v. Estes Exp. Lines, Inc.*, No. 08-212-KHV-JPO, 2008 WL 2309011, at *2 (D. Kan. June 3, 2008)).

[28] *Speed Trac Techs.*, No. 08-212-KHV-JPO, 2008 WL 2309011, at *2 (internal citations omitted).

discovery against the burden imposed on the person ordered to produce documents.[29] "A subpoena that seeks irrelevant, overly broad, or duplicative discovery causes undue burden, and the trial court may quash it on those bases."[30]

As a threshold matter, Defendants must demonstrate standing in order to oppose the subpoenas to the non-party law firms. Generally, a "motion to quash or modify a subpoena duces tecum may only be made by the party to whom the subpoena is directed."[31] The court may make an exception if the party seeking to challenge the subpoena has a personal right or privilege regarding the information requested.[32]

### 2.    Scope of Discovery

Rule 26(b)(1) outlines the scope of discovery. This rule permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable."

Relevance at the discovery stage is broad,[33] and does not mean the information obtained would necessarily be admitted at trial. When the discovery sought appears

---

[29] *Id.*

[30] *Rare Moon,* 2016 WL 141635, at *4 (citing *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164-MLB-DWB, 2007 WL 2122437, at *5 (D. Kan. July 20, 2007)).

[31] *Warkins v. Piercy*, No. 16-MC-216-CM-GEB, 2016 WL 7188284, at *3 (D. Kan. Dec. 12, 2016).

[32] *Id.*

[33] *See Speed Trac Techs., Inc. v. Estes Exp. Lines, Inc.*, No. 08-212-KHV, 2008 WL 2309011 at *3 (D. Kan. June 3, 2008).

relevant on its face, the party resisting the discovery has the burden to establish the lack of relevance. Conversely, when relevancy is not apparent on the face of the request, the party seeking the discovery has the burden to show the relevancy of the request.[34]

### 3.    Protective Orders

Pursuant to Rule 26(c), a "party or any person from whom discovery is sought may move for a protective order . . . . [and the] court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding the disclosure or discovery."[35] "The party seeking the protective order has the burden to show good cause" for such an order.[36] "To establish good cause, 'the moving party must make a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'"[37]

### 4.    Privilege Issues

At this time, the questions before the Court are whether the requests seek relevant information, proportional enough to order production, and if so, whether Defendants are required to produce a privilege log. It is well-settled Fed. R. Civ. P. 26(b)(5) requires a party to "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." "[I]f a party fails to

---

[34] *Johnson ex rel. Johnson v. Olathe Dist. Sch.*, 212 F.R.D. 582, 586 (D. Kan. 2003).

[35] Fed. R. Civ. P. 26(c)(1)(A).

[36] *Mann v. Con-Way Freight*, No. 16-2196-CM, 2016 WL 6164013, at *1 (D. Kan. Oct. 24, 2016) (quoting *Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 214 (D. Kan. 2002) (quoting *Sentry Ins. v. Shivers*, 164 F.R.D. 255, 256 (D. Kan. 1996)).

[37] *Id.* (quoting *Jackson v. Coach, Inc*., 2007 WL 2407241, No. 07-2128-JTM-DWB, at 2 (D. Kan. Aug. 21, 2007) (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981)).

make the required showing, by not producing a privilege log or by providing an inadequate one, the court may deem the privilege waived."[38] Both Rule 26(b)(5) and case law make clear there is no blanket claim of privilege.[39]

Although the Court is not deciding whether the billing records are privileged at this time, it notes the analysis of the privilege of attorney billing records in the 2008 case of *Wittig*[40]:

> The court finds the Supreme Court of Kansas's opinion in *Cypress Media, Inc. v. City of Overland Park* persuasive. Indeed, no conflict exists between Kansas and federal law regarding the attorney-client privilege. The court in *Cypress Media* held that "all narrative statements in attorney fee statements are not per se privileged....Rather, parties claiming the privilege will have to show its applicability to [a] particular narrative statement in billing records." As another judge in this district held, Westar cannot satisfy its burden by mere assertions that courts have recognized similar documents to those at issue here have the potential to contain privileged information. Rather, Westar must demonstrate, with evidence short of revealing any privileged information, that the billing records at issue contain privileged information.
> . . .
> Westar's blanket claim that billing records are privileged is insufficient to meet its burden.[41]

---

[38] *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 232 F.R.D. 669, 671 (D. Kan. 2005) (emphasis added).

[39] *See Williams v. Sprint/United Mgmt. Co.*, No. 03-2200-JWL-DJW, 2006 WL 266599, at *4 (D. Kan. Feb. 1, 2006), *clarified on denial of reconsideration*, No. 03-2200-JWL-DJW, 2006 WL 3694862 (D. Kan. Dec. 13, 2006).

