IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| LLOYD MARTLEY,<br><br>Plaintiff,<br><br>v.<br><br>BASEHOR, KANSAS, CITY OF, et al.,<br><br>Defendants. | Case No. 2:19-cv-02138-HLT-GEB |

**MEMORANDUM AND ORDER**

Plaintiff Lloyd Martley brings this case against his former employer, Defendant City of Basehor, Kansas, and against two of its officials, Defendant David Breuer and Defendant Leslee Rivarola. Martley alleges violation of the Equal Pay Act ("EPA") by the city for three years during which he served as City Administrator in addition to his other duties as Police Chief, and he alleges retaliation in violation of the EPA and the First Amendment stemming from a criminal investigation into the reporting of his income to the Kansas Police and Fire Retirement System. Martley named Rivarola as a defendant in her individual capacity on both retaliation claims. Doc. 150. Rivarola moves to dismiss both claims against her. Doc. 154. For the reasons stated below, the Court grants the motion to dismiss.

**I.   BACKGROUND**

The following facts are taken from the well-pleaded allegations of the third amended complaint, and, consistent with the standards for evaluating motions to dismiss under Rule 12(b)(6), the Court assumes the truth of these facts at this stage.

Basehor is a municipal corporation and political subdivision in Leavenworth County, Kansas. Doc. 150 at 1. Breuer was at all relevant times the mayor of Basehor. *Id.* Rivarola became Basehor's City Administrator on January 16, 2019. *Id.* at 3.

### A. Martley's Employment – 1995 through 2018

Martley began working for Basehor in its police force in 1995 and became Police Chief in 2008. *Id.* at 2. Between 2009 and 2018, Martley also served as interim City Administrator when that position was vacant. *Id.* As interim City Administrator, Martley performed all the duties of City Administrator in addition to his role as Police Chief. *Id.* In 2014, Martley became the City Administrator (as opposed to the interim), a position he held until he retired in June 2018. *Id.* at 3. In that capacity, he continued to serve as City Administrator in addition to Police Chief. *Id.* For the years 2016, 2017, and 2018, Martley was paid between $37,000 and $39,000 per year for performing the duties of City Administrator. *Id.*

### B. Rivarola's Hiring and Martley's Lawsuit – January through March 2019

After Martley retired, Rivarola, who is a woman, was hired as City Administrator in January 2019. *Id.* Rivarola was paid benefits and wages that exceeded the benefits and wages paid to Martley for his work in that capacity. *Id.* at 4. On February 6, 2019, Martley's counsel sent a letter to Breuer stating that Martley intended to pursue an EPA claim based on the disparity in compensation paid to him versus Rivarola. *Id.* at 5. The initial complaint in this case, which asserted an EPA claim, was filed March 12, 2019. *Id.*

### C. Sheriff's Investigation – January through May 2020

Two weeks after the unsuccessful mediation in this case in May 2020, a Leavenworth County Sheriff Lieutenant contacted Martley and informed him he was under criminal investigation based on a complaint by the city. *Id.* The Sheriff Lieutenant mentioned this EPA lawsuit during the call. *Id.* The criminal investigation related to Martley's Kansas Police and Fire Retirement System ("KPF") benefits. *Id.* During the time Martley served as City Administrator (or interim), his total income from Basehor was reported to KPF, including his pay for serving as City

2

Administrator. *Id.* at 2-3. The Sheriff Lieutenant told Martley that the complaint was that he should have segregated his City Administrator pay from his Police Chief pay and only reported his Police Chief pay to KPF. *Id.* at 6. Martley was under investigation because someone suggested reporting his full compensation was potentially fraudulent. *Id.* Martley told the Sheriff Lieutenant that he previously had received direction from KPF to report his total compensation, including his City Administrator pay. *Id.* Martley had also relayed this to the Basehor City Treasurer in a 2014 email. *Id.* at 9, 11.

Martley later obtained documents showing communications between Rivarola and the Sheriff in January 2020 mentioning "payroll discrepancies we uncovered specific to retirement contributions of a former employee," and asking for assistance in how to proceed. *Id.* at 8; Doc. 150-1.[1] On January 30, 2020, Rivarola sent a formal request by Basehor to the Leavenworth County Sheriff's Office to investigate the financial reporting of retirement contributions by Martley to the Kansas Public Employee Retirement System ("KPERS"). Doc. 150 at 9; Doc. 150-2. The formal request was sent by Rivarola via email, which referenced Martley's KPF retirement contributions. Doc. 150 at 9; Doc. 150-3. A few days after her request for an investigation, Rivarola provided the Sheriff Lieutenant with several documents relevant to the investigation, including the email from 2014 sent by Martley to the Basehor City Treasurer, which stated that he "was told by KPF all my salary has to be reported through them." Doc. 150 at 9; Doc. 150-4.

