## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **LLOYD MARTLEY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 19-2138-DDC-GEB** |
| ) | |
| **CITY OF BASEHOR, KANSAS,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

The matter comes before the Court on Plaintiff's Motion to Compel Production of Billing Records Responsive to Subpoenas Served on Hinkle Law Firm and Fisher Patterson Sayler & Smith (**ECF No. 180**). On May 24, 2021, the Court heard oral argument. After careful consideration of all briefing and hearing arguments from counsel, the Court orally **GRANTED** Plaintiff's motion. This Order memorializes the Court's rulings from the hearing on Plaintiff's motion.

## I.    Background[1]

On March 12, 2019, Plaintiff, Lloyd Martley filed a Complaint against Defendant, City of Basehor, Kansas ("City") alleging violation of the Equal Pay Act ("EPA") by paying disparate benefits and wages and retaliating against him for engaging in protected

---

[1] Unless otherwise indicated, the information recited in this section is taken from the Complaint (ECF No. 1), Third Amended Complaint (ECF No. 150), the Answers (ECF Nos. 4, 153), and City Administrator's Motion to Dismiss (ECF No. 154). This background information should not be construed as judicial findings or factual determinations.

activity. Plaintiff amended his complaint to add City of Basehor Mayor, David Breuer ("Mayor"), and City Administrator, Leslee Rivarola ("City Administrator").

Plaintiff served as the City's Police Chief from 2008 until July of 2018. At various times between 2009 and July of 2018, Plaintiff, in addition to serving as Police Chief, also served as city administrator. He retired from both positions in July of 2018. After Plaintiff's retirement, the City hired Leslee Rivarola as the new City Administrator. According to Plaintiff, the City paid him significantly less than what it paid her for performing the same job in violation of the EPA. Plaintiff alleges the City retaliated against him for engaging in protected activity by instituting a criminal investigation into his KP&F retirement fund reporting. He also alleges the City Attorney and/or the City's outside counsel were involved in instituting the criminal investigation and communicated with law enforcement regarding that investigation.

The City and Mayor deny they violated the EPA, primarily contending Plaintiff, because he served as Police Chief, only served as a part-time city administrator, and therefore did not perform work substantially equal to that of Rivarola. They also deny having retaliated against Plaintiff, contending Plaintiff's improper reporting of KP&F eligible income to KP&F required a criminal investigation and the City had a fiduciary and ethical duty to refer the matter for investigation. The City Administrator moved to dismiss. Her motion was granted. The retaliation claims against the City Administrator were dismissed without prejudice and she was dismissed from the case.

This case has been contentious at least from the time the City sought to have Plaintiff's counsel disqualified[2] due to a purported conflict of interest related to his previous role as city attorney for the City. The parties have filed five motions to quash and/or for protective order;[3] three motions to compel, including the one at issue here;[4] and a motion to amend the Scheduling Order regarding logging of privileged communications with counsel and documents created by counsel even after suit was filed.[5] Additionally, the Court has held four discovery hearings to resolve deposition objections and issues related to the continuation of a deposition[6] and an informal discovery conference regarding the intention to depose current and former defense counsel.[7] In the Court's view the way counsel have dealt with each other has led to such a level of distrust, that the parties are now filing serial motions; motions to compel following a barrage of motions to quash.

## II. Plaintiff's Motion to Compel Production of Billing Records Responsive to Subpoenas Served on Hinkle Law Firm and Fisher Patterson Sayler & Smith (ECF No. 180)

On November 17, 2020, Plaintiff filed notices of intent to serve subpoenas on Fisher Patterson Salyer & Smith ("FPSS")[8] and Hinkle Law Firm LLC ("Hinkle")[9] seeking, among other things, the firms' billing records for a certain period related to the firms' defense of claims asserted by Plaintiff against the City and about how Plaintiff's income

---

[2] ECF No. 7.
[3] ECF Nos. 39, 123, 124, 128, and 174.
[4] ECF Nos. 130, 180, and 205.
[5] ECF No. 129.
[6] ECF Nos. 100, 101, 103, and 171.
[7] ECF No. 195.
[8] ECF No. 119.
[9] ECF No. 120.

was reported to KPERS, including KP&F. Hinkle, FPSS, the City, and Mayor all filed Motions to Quash and Motions for Protective Order.[10] The Court held a hearing on the three motions to quash and for protective order as well as other pending motions on January 27, 2021. The Court orally denied the three motions to quash and for protective order and entered a text order requiring the production of "all billing records and/or any applicable privilege logs."[11]

The Court subsequently entered a Memorandum and Order memorializing its oral rulings from the hearing and expounding upon the expectation the Court set out in its oral ruling.[12] There the Court stated "…but at minimum, a privilege log was to be produced outlining the responsive information. Also, the parties were reminded the requested billing records are not presumptively privileged, so the Court's expectation is billing records will be produced, with the exception of clearly privileged information."[13] Neither Hinkle, FPSS, nor the City produced any billing records. Hinkle and FPSS produced privilege logs for the 8 time entries now at issue.

