IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| LLOYD MARTLEY,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>BASEHOR, KANSAS, CITY OF, et al.,<br><br>　　　　Defendants. | Case No. 2:19-cv-02138-HLT-GEB |

### MEMORANDUM AND ORDER

Plaintiff Lloyd Martley brings this Equal Pay Act ("EPA") case against his former employer, Defendant City of Basehor, Kansas, and one of its officials, Defendant David Breuer. Martley alleges violation of the EPA and retaliation stemming from a criminal investigation into the reporting of his income to a state retirement system.

This is a contentious case that now includes a protracted discovery dispute about attorney billing records. The magistrate judge ordered that billing records generated by Defendants' counsel must be produced to Plaintiff. Defendants objected. Docs. 213-214. Because the records are work product and because Plaintiff has not shown substantial need for them under the applicable standard, the Court sustains the objections.

**I.    BACKGROUND**

Although the history of this case is long and combative, the following facts are relevant to the current dispute. On November 17, 2020, Plaintiff served subpoenas on two law firms, Fisher Patterson Sayler & Smith ("FPSS") and the Hinkle Law Firm ("Hinkle"). Docs. 119-120. Defendants are currently represented by Hinkle and were previously represented by FPSS. The subpoenas primarily sought certain billing records for time entries referencing Plaintiff's retirement contributions. This was based on Plaintiff's allegation that Defendants' counsel were

directly involved in the initiation of the criminal investigation into his retirement contributions, which is the basis of his retaliation claim. Defendants and their counsel moved to quash the subpoenas. Doc. 181 at 11-12.

The magistrate judge denied the motions to quash and ruled in a text order that "all billing records and/or any applicable privilege logs must be produced by 2/18/2021." Doc. 149. The magistrate judge subsequently issued a written order finding that the subpoenas sought information that was relevant, appropriate in scope, and not overly burdensome. Doc. 181 at 20-22. Privilege issues were not addressed at the time because no privilege logs had been submitted yet. *Id.* at 18-19. Defendants' counsel ultimately did not produce any documents but produced privilege logs instead. Doc. 212 at 4.

The magistrate judge initially found the privilege logs to be sufficient and declined to conduct an in-camera review. Doc. 160. But it continued to be an issue between the parties. After Plaintiff sought to depose Defendants' counsel, the magistrate judge held an additional status conference and ordered Defendants' counsel to produce the billing records in camera to determine whether they had complied with the prior orders. Doc. 195; *see also* Doc. 212 at 5.

The magistrate judge subsequently granted Plaintiff's motion to compel the billing records and issued a written order regarding the claims of privilege as to eight billing records. *See generally* Doc. 212. The magistrate judge found that three of the billing records were not protected by the attorney-client privilege as claimed, and that none were protected by the work-product doctrine, except for two entries that were ordered produced with additional redactions. *See id.*

Defendants and their counsel now object to that ruling. Docs. 213-214. The magistrate judge permitted Defendants and their counsel to delay production of the billing records pending a ruling on the objections. Doc. 212 at 5.

2

**II.     STANDARD**

Under Rule 72(a), a district judge may set aside a magistrate judge's order on a nondispositive matter "that is clearly erroneous or is contrary to law." *See also* 28 U.S.C. § 636(b)(1)(A). Under the clearly erroneous standard, a reviewing court must affirm a magistrate judge's order unless it is "left with the definite and firm conviction that a mistake has been committed." *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988) (internal quotation and citation omitted). The "contrary to law" standard permits "an independent review of purely legal determinations." *Norwood v. United Parcel Serv., Inc.*, 2021 WL 75641, at *1 (D. Kan. 2021). Where an order fails to apply or misapplies relevant law, the order is "contrary to law." *Id.* (citation omitted).

**III.    ANALYSIS**

At issue are the narrative portions of eight billing records.[1] FPSS's privilege log is attached to the objection. *See* Doc. 213-1. A separate privilege log from Hinkle is also attached to the objection, Doc. 213-2, but this appears to be a privilege log for different records. A privilege log for the billing entries was found at Doc. 189-2, and a functionally similar one was submitted to the magistrate judge's chambers with the records. The Court has reviewed the privilege logs and the underlying records submitted in camera.