[40] *United States v. Wittig*, No. 03-40142-01/02-JAR, 2008 WL 5232786, at *2 (D. Kan. Dec. 15, 2008) (quoting *Cypress Media, Inc. v. City of Overland Park*, 997 P.2d 681 (Kan. 2000); also citing *ERA Franchise Sys., Inc. v. N. Ins. Co. of N.Y.*, 183 F.R.D. 276, 280 (D. Kan. 1998).

[41] *United States v. Wittig*, No. 03-40142-01/02-JAR, 2008 WL 5232786, at *2 (D. Kan. Dec. 15, 2008) (quoting *Cypress Media, Inc. v. City of Overland Park*, 997 P.2d 681 (Kan. 2000); also citing *ERA Franchise Sys., Inc. v. N. Ins. Co. of N.Y.*, 183 F.R.D. 276, 280 (D. Kan. 1998).

**C.    Discussion**

As a threshold issue, it appears Defendants have standing to object to the subpoenas served on their present and former defense counsel because Defendants have a personal right or privilege related to the documents sought by the subpoenas.[42] The billing records/entries were created for Defendants and may contain attorney-client information. Because Defendants' standing is not disputed by Plaintiff, the Court considers the topic unopposed and reviews all arguments on their merits.

The law firms and Defendants all raise relevance objections. After consideration of the briefing and oral arguments of the parties, all relevance objections are overruled. The information sought by Plaintiff appears to be at least minimally relevant at this discovery phase. On review of the information provided to Plaintiff thus far, it does appear from the privilege log produced by Defendants (*see* ECF No. 136, Ex. 5) that Terelle Mock and Michelle Stewart were involved in pursuit of the criminal investigation in some form.

And, discovery is broad. The billing records and/or a privilege log (to the extent necessary) may provide a timeline of events to Plaintiff. He has narrowed his request to a reasonable timeline and limited it to only those billing records related to the investigation of his wage reporting. Such records appear to be at least minimally relevant.

---

[42] *See Stewart v. Mitchell Transp.*, No. 01-2546-JWL, 2002 WL 1558210, at *1 (D. Kan. July 11, 2002) ("Generally speaking, a party to the lawsuit does not have standing to quash a subpoena served on a nonparty. A motion to quash a subpoena "may only be made by the party to whom the subpoena is directed except where the party seeking to challenge the subpoena has a personal right or privilege with respect to the subject matter requested in the subpoena.") (internal citations omitted).

The law firms and Defendants also object to the temporal scope of the requests, and these objections are likewise overruled. Plaintiff seeks billing records describing services performed from February 6, 2019 to June 2, 2020. Although the opposing parties suggest a May 28, 2019 "start" date, the email they reference clearly states, on May 28, 2019 the KPERS representative "got [Rivarola's] name from Terrell Mock" and she was "working on the Lloyd Martley situation." (ECF No. 123, Ex. 1.) This leads to the reasonable conclusion something transpired between Ms. Mock and KPERS before the May 28, 2019 email. The evidence does not show when or how that occurred, but it is logical to assume it occurred before the email Defendants produce as evidence. Therefore the May 29, 2019 start date suggested by Defendants does not appear reasonable. The opposing parties also argue on January 30, 2020, Rivarola asked the Sheriff's office to investigate Plaintiff's payroll reporting; therefore, by that date, the alleged retaliatory act had already occurred, so there is no need to look further. But, as argued by Plaintiff, it is not uncommon for discovery in a retaliation case to include a reasonable time before and after the alleged retaliation. This fits the time frame suggested by Plaintiff—from February 5, 2019 (one month before filing of this case)—to just before the filing of the Amended complaint on June 5, 2020.

The opposing parties also object to the request as burdensome and lacking proportionality. These objections are overruled. Neither Defendants nor the law firms support their burden or proportionality arguments with more than conclusory statements. They also did not offer a ballpark of how many billing statements there might be. The request does not appear overly burdensome, on its face, and the parties opposing the

production bear the burden to demonstrate how the production is burdensome with more than conclusory statements.[43]

Defendants also argue they are not required to provide a privilege log due to the parties' agreement approved in the Scheduling Order.[44] However, as discussed below, this argument is overruled. Defendants offer in their motion, "if the Court denies the Motion to Quash and Motion for Protective Order, Defendant will prepare a privilege log and lodge objections as required." (ECF No. 124.) This is precisely what the Court ordered during the January 27, 2021 hearing. Defendants and the law firms were directed to decide, amongst themselves, who would produce the information, but at minimum, a privilege log was to be produced outlining the responsive information. Also, the parties were reminded the requested billing records are not presumptively privileged,[45] so the Court's expectation is billing records will be produced, with the exception of clearly privileged information. Defendants indicate in their motion they "are not in possession" of the invoices because they are sent to their insurer. (ECF No. 124.) However, the invoices are clearly under Defendants' "control" for purposes of Rule 34[46] so this argument rings hollow.