Rivarola also gave the Sheriff Lieutenant a "Case Assessment" document prepared by outside legal counsel regarding Martley's EPA claim. Doc. 150 at 10. The Case Assessment was described as "background information relevant to" the criminal investigation. *Id.* In April 2020,

---

[1] Martley attached several exhibits to the third amended complaint, which are properly considered at this stage. *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

3

Rivarola contacted the Sheriff Lieutenant about receiving information from KPERS and mentioned the upcoming mediation and wrote that she "was hoping we might have some details from KPERS in advance of that mediation." *Id.*; Doc. 150-6. In another email, Rivarola copied litigation counsel and said she would be reaching out to "discuss our case." Doc. 150 at 11; Doc. 150-8.

### D.   Retaliation Claims

Martley alleges that Rivarola and the other defendants were aware of how Martley's compensation had been reported to KPF (combining City Administrator pay with Police Chief pay) before Martley brought his EPA claim in early 2019. Doc. 150 at 10. But city officials did not take any action on Martley's KPF contributions until after Martley raised his EPA claim. *Id.* Martley alleges the 2014 email was the only time anyone from the city raised any concern about how he was reporting his total compensation to KPF. *Id.* at 11. Martley also alleges that the city never set up a separate retirement account for him for only his City Administrator pay. *Id.* at 11-12. Defendants never sought to correct the issue administratively or by speaking with Martley, even though they knew for years how Martley's income was being reported to KPF. *Id.* at 12.

In the third amended complaint, Martley alleges an EPA violation against the city, *id.* at 13-14, retaliation by all defendants in violation of the EPA, *id.* at 14-15, and retaliation by all defendants for First Amendment activity under 42 U.S.C. §§ 1983 and 1988. *Id.* at 15-16. Rivarola seeks dismissal of both retaliation claims against her. Doc. 154 at 1.

## II.   STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if it is accompanied by sufficient factual content to allow a court "to draw the

4

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation omitted). In undertaking this analysis, a court accepts as true all well-pleaded allegations in the complaint, though it need not accept legal conclusions. *Id.* Likewise, conclusory statements are not entitled to the presumption of truth. *Id.* at 678-79.

## III.    ANALYSIS

Rivarola moves for dismissal of both retaliation claims. First, Rivarola argues Martley has not alleged an adverse action to sustain his EPA retaliation claim. Second, she argues that Martley has not adequately alleged that Rivarola's action would inhibit a reasonable person from engaging in First Amendment activity or that Rivarola's actions were motivated by Martley's protected conduct, and that Rivarola is entitled to qualified immunity.[2]

### A.    Retaliation – EPA

Rivarola first moves to dismiss the EPA retaliation claim against her in her individual capacity because there is no adverse action. Rule 12(b)(6) does not require that a plaintiff establish a prima facie case in the complaint, but the elements of a particular cause of action help inform whether a plaintiff has alleged a plausible claim. *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). A prima facie case of retaliation under the EPA requires proof of (1) protected activity, (2) adverse action subsequent to or contemporaneous with such protected activity, and (3)

---

[2] Rivarola's motion also argues that the informer's privilege under Kansas law and Kansas public policy require dismissal of both claims. Doc. 154 at 15-16. In her reply brief, Rivarola states that argument should be considered in conjunction with the qualified-immunity defense. Thus, the Court does not consider it separately.

a causal connection between the two. *Allen v. Garden City Co-op, Inc.*, 651 F. Supp. 2d 1249, 1258 (D. Kan. 2009).

Although the parties' briefs take some tangents, the underlying issue is whether Rivarola's request to the sheriff's department for an investigation into Martley's KPF contributions constitutes an adverse action sufficient to sustain a retaliation claim. Retaliation claims under the EPA invoke the same standards as claims brought under Title VII. *Id.* An adverse action is something that would dissuade a reasonable worker from bringing a charge of discrimination. *Lincoln v. Maketa*, 880 F.3d 533, 540 (10th Cir. 2018) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

The Tenth Circuit has held that "the filing of charges against a former employee may constitute adverse action." *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 986 (10th Cir. 1996). This is because "criminal prosecution" can have an "obvious impact." *Id.* Likewise, a "criminal trial . . . is necessarily public and therefore carries a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects." *Id.* This was the case in *Berry*, where defendants met with investigators and made retaliatory allegations of theft and forgery, which led to criminal charges for which the plaintiff was later acquitted. *Id.* at 984.