The Court held an informal discovery conference via Zoom on March 5, 2021 and April 30, 2021. The March 5th conference addressed the production of an Insurance Assessment and review of the privilege logs produced by Hinkle and Defendants. Although the Court initially found the privilege logs produced by Defendants to be proper, found a

---

[10] ECF Nos. 123, 124, and 128.
[11] ECF No. 149.
[12] ECF No. 181.
[13] ECF No. 181 at 22.

reasonable basis for the privileges described, and declined to review the documents *in camera* at the time[14] the privilege logs and billing records continued to be an issue of discussion between the parties and the Court. The April 30, 2021 conference addressed Plaintiff's request to depose Defendants' current and former outside counsel as well as the then pending motions, including the current motion. To determine whether FPSS and Hinkle had complied with its Orders from the January 27, 2021 hearing on the motions to quash and for protective order, the Court ordered FPSS and Hinkle to produce the billing records at issue no later than May 3, 2021 for *in camera* review.[15] On May 24, 2021, the Court held oral argument on the pending motions and orally granted Plaintiff's motion to compel. During the hearing, Defendants asserted they would file an objection to the Court's ruling. The Court allowed the Defendants to withhold production of the billing records it is ordered to produce until the District Judge rules on any forthcoming objection.

### A.    Parties' Arguments

#### 1.    Plaintiff's Position

Plaintiff alleges a little over a year after he filed this action with his EPA claim, he was contacted by the Leavenworth County Sheriff's Department and informed he was under investigation based on a complaint made by the City regarding his income reporting to KP&F.[16] Believing the City, through its counsel, initiated the criminal investigation to deter him from proceeding with his EPA claim, Plaintiff amended his Complaint to add a

---

[14] ECF No. 160.
[15] ECF No. 195.
[16] ECF No. 180 at 2.

claim of retaliation and subpoenaed the City's current and former counsel to obtain their billing records.[17] When after the Court's ruling on the motions to quash, FPSS and Hinkle did not produce any of the billing records, Plaintiff moved to compel.

Plaintiff set out a lengthy factual statement regarding the investigation into his purported mis-reporting of income to KP&F, the City's and its counsel's role in instigating the investigation, his efforts seeking information in support of his retaliation claim, and defense counsel's efforts to prohibit testimony or production on the basis of privilege.[18] Plaintiff claims the crime-fraud exception requires the production of the billing records which Hinkle and FPSS withheld based on attorney-client privilege and/or the work product doctrine and alternatively, Plaintiff argues any claims of privilege have been implicitly waived by putting the advice of counsel "at issue."[19]

### 2.      Defendants', FPSS', and Hinkle's Joint Position

Defendants, FPSS, and Hinkle argue the crime-fraud exception does not apply. They assert Plaintiff's motion does not set forth a prima facie case of any crime – especially any crime with attorney involvement – such that the exception would apply;[20] attorney-client privilege applies and has not been waived; and they have not put the subject matter of the attorney time entries at issue in this case whereby they would have waived the attorney-client privilege.[21]

---

[17] *Id.*
[18] *Id.* at 3-10.
[19] *Id.* at 13-17 and 19-27.
[20] ECF No. 189 at 3-9.
[21] *Id.* at 10-11.

**B.      Compliance with D. Kan. Rule 37.2**

Pursuant to D. Kan. Rule 37.2, this Court "will not entertain any motion to resolve a discovery dispute" unless counsel have "conferred or has made reasonable effort to confer with opposing counsel" before filing a motion. Given the prior conferences held on the topic of the motion to compel, the Court finds the parties have sufficiently complied with D. Kan. Rule 37.2.

**C.      Analysis**

The Court acknowledges the City, Hinkle, and FPSS complied with the letter of its January 27, 2021 Order. However, had they complied with the spirit of the order producing the 8 time entries, redacting only clearly privileged information, perhaps the parties could have avoided this motion to compel with its nearly 265 pages of briefing and exhibits, saving the parties time and money and conserving judicial resources.