    **A.     Work Product**

Defendants' counsel asserted work-product protection for all eight billing records. For six of these records, the magistrate judge ordered them produced without further redaction. For the

---

[1] Five entries are from Hinkle: HLF000006, HLF000007, HLF000008, HLF000009, and HLF000010. Three are from FPSS, identified by their dates: 5/2/19, 5/16/19, and 5/28/19.

additional two billing records, the magistrate judge ordered production with additional redaction. Doc. 212 at 10-12.

The work product doctrine is codified in Fed. R. Civ. P. 26(b)(3). This rule states:

> (A) Documents and Tangible Things. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
> (i) they are otherwise discoverable under Rule 26(b)(1); and
>
> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
>
> (B) Protection Against Disclosure. If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

This rule creates a three-step analysis.[2] First, the party claiming that the work-product doctrine applies has the burden of showing "(1) the materials sought to be protected are documents or tangible things; (2) they were prepared in anticipation of litigation or for trial; and (3) they were prepared by or for a party or a representative of that party." *S.E.C. v. McNaul*, 271 F.R.D. 661, 665 (D. Kan. 2010). Second, once this showing is made by the producing party, the requesting party has the burden to show a substantial need for the materials and that the information cannot be obtained through other means without undue hardship. *Id.* (citing Fed. R. Civ. P. 26(b)(3)(A)); *see also* 6 Moore's Federal Practice – Civil § 26.70[5][b] (outlining burden shifting). Third, even

---

[2]  For a discussion about this analysis, see 6 Moore's Federal Practice – Civil § 26.70.

where such a showing is made, the court must still protect the mental impressions, conclusions, opinions, or theories of counsel. *See S.E.C.*, 271 F.R.D. at 665; *see also* Fed. R. Civ. P. 26(b)(3)(B).

In applying this analysis, the first issue is whether Defendants and their counsel have met the threshold for asserting work-product protection as to the billing records. To this point, Defendants and their counsel argue that billing records are tangible documents created during the pendency of this lawsuit, and they were prepared by counsel for Defendants or their insurer. Doc. 213 at 9. The undersigned agrees that the billing records would qualify as work product under these circumstances given that they are documents prepared by counsel of record for this litigation and during this litigation. *See S.E.C.*, 271 F.R.D. at 665.

Having determined that the billing records are work product, the second question in the analysis is whether the party requesting the materials—here, Plaintiff—has demonstrated that the materials sought are otherwise discoverable and that he has a "substantial need" for the materials and "cannot, without undue hardship, obtain their substantial equivalent by other means." *See* Fed. R. Civ. P. 26(b)(3)(A). On this point, the record is effectively silent.

The undersigned is aware that Plaintiff asserts a retaliation claim associated with his EPA claim. Plaintiff believes that Defendants, with the aid of their counsel, initiated a criminal investigation regarding his retirement contributions in retaliation for his EPA claim. The underlying motion to compel lays out seven pages of factual allegations in support of this theory, which concludes with a statement that "Plaintiff is confident the billing records the law firms are concealing will clearly demonstrate they worked together with Defendants in an effort to conceal and give legitimacy to an 'investigation' that was not aimed at getting at the truth but rather was clearly intended to serve as retaliation . . . ." Doc. 180 at 3-10.

5

Given the factual recitation in the underlying motion and the legal claims in this case, however, the undersigned is less confident as to why Plaintiff has any substantial need for the billing records of the attorneys in this case. A prima facie case of retaliation under the EPA requires proof of (1) protected activity, (2) adverse action subsequent to or contemporaneous with such protected activity, and (3) a causal connection between the two. *Allen v. Garden City Co-op, Inc.*, 651 F. Supp. 2d 1249, 1258 (D. Kan. 2009). It is clear from the briefs Plaintiff believes the criminal investigation into his retirement contributions was initiated because of his EPA lawsuit, given the timing and given various statements made by city officials. But it's unclear how the involvement of counsel—which is not surprising given the fact that this lawsuit was pending at the time—somehow bears on this issue. Defendants' counsel are not parties accused of retaliating against Plaintiff.