> **D.  Conclusion on Motions to Quash the Subpoenas of Law Firm Billing Records (ECF Nos. 123, 124, 128)**

For the reasons discussed in the January 27, 2021 hearing and as set forth above, in the Court's discretion, the Motions to Quash by Hinkle Law Firm (**ECF No. 123**);

---

[43] *Mann*, 2016 WL 6164013, at *1 (quoting *Jackson*, 2007 WL 2407241 at *2 (quoting *Gulf Oil Co*, 452 U.S. at 102 n.16)).
[44] *See infra* Section IV.
[45] *See supra* text accompanying note 40.
[46] *See* standards discussed *infra* Section V.A.2.

Defendants (**ECF No. 124**) and Fisher Patterson (**ECF No. 128**) are **DENIED**. All requested billing records and/or any applicable privilege logs were to be produced **by February 18, 2021**. (*See* Order, ECF No. 149.)

## IV.    Plaintiff's Motion to Amend the Scheduling Order (ECF No. 129)

Plaintiff asks to amend the scheduling order to (1) extend the discovery deadline and (2) to amend a prior provision limiting discovery of responsive material that is presumptively privileged (i.e. attorney-client or work product). Plaintiff argues additional time is needed to conduct depositions and complete written discovery. He also notes the original scheduling order included the following provision, at the agreement of the parties:

> The parties agree documents created ***after the date Plaintiff filed his lawsuit, March 12, 2019***, and which constitute communications by the parties with their outside litigation attorneys about this lawsuit or created by such outside counsel, after March 12, 2019, to defend the lawsuit are presumptively privileged and nonresponsive to any discovery propounded in this litigation **such that a privilege log is unnecessary** to establish their protection under the attorney-client privilege or the work product doctrine." (Sched. Order ECF No. 24 at 8.) (emphasis added)

But this agreement occurred prior to Plaintiff learning the City allegedly orchestrated and subsequently opened the criminal investigation against him in January 2020.

Plaintiff issued discovery requests about the investigation, but because of this provision assuming non-disclosure, the City objected. Plaintiff maintains not all these allegedly privileged communications are appropriately excluded from discovery because the events comprising Plaintiff's retaliation claim continued after March 2019 and into 2020. Plaintiff believes evidence showing a retaliatory intent may appear in communications and documents created prior to June 5, 2020, and those responsive

documents should at minimum be included on a privilege log for assessment.  Plaintiff asks to amend the paragraph in the scheduling order to read:

> The parties agree documents created ***after the date Plaintiff filed his motion for leave to amend his complaint, June 5, 2020***, which constitute communications by the parties with their outside litigation attorneys about this lawsuit or created by such outside counsel, ***after June 5, 2020***, to defend the lawsuit are presumptively privileged and nonresponsive to any discovery propounded in this litigation such that a privilege log is unnecessary to establish their protection under the attorney-client privilege or the work product doctrine. ***As to documents created prior to June 5, 2020 which refer or relate to the subject of the reporting of Plaintiff's income to KPERS (and/or any alleged mistake or impropriety, or investigation regarding the same) those documents—if responsive to Plaintiff's discovery requests and not otherwise objectionable—must be disclosed on a privilege log.*** (suggested changes in bold/italics)

Plaintiff provides excerpts from recordings and other documents produced in discovery to suggest the City and its representatives, including its legal counsel, were explicitly connecting the criminal investigation to this civil lawsuit. This leads Plaintiff to believe other communications and documents exchanged between legal counsel and the City, including the billing records discussed above, could further reflect the intent of the City to use the criminal investigation to affect this lawsuit. Though Plaintiff realizes some of these communications may be privileged, he also argues he cannot make that determination without at least having them described on a privilege log. Although Defendants contend they have already produced such a log, Plaintiff "vigorously disputes" the log includes all the alleged responsive privileged documents and communications.

Plaintiff also asks to extend discovery for 60 days, to March 15, 2021.  Because of the pandemic, and because the City refused to provide a complete privilege log, he has been unable to complete necessary depositions despite his diligence.

Defendants object to expanding the schedule and contend Plaintiff fails to show why the current discovery deadline is insufficient and has not shown good cause for amendment. The City does not oppose Plaintiff taking depositions beyond the January 15, 2021 discovery deadline but does not approve expansion of the deadline itself. Plaintiff has already identified potential deponents and he has the privilege log Defendants already produced. (ECF No. 132, Ex. 3.)

Defendants maintain they have already provided responsive documents showing communications with KPERS and the Sheriff's office and provided a privilege log resulting from search terms Plaintiff suggested. The City objects to creating a privilege log for the same items from June 5, 2020 to the present because they are presumptively privileged and nonresponsive as contemplated by the Scheduling Order. They contend logging each responsive document would "be unduly burdensome and invade the attorney client and work product privileges." (ECF No. 132 at 3.)