But the instigation of a criminal investigation is not always considered an adverse action. The Tenth Circuit has subsequently distinguished *Berry* based on its facts. In *Dick v. Phone Directories Co.*, the Tenth Circuit found that filing a police report against a plaintiff in retaliation for bringing harassment charges was not an adverse action. 397 F.3d 1256, 1269 (10th Cir. 2005). This was because, unlike in *Berry*, the plaintiff had not stood trial and no formal charges were brought against her. *Id.* "Rather, her coworkers simply complained to the . . . police." *Id.* Simply

6

filing a police report did not carry a risk of humiliation, damage to reputation, or harm to future employment prospects and therefore was not an adverse action. *Id.*

Likewise, in *Lincoln v. Maketa*, the plaintiff alleged the defendants instigated a criminal investigation in retaliation for his support of a sheriff's political opponent. *Lincoln*, 880 F.3d at 536. Although the Tenth Circuit was discussing the claim in the context of a qualified-immunity analysis (discussed further below), the court distinguished the facts from those in *Berry* and concluded for two reasons that the criminal investigation was not an adverse action. *Id.* at 540-41. First, a criminal investigation carries only speculative harm compared to the filing of formal charges. *See id.* at 540. Second, unlike in *Berry*, there were no facts suggesting that the criminal investigation was made public or that it resulted in humiliation, reputational damage, or harm to future employment prospects. *Id.* at 540-41.

From these cases, the Court concludes that the initiation of a criminal investigation may, under certain circumstances, constitute an adverse action sufficient to state a plausible claim of retaliation, but it must include some degree of concrete—not speculative—harm to reputation or future employment prospects. Here, there are no facts alleged that rise to that level.

The third amended complaint alleges that law enforcement contacted Martley and informed him he was under criminal investigation related to his KPF contributions, which the city had alleged were potentially fraudulent.[3] Martley said that he had been directed by KPF to report his total compensation. Beyond that, there are no allegations about whether charges were ever filed, whether Martley has faced trial, or whether the investigation or allegations were made public. Although there is a conclusory statement that the retaliatory acts have caused Martley "to suffer

---

[3] Martley contends that this was done in retaliation for the filing of this EPA lawsuit. But Rivarola's motivation for initiating the criminal investigation is a separate issue that goes to the third element of the prima facie case—whether there is a causal connection between the lawsuit and the criminal referral. *See Allen*, 651 F. Supp. 2d at 1258. Rivarola's motivation alone does not demonstrate that the criminal referral was an actionable adverse action.

7

damages," Doc 150 at 14, there are no facts explaining how. He does contend that "Defendants' method of secretly going to law enforcement for a criminal investigation . . .was designed to and ensured that Plaintiff would lose any opportunity to explain and prove the instruction he had received from KPF, which explanation and proof would have prevented the commencement of a frivolous criminal investigation." *Id.* at 13. But avoidance of the criminal investigation altogether is not the type of harm contemplated by *Berry*, *Dick*, and *Lincoln*. Something more is required to rise to the level of an adverse action, and Martley has not pleaded any facts to that end.

Accordingly, the Court finds that Martley has not plausibly stated an EPA retaliation claim against Rivarola. On this point, Rivarola's motion is granted and the EPA retaliation claim against her is dismissed without prejudice.

### B. Retaliation – First Amendment

Rivarola also argues for dismissal of Martley's First Amendment retaliation claim because it fails to state a claim, and because she is entitled to qualified immunity. A First Amendment retaliation claim requires facts alleging (1) constitutionally protected activity, (2) an injury that would chill a person of ordinary firmness from continuing to engage in constitutionally protected activity, and (3) that the defendant's actions were substantially motivated as a response to the constitutionally protected activity. *Salemi v. Colo. Pub. Employees' Ret. Ass'n*, 747 F. App'x 675, 698 (10th Cir. 2018). Although the second factor differs slightly from the adverse-action standard outlined above, the Tenth Circuit has held that they are analogous. *Lincoln*, 880 F.3d at 540. Accordingly, for the same reasons outlined above, Martley's First Amendment retaliation claim, which is based on the same conduct as the EPA retaliation claim, also fails to state a claim.

Even if Martley had plausibly stated a First Amendment retaliation claim, Rivarola would be entitled to qualified immunity. Qualified immunity is meant to protect public servants—"all but

the plainly incompetent or those who knowingly violate the law"—from the burdens of lawsuits. *Lewis v. Tripp*, 604 F.3d 1221, 1225 (10th Cir. 2010) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 806-07 (1982) and quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Although qualified immunity is typically asserted at the summary-judgment stage, "district courts may grant motions to dismiss on the basis of qualified immunity." *Myers v. Brewer*, 773 F. App'x 1032, 1036 (10th Cir. 2019) (internal quotation and citation omitted). In evaluating a motion to dismiss based on qualified immunity, the Court considers the defendant's conduct as alleged in the complaint and determines whether the facts alleged assert a constitutional violation and whether the right was clearly established. *Id.*

Once a defendant asserts qualified immunity, the plaintiff must show that: (1) the defendant's actions violated a constitutional right and (2) the constitutional issue was clearly established at the time of the defendant's actions. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). To be clearly established, the contours of the right must be sufficiently clear so that the official would know that what he was doing violated the right. *Id.* It is not enough to point to the existence of a right at a high level of generality—the question is whether the specific conduct of the defendant is clearly prohibited. *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011) ("The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established."). There need not be a case directly on point, but judicial precedent must have "placed the statutory or constitutional question beyond debate." *Id.* at 741.