The Court, now having reviewed the eight time entries, in addition to the privilege logs of Hinkle, FPSS, and the City, can decide Plaintiff's motion on the basis of attorney-client and work product privilege without having to determine whether the crime-fraud exception applies or whether privilege has been waived by putting the advice of counsel at issue.

**1.      Attorney-Client Privilege**

Three of the eight time entries, all belonging to Hinkle, were withheld on the basis of attorney-client privilege.[22] Kansas law applies to determining attorney-client privilege,

---

[22] ECF No. 189-2.

although there is generally no conflict between Kansas and federal law.[23] A court may conduct an *in camera* review to determine if attorney-client privilege applies.[24] "The attorney-client privilege protects confidential communications between an attorney and client where legal advice is sought."[25] The purpose of the privilege is to encourage complete and candid communication between a client and his or her attorney.[26] It protects communications between an attorney and client, not the facts therein.[27] Additionally, the privilege does not apply to the fact of communication between a client and attorney. Rather, it is the substance of the communication which is protected, not the fact that there has been communication.[28] The protection is afforded only to confidential communications seeking or rendering legal advice.[29] It seems clear that Hinkle was not relaying legal advice to its client via its monthly bills. It relayed legal advice, if any, through the telephone calls or emails referenced in the time entries.

Narrative statements in attorney billing statements are not per se attorney-client privileged.[30] A general description of the work performed by the attorney is not protected by the privilege.[31] Narrative statements which reveal the nature of the legal services provided, such as researching particular areas of law, should fall within the attorney-client

---

[23] *Marten v. Yellow Freight System, Inc.*, No. 96-cv-2013, 1998 WL 13244, *4 (D. Kan. Jan. 6, 1998). *See also Sprague v. Thorn Americas, Inc.,* 129 F.3d 1355, 1369 (10th Cir. 1997).

[24] *Freebird, Inc. v. Cimarex Energy Co.,* 46 Kan.App.2d 631, 639 (2011) (citing *Kerr v. United States District Court*, 426 U.S. 394, 404–06 (1976).

[25] *Burton v. R.J. Reynolds Tobacco Co.,* 170 F.R.D. 481, 484 (D. Kan. 1997).

[26] *Id.* (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)).

[27] *Id.*

[28] *Burton* at 484.

[29] *Id.*

[30] *Cypress Media, Inc. v. City of Overland Park*, 268 Kan. 407, 425, 997 P.2d 681, 693 (2000).

[31] *Burton* at 484.

privilege.[32] After a careful review of the three time entries,[33] although one entry[34] contains information that "borders on providing legal advice," the Court believes the entries do not reflect any legal advice which Hinkle might have given its client in the referenced telephone calls or email. The entries reflect the fact that communications occurred between counsel, the Mayor, and the City Administrator. Additionally, they reflect facts well known in the case, for example the City, through the City Administrator and even counsel of record, were in communication with Detective Patzwald, and KPERS investigated Plaintiff's income reporting.[35] The entries provide only a general description of the work done by Hinkle. The Court finds the three time entries are not protected by the attorney-client privilege. However, where Hinkle also withheld these documents on the basis of work product privilege, the Court will discuss their production below.

## 2.     Work Product Protection

Work product protection is determined based upon federal law.[36] The doctrine protects from disclosure documents prepared in anticipation of litigation by a party or their representative absent a showing of substantial need.[37] "At its core, the work-product

---

[32] *Cypress Media* at 422.

[33] May 1, 2020 entry at HLF000008, May 8, 2020 entry at HLF000009, and May 8, 2020 entry at HLF000010.

[34] May 8, 2020 entry at HLF000009.

[35] See ECF No. 180 at 8 text of voicemail counsel Michelle Stewart left for Detective Patzwald, a recording of which was produced as part of the Sheriff's investigation file; ECF No. 180-16 email from City Administrator to Detective Patzwald and Michelle Stewart regarding Stewart contacting Patzwald; and ECF Nos. 180-9, 180-10, and 180-12 all email between the City and KPERS regarding KPERS investigation into Plaintiff's income reporting;

[36] *Kannaday v. Ball*, 292 F.R.D. 640, 648 (D. Kan. 2013). *See also S.E.C. v. McNaul*, 271 F.R.D. 661, 665 (D. Kan. 2010).