And even to the extent the involvement of counsel is somehow relevant and proportional,[3] it's not evident that Plaintiff could not obtain the substantial equivalent of this information by other means and without undue hardship. This is not the type of information that cannot be recreated. *See* 6 Moore's Federal Practice – Civil § 26.70[5][c] ("Common examples of essential materials include test results that cannot be duplicated, and photographs taken immediately after an accident when the accident scene has since changed."). Indeed, to the extent Plaintiff seeks these billing records to demonstrate the involvement of counsel, his factual recitation in the underlying motion demonstrates that he has already obtained substantial information on this point. The fact that Plaintiff wishes to keep digging is not enough to demonstrate a substantial need to obtain the work product of Defendants' counsel in an active lawsuit. *See Dir., Off. of Thrift Supervision v. Vinson*

---

[3] Fed. R. Civ. P. 26(b) explains that relevance and proportionality govern discovery. Neither party raises these issues, so they are beyond the scope of the objection. But the Court questions whether the extensive time, energy, and resources directed to this issue is proportional to its relevancy.

6

*& Elkins, LLP*, 124 F.3d 1304, 1308 (D.C. Cir. 1997) ("It is the rare case where corroborative evidence can be thought 'necessary.'").[4]

Based on this analysis, it is unclear how Plaintiff could justify compelling the discovery of Defendants' billing records. The analysis as guided by the parties' briefs has focused on whether the billing records are per se privileged or whether they reveal mental processes. Lost is any discussion of whether Plaintiff has shown a substantial need for the billing records. But work product—whether fact or opinion—is not even discoverable absent such a showing. The failure to address this question and apply the appropriate framework for discovery of work product requires the undersigned to sustain the objections of Defendants. *See Norwood*, 2021 WL 75641, at *1 (noting that an order that fails to apply or misapplies relevant law is "contrary to law"). To the extent Plaintiff intends to pursue this issue further, the undersigned notes the legal framework outlined above and strongly encourages the parties to focus their analysis accordingly.[5]

---

[4] Although this case was reassigned to the undersigned this year, Doc. 172, the docket reflects its contentious history, particularly among counsel. The undersigned is aware of earlier unsuccessful attempts by Defendants to have Plaintiff's counsel disqualified. *See* Doc. 22. Now, Plaintiff seems to have undertaken considerable efforts to turn Defendants' counsel into witnesses, including demands to depose counsel, which could obviously lead to attempts to disqualify Defendants' counsel. To be clear, the undersigned is not interested in "who started it," and frankly sees sufficient blame to go around. Suffice it to say this type of gamesmanship is tiresome; counsel and the parties should refocus their energy and professionalism into resolving the substantive claims in this case.

[5] Under Rule 26(b)(3), even if a party can show a substantial need for the work product, courts must still protect opinion work product, meaning mental impressions, conclusions, opinions, and legal theories of counsel. *See Jud. Watch, Inc. v. United States Dep't of Just.*, 118 F. Supp. 3d 266, 272 (D.D.C. 2015). Because the undersigned finds no evidence in the record that Plaintiff has satisfied his burden on the second step, there is no need to determine the third step. To this point, however, the Court offers the following observations. At the third step, the work product doctrine does not protect facts contained in the work product. But that does not mean the work product itself is necessarily produced. To the extent discoverable <u>facts</u> could be found within the billing records, *see Resol. Tr. Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995), that does not necessarily mean that the billing records themselves are discoverable. Instead, the facts could be provided in another manner. *See United States v. Dentsply Int'l Inc.*, 187 F.R.D. 152, 156 (D. Del. 1999) (requiring government to provide facts in an interrogatory response).

### B.     Attorney-Client Privilege

In addition to claiming work-product protection, three of the billing records were withheld based on attorney-client privilege (HLF000008-10). Because Plaintiff failed to demonstrate a substantial need to overcome work-product protection as to all the billing records, the undersigned does not reach the issue about whether they are also protected by the attorney-client privilege.

## IV.    CONCLUSION

The Court is sympathetic to the challenges the magistrate judge faces in this case. The parties and counsel are combative and require intense management. The magistrate judge has done yeoman's work trying to focus counsel and the parties on the central (and seemingly straightforward) issues. And her efforts are further complicated by briefing that fails to outline the appropriate legal standard. But the undersigned concludes that work-product protection applies and sustains the objection.

THE COURT THEREFORE ORDERS that Defendants' Objections (Docs. 213-214) are SUSTAINED.

IT IS SO ORDERED.

Dated: November 18, 2021            /s/ *Holly L. Teeter*
                                                           HOLLY L. TEETER
                                                           UNITED STATES DISTRICT JUDGE