### A.    Legal Standards

As discussed above in the motion to amend analysis, under Fed. R. Civ. P. 16(b), a Scheduling Order "may be modified only for good cause and with the judge's consent." "Good cause" under Rule 16(b)(4) requires the moving party to show the deadline could not have been met "even if it had acted with due diligence."[47]

As for the privilege log issue, it is well-settled Fed. R. Civ. P. 26(b)(5) requires a party to "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself

---

[47] *Id.*

privileged or protected, will enable other parties to assess the claim." "[I]f a party fails to make the required showing, by not producing a privilege log or by providing an inadequate one, the court may deem the privilege waived."[48] Again, both Rule 26(b)(5) and case law make clear there is no blanket claim of privilege.[49]

### B.   Discussion

The parties agree a privilege log is not necessary for items dated after June 5, 2020, when Plaintiff filed his motion to amend. Defendants produced a privilege log titled "Email with Attorneys" which includes only four entries from May 2019 between counsel and Rivarola (ECF No. 132, Ex. 4) and was later amended to include a total of seven entries. (Suppl. Log, ECF No. 136, Ex. 5.)

Although it is admirable the parties agreed initially the attorney-client/work product documents created after the filing of the lawsuit would not be included on a log, Plaintiff clearly had no idea how this case would change after learning of the criminal investigation. He cites *New Jersey v. Sprint Corp*.[50] to argue—correctly—not all communications with lawyers are necessarily privileged.

After review of the briefing and current privilege log, and hearing arguments of counsel, the Court **GRANTED** Plaintiff's motion, both to require an amended privilege log and to modify the existing schedule. Plaintiff has shown good cause to amend the provision in the Scheduling order regarding the need to log attorney-client/work product

---

[48] *In re Universal Serv. Fund Tel. Billing Practices Litig*., 232 F.R.D. 669, 671 (D. Kan. 2005).
[49] *See Williams v. Sprint/United Mgmt. Co*., No. 03-2200-JWL-DJW, 2006 WL 266599, at *4 (D. Kan. Feb. 1, 2006), *clarified on denial of reconsideration*, No. 03-2200-JWL-DJW, 2006 WL 3694862 (D. Kan. Dec. 13, 2006).
[50] *New Jersey v. Sprint Corp*., 258 F.R.D. 421, 443-44 (D. Kan. 2009).

communications. Defendants' current privilege log (as of the January 27, 2021 hearing) appears to contain very little information, and Defendants are instructed to amend the log to address the information Plaintiff seeks: documents/communications responsive to discovery which were created prior to June 5, 2020 which refer or relate to the subject of the reporting of Plaintiff's income to KPERS.

### C.   Conclusion on Plaintiff's Motion to Amend the Scheduling Order (ECF No. 129)

For the reasons discussed in the January 27, 2021 hearing and as set forth above, in the Court's discretion, Plaintiff's Motion to Amend the Scheduling Order **(ECF No. 129)** is **GRANTED**. The described modification is incorporated into the privilege log requirement paragraph of the Scheduling Order and the schedule will be briefly extended. The following schedule shall govern the remainder of this case:

- Close of discovery:  **April 16, 2021**
- Proposed pretrial order due:  **April 30, 2021**
- Pretrial conference: **May 12, 2021 at 10:00 a.m.** before Judge Birzer by telephone (CONFERENCE LINE 1-888-363-4749; ACCESS CODE 9686294)
- Dispositive motion deadline:  **May 28, 2021**
- *Daubert* motions:  **42 days before trial**
- Jury trial:  **February 1, 2022 at 9:00 a.m**. before District Judge Crabtree.

## V.   Plaintiff's Motion to Compel Discovery (ECF No. 130)

The final motion addressed by the Court at the January 27, 2021 hearing was Plaintiff's motion to compel discovery. (ECF No. 130.) As a threshold issue, Plaintiff outlines how counsel conferred through Golden Rule letters, emails, and phone calls, and such conferral did result in Defendants supplementing their responses, although the issues

were not resolved. However, although not required, counsel did not contact the undersigned for an informal discovery conference, which has now resulted in the six pending motions considered herein.  In the future, the Court highly encourages counsel to seek a pre-motion conference such that discovery may progress in a timelier fashion.

This motion is related to Plaintiff's motion to amend the scheduling order. Through his Second Requests for Production, Plaintiff seeks the documents, texts, and emails reflecting Defendants' discussions about him amongst City employees and elected officials, Defendants' legal counsel and various third parties regarding their report of Plaintiff to outside authorities. Plaintiff maintains the information is relevant because the timing of communications makes it reasonable to believe it reflects Defendants' motives and intent when they instigated the criminal investigation. (*See* Def.'s Resp. to Pl.'s Discovery, ECF No. 130, Exs. B & C.)  Although Plaintiff is not yet arguing he is entitled to production of privileged documents, he contends Defendants must produce a complete privilege log. Defendants object to production on multiple bases; in part due to the Scheduling Order language addressed above, and on claims of privilege and other objections.  Each of the topics discussed is addressed below.