Here, *Lincoln* plainly holds that a First Amendment retaliation claim based on the instigation of a criminal investigation is not a clearly established constitutional issue. *Lincoln*, 880 F.3d at 540-41. There, under the facts explained above, the court noted that neither the Supreme

9

Court nor the Tenth Circuit has settled the question of whether or when a retaliatory criminal investigation can form the basis of a constitutional violation. *Id.* at 540. Accordingly, qualified immunity applied. *Id.* at 541.

It is the burden of a plaintiff to come forward with authorities demonstrating that the violative nature of the conduct at issue is clearly established. *Knopf v. Williams*, 884 F.3d 939, 944 (10th Cir. 2018); *Medina*, 252 F.3d at 1128. In this instance, the Tenth Circuit in *Lincoln* has affirmatively concluded that the law on this issue is not clearly established. Martley does not address *Lincoln*, but instead relies on *Van Deelen v. Johnson*, 497 F.3d 1151 (10th Cir. 2007), to meet the clearly-established prong. But that case does not show that the conduct at issue here implicates a clearly established right. *Van Deelen* held that "a reasonable government official should have clearly understood . . . that physical and verbal intimidation intended to deter a citizen from pursuing a private tax complaint violates that citizen's First Amendment right to petition for the redress of grievances." *Id.* at 1159. Physical and verbal intimidation is not the same conduct at issue here, and thus *Van Deelen* is not informative. *See Knopf*, 884 F.3d at 944 ("The dispositive question is whether the violative nature of particular conduct is clearly established." (internal quotation and citation omitted)).[4]

Martley raises two other arguments regarding qualified immunity. First, he contends qualified immunity was already found to not be a bar to his First Amendment claim when he sought leave to amend the complaint.[5] In evaluating the contested motions to amend, the magistrate judge concluded that the city—the only party at the time—did not have standing to raise futility

---

[4] Martley also relies on *Berry*, although not in the qualified-immunity section of his brief. But as explained by the court in *Lincoln*, *Berry* does not establish that the constitutional issue is clearly established.

[5] Martley initially sought leave to amend to add the retaliation claims against both Rivarola and Breuer, but then dropped the request to add Rivarola. Doc. 61 at 9. Leave to add the retaliation claims against Breuer was granted. *Id.* at 15. When Martley later sought leave to add Rivarola, those same rulings were incorporated. Doc. 181 at 11.

arguments on behalf of individuals who were not yet parties, but even if the merits of the arguments were considered, it would not be futile. Doc. 61 at 12; Doc. 181 at 11. On these facts, however, the undersigned is disinclined to conclude that qualified immunity is a settled issue where the party asserting it now—Rivarola—was not even a party when leave to amend was granted.[6]

Second, Martley contends that the third amended complaint has pleaded that the law was clearly established. But conclusory statements in a complaint are not sufficient. Although <u>factual</u> allegations are entitled to a presumption of truth in analyzing a Rule 12(b)(6) motion, legal conclusions or conclusory statements are not. *Iqbal*, 556 U.S. at 679. Rather, when faced with a qualified-immunity defense, a plaintiff must plead <u>facts</u> showing a clearly established constitutional right. *Myers*, 773 F. App'x at 1036. Martley has not done that. And on the facts alleged, *Lincoln* has held that the question is not clearly established. Accordingly, Rivarola is entitled to qualified immunity on Martley's First Amendment retaliation claim.

## IV.  CONCLUSION

THE COURT THEREFORE ORDERS that Defendant Leslee Rivarola's Motion to Dismiss Plaintiff's Third Amended Complaint for Failure to State a Claim (Doc. 154) is GRANTED. The retaliation claims against Rivarola are dismissed WITHOUT PREJUDICE.[7] Rivarola is DISMISSED from this case.

IT IS SO ORDERED.

Dated: May 7, 2021            /s/ *Holly L. Teeter*
                              HOLLY L. TEETER
                              UNITED STATES DISTRICT JUDGE

---

[6] The Court has also reviewed the underlying briefs on the motions to amend. Although those filings briefly mention qualified immunity, they do not address the issues identified in this order, in particular *Lincoln*.

[7] Dismissal is without prejudice because it is based on a pleading deficiency, but the Court does not consider whether additional pleadings would be proper, or whether Martley could overcome a qualified-immunity defense given *Lincoln*.