[37] Fed. R. Civ. P. 26(b)(3).

doctrine shelters the mental processes of the attorney, providing a privileged area in which he can analyze and prepare his client's case."[38] The doctrine "does not protect facts concerning the creation of work product or facts contained within work product."[39]

### a.   Time Entries to be Produced Without Further Redaction

After a thorough review, the Court finds the time entries identified below provide only a general description of telephone calls made, documents reviewed, and emails received. Discussed individually below, the time entries do not reflect the mental impressions, conclusions, opinions, or legal theories of Defendants or their counsel. They should be produced to Plaintiff without further redaction.[40]

| | |
|---|---|
| HLF000006 – 4/27/2020 Entry by Michelle Stewart | This time entry includes a general description of the work done by Ms. Sherman, as the privilege log indicates,[41] the evaluation of a document. The entry does not identify a specific document, indicate what analysis was done, or set forth any conclusions drawn from the analysis. The entry additionally refers to facts well known in this case. |
| HLF000007 – 4/29/2020 Entry by Michelle Stewart | This entry refers to a telephone call made by counsel during its investigation of events related to this case. It references facts well known in this case.[42] |
| HLF000008 – 5/1/2020 Entry by Michelle Stewart | The May 1, 2020 entry references a telephone call between counsel and the City Administrator. The entry again references facts well known in this case but does not reveal the mental impressions of the City or its counsel. |

---

[38] *United States v. Nobles,* 422 U.S. 225, 238 (1975).

[39] *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995).

[40] The billing records were produced to the Court with information that was not responsive to the subpoena being redacted. The responsive entries show the date of the entry, timekeeper, time spent, and billing narrative. Where the Court orders a billing entry be produced without further redaction, it is ordering that it be produced to Plaintiff as it was produced to the Court, without any redaction to the billing narrative. The redactions to the copies provided to the Court may be maintained in the copies produced to Plaintiff.

[41] See ECF No. 180-1 at 2.

[42] See footnote 35, supra.

| | |
|---|---|
| FPSS – 5/2/2019 Entry by Terelle Mock | FPSS' privilege log indicates this time entry was for "time spent analyzing Martley's payroll records for purposes of defending the EPA claim and for a telephone communication with a KPERS attorney."[43] A related entry on the City's Third Amended Privilege Log the following day[44] documents that Ms. Mock emailed the City Administrator and City Attorney regarding "litigation issues and communications with KPERS counsel regarding information discovered in review of Plaintiff's payroll records as to Plaintiff's potential miss-reporting (sic) of salary . . . ." Ms. Mock's May 2, 2019 time entry provides little information beyond what FPSS and the City included in their privilege logs. The entry does not reflect any conclusions from Ms. Mock's analysis. |
| FPSS – 5/16/2019 Entry of Terelle Mock | As the privilege log indicates,[45] the time entry is regarding "time spent reviewing **factual information from client** necessary to defend the pending litigation and discussing the same with the client." Although the time entry does identify a fact reported by the client, facts contained within work product are not protected by the doctrine. |
| FPSS – 5/28/2019 Entry of Terelle Mock | Hereto, the time entry reveals very little beyond what is included in the privilege log. The log indicates the entry is for "time spent talking to KPERS attorney and communicating with the client."[46] The additional information provided in the time entry references facts well known in this case.[47] |

**b.      Time Entries to be Produced with Additional Redaction**

Two of the eight time entries shall be produced with minimal redaction to protect the litigation strategy of the City and its counsel.

---

[43] ECF No. 180-2 at 2.
[44] ECF No. 180-3 at 2-3.
[45] ECF No. 180-2 at 2 (emphasis added).
[46] ECF No. 180-2 at 3.
[47] See footnote 35, supra.

| HLF000009 – 5/8/2020 Entry of Michelle Stewart | This time entry should be produced with the narrative redacted after the name Rivarola. |
| --- | --- |
| HLF000010 – 5/8/2020 Entry of Michell Stewart | This entry should be produced with the narrative redacted after the name Mercano. |

## III.    Conclusion

Based on the foregoing and considering the Court's *in camera* review of the billing records presented, the Court orders the production of the time entries in the billing records as noted above. However, the production of the billing records may be withheld until the District Judge rules on any forthcoming objection to this order. Should an objection to this ruling be filed, the undersigned will provide copies of the billing records reviewed *in camera* to the District Judge.

**THEREFORE**, Plaintiff's Motion to Compel Production of Billing Records Responsive to Subpoenas Served on Hinkle Law Firm and Fisher Patterson Sayler & Smith (**ECF No. 180**) is **GRANTED** for the reasons set forth above.

**IT IS SO ORDERED**.

Dated August 12, 2021.


                                        s/ Gwynne E. Birzer
                                        GWYNNE E. BIRZER
                                        U.S. Magistrate Judge