## A.    Legal Standards

Trial "[c]ourts are given broad discretion to control and place appropriate limits on discovery."[51] And "a magistrate [judge] is afforded broad discretion in the resolution of non-dispositive discovery disputes."[52]

### 1.    Scope of Discovery/Relevancy

F.R.C.P. 26(b)(1) provides a party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Despite the focus on proportionality in the rule since 2015, relevancy is still to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on" any party's claim or defense.[53] In other words, the court should permit a request for discovery unless "*it is clear* that the information sought can have *no possible*

---

[51] *Semsroth v. City of Wichita*, No. 06-2376-KHV-DJW, 2007 WL 2287814, at *1 (D. Kan. Aug. 7, 2007) (citing *Kutilek v. Gannon*, 132 F.R.D. 296, 297 (D. Kan. 1990) (discussing whether to stay discovery).

[52] *In re Urethane Antitrust Litig.*, No. 04-1616-JWL, 2014 WL 61799, at *1 (D. Kan. Jan. 8, 2014) (citing *A/R Roofing, L.L. C. v. Certainteed Corp.*, 2006 WL 3479015, at *3 (D. Kan. Nov. 30, 2006) (other internal citations omitted).

[53] *Williams v. UnitedHealth Grp.*, No. 2:18-CV-2096, 2020 WL 528604, at *1-*2 (D. Kan. Feb. 3, 2020) (quoting *Gilmore v. L.D. Drilling, Inc.*, No. 16-CV-2416-JAR-TJJ, 2017 WL 2439552, at *1 (D. Kan. June 6, 2017)).  *See also In re EpiPen*, No. 17-MD-2785-DDC-TJJ, 2018 WL 1586426, at *2 (D. Kan. Apr. 2, 2018) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

bearing" on a claim or defense.[54] Information need not be admissible in evidence to be discoverable, but the scope of discovery must be proportional to the needs of the case.[55]

If the discovery sought appears relevant, the party resisting discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery 1) does not come within the scope of relevancy as defined under Rule 26(b)(1), or 2) is of such marginal relevancy that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[56] On the other hand, when the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery bears the burden to show the relevancy of the request.[57] Relevancy determinations are generally made on a case-by-case basis.[58]

## 2.    Form of Discovery Requests and Responses

Fed. R. Civ. P. 34(b)(1) requires a request for production of documents to "describe with reasonable particularity each item or category of items" to be produced or inspected.

Rule 34(a)(1) requires the responding party to produce items in the "responding party's possession, custody or control." Under Rule 34(b)(2)(B), a party objecting to a request for production must "state with specificity the grounds for objecting to the request, including the reasons." Subsection 34(b)(2)(C) requires an objection to "state whether any

---

[54] *Gilbert v. Rare Moon Media, LLC*, No. 15-MC-217-CM, 2016 WL 141635, at *4 (D. Kan. Jan. 12, 2016) (quoting *Sheldon v. Vermonty*, 204 F.R.D. 679, 689–90 (D. Kan. 2001) (emphasis in original)).
[55] Fed. R. Civ. P. 26(b)(1).
[56] *Riley v. PK Mgmt., LLC*, No. 18- 2337-KHV-TJJ, 2019 WL 1509861, at *2 (D. Kan. Apr. 5, 2019) (citing *Gen. Elec. Cap. Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003)).
[57] *Id*. (citing *McBride v. Medicalodges, Inc.*, 250 F.R.D 581, 586 (D. Kan. 2008)).
[58] *Id.* (citing *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate*, No. 09-cv-2516-JAR, 2011 WL 765882, at *3 (D. Kan. Feb. 25, 2011)).

responsive materials are being withheld on the basis of that objection" and "specify the part" subject to the objection "and permit inspection of the rest."  This portion of the rule aimed to "end the confusion that frequently arises when a producing party states several objections and still produces information, leaving the requesting party uncertain whether any relevant and responsive information has been withheld on the basis of the objections."[59]

The concept of "control" "goes beyond actual physical possession and extends to documents the party has the legal right to obtain; in some circumstances, it can even extend to documents the party has the practical ability to obtain."[60] If a party confirms unconditionally it has produced all responsive documents in its possession, custody, or control, then a party has fulfilled its discovery obligation with respect to the request.[61]

The subject of conditional responses has been discussed at length in this District:

> "[I]t has become common practice among many practitioners to respond to discovery requests by asserting objections and then answering 'subject to' or 'without waiving' their objections. This practice, however, is manifestly confusing (at best) and misleading (at worse) and has no basis at all in the Federal Rules of Civil Procedure. The court joins a growing number of

---

[59] *See Ad Astra*, 2020 WL 374685, at *7 (citing Fed. R. Civ. P. 34(b), advisory committee's note to the 2015 amendment).

[60] *Id.* at *8 (D. Kan. Jan. 23, 2020) (citing 8B Charles Alan Wright, et al., *Federal Practice and Procedure* § 2177 (3d ed)). *See also Noaimi v. Zaid*, 283 F.R.D. 639, 641 (D. Kan. 2012).

[61] *See Pulsecard, Inc. v. Discover Card Servs., Inc.*, 168 F.R.D. 295, 307 (D. Kan. 1996); see also *Manning v. Gen. Motors*, 247 F.R.D. 646, 652 (D. Kan. 2007) (noting "the Court cannot compel a party to produce documents that do not exist or that are not in that party's possession, custody, or control . . .  [and because] there has been no information submitted by Plaintiff to lead the Court to question the veracity of Plaintiff's statement that no responsive documents exist. The Court thus has no basis upon which to compel Defendant to produce responsive documents. The Court, will, however, require Defendant to serve supplemental written responses to this request unconditionally representing that no responsive documents are in its possession, custody, or control.") (citing *Sonnino v. University of Kansas Hosp. Authority,* 220 F.R.D. 633, 640 (D. Kan. 2004) (citing *Am. Maplan Corp. v. Heilmayr,* 203 F.R.D. 499, 501 (D. Kan. 2001)).

federal district courts in concluding that such conditional answers are invalid and unsustainable."[62]

When deciding a motion to compel, "the court considers only those objections initially asserted in response to the discovery request and relied upon in response to the motion."[63] Objections contained in motion to compel briefing which were not initially raised in response to a discovery request are generally deemed waived absent a showing of good cause.[64]

### 3.  Assertions of Privilege

Fed. R. Civ. P. 26(b)(5) requires a party withholding discoverable information by claiming privilege to "expressly make the claim; and describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."

The party asserting the privilege/work product protection "must also provide sufficient information to enable the court to determine whether *each element* of the asserted objection is satisfied."[65] "A 'blanket claim' as to the applicability of the privilege/work product doctrine does not satisfy the burden of proof."[66] Although Rule 26(b)(5)(A) "doesn't expressly require a privilege log, a party withholding information on privilege

---

[62] *Sprint Commc'ns Co., L.P. v. Comcast Cable Commc'ns, LLC*, No. 11-2684-JWL, 2014 WL 545544, at *2 (D. Kan. Feb. 11, 2014).

[63] *Ad Astra Recovery Servs., Inc. v. Heath*, No. 18-1145-JWB-ADM, 2020 WL 374685, at *5 (D. Kan. Jan. 23, 2020) (citing *White v. Graceland Coll. Ctr. for Prof'l Dev. & Lifelong Learning, Inc.*, 586 F. Supp. 2d 1250, 1256 (D. Kan. 2008)).

[64] *Id.*

[65] *Marten v. Yellow Freight Sys. Inc.,* No. 96–2013–GTV, 1998 WL 13244, at *4 (D. Kan. Jan.6, 1998) (citing *Jones v. Boeing Co.,* 163 F.R.D. 15, 17 (D. Kan. 1995)) (emphasis added).

[66] *Id.*; see also *Kelling v. Bridgestone/Firestone, Inc.,* 157 F.R.D. 496, 497 (D.Kan.1994).

grounds generally satisfies the tenets of that rule by providing a privilege log."[67]  The level

of detail required in a privilege log is determined on a case-by-case basis, but courts in the

District of Kansas have generally outlined the requirements for an adequate privilege log.[68]

"At the very least, a privilege log should contain sufficient information so that the opposing

party and the court can evaluate the claimed privilege. If a party fails to carry its burden of

establishing that any documents withheld are subject to privilege, the court may conclude

that the privilege is waived."[69]

### B.    Discussion

Before addressing the individual disputes, the Court notes two overarching

concerns. First, in Defendants' responses and supplemental responses to Plaintiff's Second

RFPs (ECF No. 130, Exs. B, C), they made no objections or arguments based on relevancy.

Although they devote a section of their Response to relevancy (ECF No. 136 at 2-3),

Defendants have waived any relevancy arguments. Objections contained in motion to

compel briefing which were not initially raised in response to a discovery request are

generally deemed waived absent a showing of good cause,[70] and Defendants do not attempt

to show good cause, therefore the Court finds none.

---

[67] *In re Syngenta AG MIR 162 Corn Litig.*, No. 14-MD-2591-JWL, 2017 WL 1106257, at *4 (D. Kan. Mar. 24, 2017) (citing *Kannaday v. Ball*, 292 F.R.D. 640, 647 (D. Kan. 2013)(describing the basic threshold requirements for a privilege claim); *see also Farha v. Idbeis*, No. 09-1059, 2010 WL 3168146, at *4 (D. Kan. Aug. 10, 2010)).

[68] *See In re Syngenta AG MIR 162 Corn Litig.*, No. 14-MD-2591-JWL, 2017 WL 1106257, at *4-5. (Such requirements are not outlined here, as the contents of the log do not seem to be at issue—only whether one is required.)

[69] *Id.* (internal citations omitted).

[70] *Id.*

Second, Plaintiff makes much of Defendants' use of conditional objections. Defendants did utilize conditional objections, but they also specified which portions of the requests and their answers were responsive. Finding Defendants' objections wholly waived appears heavy-handed, under the circumstances; therefore, the Court finds Defendants did not waive their objections. However, Defendants should be on notice that future conditional objections will not be tolerated, and they should address this in the future.

Plaintiff seeks four primary forms of production in his motion, and Defendants addressed other concerns in their briefing. Each is addressed separately below.

### 1. Privilege Log Re: Communications with Outside Agencies

Plaintiff seeks a complete privilege log listing all responsive communications between Defendants or their counsel and any outside agency (Leavenworth County Sheriff, KS Attorney General, KPERS, KP&F) through June 5, 2020. As noted above, Defendant initially produced a log listing only four documents (ECF No. 130, Ex. E), then produced another log with three additional entries (ECF No. 136, Ex. 5). And, as discussed above, Defendants again rely on privilege and the language in the original Scheduling Order to object to production of a privilege log and the temporal scope of the production.

In line with the Court's rulings above modifying the Scheduling Order regarding the necessity for a privilege log and the relevant dates for any such communications (*supra* Part IV.B), the Court overrules Defendants' objections and **GRANTS** Plaintiff's motion. To the extent Defendants have not already complied with this supplemental production, they are ordered to do so forthwith.

### 2.    Insurance Assessment Document

Plaintiff also seeks a document titled "Initial Case Assessment and Budget 7.8.19." (*See* ECF No. 130, Ex. C.) This is a document initially sent by defense counsel to the City's insurance carrier containing details about Plaintiff's civil lawsuit. Later, Rivarola produced the document to the Sheriff's investigator as background for the criminal investigation, which Plaintiff discovered through a subpoena to the Sheriff's office. Although Plaintiff sought in her requests any documents the City provided to third parties in connection with the investigation, Defendants failed to provide any portion of this document. Plaintiff argued if the document was initially privileged, the privilege was waived when Rivarola gave it to the Sheriff.

Defendants argued the document's privileged nature was not waived. They contend it is a document prepared by counsel regarding the litigation they are charged to defend. Even if Rivarola gave all or part of the document to the Sheriff's investigator, they maintain she only provided background facts and not the entire document, and her disclosure should be considered inadvertent and/or the clawback provision of the Scheduling Order should apply. (*See* ECF No. 136.)

In briefing and during the January 27, 2021 hearing, it was unclear whether Rivarola produced the entire document to the Sheriff's office or whether only a portion of the document was produced. After discussion, the Court ordered, with the cooperation of counsel, that the Sheriff's office produce the document in its possession to the Court for in

camera review within ten days. (Order, ECF No. 149.) On February 4, 2021, the undersigned received the document from the Sheriff's office and reviewed the same.[71]

The Sheriff's office possessed the entire 10-page document. Although the document was clearly privileged when it was created, Rivarola—as a representative of the defendant City—disclosed the document to the Sheriff, a third party. It is well-settled "[t]he attorney-client privilege is lost if the client discloses the substance of an otherwise privileged communication to a third party."[72] "Any voluntary disclosure by the client is inconsistent with the attorney-client relationship and waives the privilege."[73] Therefore, the Court finds waiver applies. The Court also finds the clawback provision of the scheduling order does not apply here, as Defendants did not inadvertently produce the document to Plaintiff—the opposing party—they intentionally provided it to a third party.

Following its review of the document, on March 5, 2021, the Court held a discovery conference. (*See* Order, ECF No. 160.) During that conference, the Court discussed its ruling with counsel. For the first time, Defendants orally objected to production of the document based on the work product doctrine; however, the Court found any work product privilege objection waived because Defendants did not present the argument in prior briefing on the topic.[74] Because the Court finds the attorney-client privilege of the Insurance Assessment document waived by its production to a third party, the document

---

[71] Email from Mollie R. Hill, General Counsel, Leavenworth County Sheriff's Office, to ksd_Birzer_chambers@ksd.uscourts.com (Feb. 4, 2021, 16:42 CST) (maintained in Chambers file).

[72] *In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006)

[73] *Id.*

[74] Transcript of Mar. 5, 2021 hearing, ECF No. 177 at 26-28.

was provided to Plaintiff's counsel immediately following the March 5 hearing.[75] As discussed, the Court expects counsel to treat the document as an "attorneys' eyes only" production covered by the Protective Order. (Order, ECF No. 149.[76])

### 3.    Complete ESI Searches – Plaintiff's RFP #2

In this request, Plaintiff provided search terms for which he asked Defendants to examine "mobile phones, computers, hard-drives, servers, or other electronic devices used for any City business or work purposes" by any person who was an elected City official from February 6, 2019 through August 12, 2020, along with the City Attorney, City Clerk, and Rivarola. (ECF No. 130, Ex. C.)  Plaintiff argues the request is proper and he is entitled to the searches even if the devices belong to "non-parties"—including the City Council members and City Attorney—because Defendants must produce documents in their "possession, custody or control," and City policy clearly notes all email or messages sent on City equipment belong to the City and the City has the right to access them.

He contends Defendants' objection was waived because it was untimely, and the objections do not comply with Fed. R. Civ. P. 34(b)(2)(B). The objections do not state which documents, if any, are being withheld; and the reference to previously-produced documents references non-responsive material. Plaintiff believes Defendants have not searched as they claim and have withheld documents improperly based on what they determined was relevant. Defendants produced only emails and no text messages—making Plaintiff question whether the searches actually occurred. And, because of the conditional

---

[75] Email from ksd_Birzer_chambers@ksd.uscourts.gov to all counsel of record (Mar. 5, 2021, 12:21 CST) (maintained in Chambers' file).
[76] Transcript of Mar. 5, 2021 hearing, ECF No. 177 at 29.

responses, Plaintiff contends Defendants waived their objections to this request. Plaintiff says of the 144 documents referenced by Defendants, 132 of them were non-responsive.

Defendants maintain they have fully and adequately responded by producing non-privileged documents collected from City-controlled devices identified as CITY003544 through CITY003668 and producing a privilege log outlining any documents withheld. Because they confirmed production of all responsive documents in their possession, custody or control, they have fulfilled their obligation regarding RFP #2. Defendants claim Plaintiff is now seeking by email the details of the searches: who conducted them, what devices were searched, and seeks copies of all documents collected from the searches, not just the relevant ones. Defendants argue they are not obligated to provide the details sought by Plaintiff's email; nor are they required to produce irrelevant documents gained from the search. They also contend they have no duty to search devices or produce documents from devices not owned or controlled by the City.

The Court finds Defendants must supplement their response to clarify their production, and **GRANTS** Plaintiff's motion in this respect. Plaintiff's request asks Defendants to identify the searched electronic devices. Defendants should, at minimum, supplement their response to outline precisely what devices, belonging to whom, were searched, and if anything is withheld due to privilege, include it on the revised privilege log. If there are personal cellular phones or personal computers belonging to City personnel which the City has no practical ability to obtain (i.e., there is no City policy outlining the City may access them), Plaintiff will have to accept Defendants' supplemental responses/privilege log. But the City is cautioned—if City policy outlines the City has

access to any of these devices by virtue of them being utilized for City business, this will breed a different result.

### 4.    In Camera Review

Plaintiff seeks an order requiring Defendants to submit the materials contained on the Defendants' most recent privilege log. But because the Court orders Defendant to supplement its responses, the Court finds Plaintiff's request for in camera review premature and **DENIES** the motion in this regard. At this time, the Court is unable to discern whether any privilege can be assessed. Defendants will supplement their privilege log as ordered, and after Plaintiff's review of the supplemental production, the Court can address any later request for review. Although Plaintiff may have a hill to climb to secure production of the documents between Defendants and their counsel, the timeline provided by a thorough privilege log could assist in the prosecution of his retaliation claim.

### 5.    Other RFPs

In Defendants' briefing they addressed concerns with Plaintiff's Second RFPs #3-4, 6 and 8. Overall, Defendants contend they have produced all responsive documents. As discussed in the January 27 hearing and rulings above, Defendants are ordered to supplement their privilege log and certify they have fully reviewed the information in their custody or control and all responsive documents have either been logged or produced.

### C.    Conclusion on Plaintiff's Motion to Compel Discovery (ECF No. 130)

For the reasons discussed in the January 27, 2021 hearing and as set forth above, in the Court's discretion, Plaintiff's Motion to Compel Discovery (ECF No. 130) is **GRANTED in part and DENIED in part**.

**VI.      Plaintiff's Informal Request for an Extension of Motion to Compel Deadline**

On January 15, 2021, Plaintiff informally requested a 30-day extension of his deadline to file a motion to compel regarding responses to his Third Requests for Production. Defendant objected. After discussion at the January 27 hearing and the above rulings, the Court ordered Plaintiff to revise his Third RFPs #4-6 to narrow the information sought. Plaintiff's informal request to extend his deadline to file a motion to compel on Defendants' responses to his Third RFPs was granted, and such deadline was extended to **February 19, 2021**.

**VII.    Conclusion**

As indicated above, the Court enters the following orders:  Plaintiff's Motion for Leave to File a Third Amended Complaint (**ECF No. 90**) is **GRANTED**. The Motions to Quash by Hinkle Law Firm **(ECF No. 123)**, Defendants **(ECF No. 124)**, and Fisher Patterson **(ECF No. 128)** are **DENIED**.  Plaintiff's Motion to Amend the Scheduling Order **(ECF No. 129)** is **GRANTED**. Plaintiff's Motion to Compel Discovery **(ECF No. 130)** is **GRANTED in part and DENIED in part**. Plaintiff's informal request to extend his deadline to file a motion to compel on Defendants' responses to his Third Requests for Production is **GRANTED**.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 31st day of March 2021.

s/ Gwynne E. Birzer
GWYNNE E. BIRZER
United States Magistrate Judge