## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **LLOYD MARTLEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 19-2138-DDC-GEB** |
| | ) | |
| **CITY OF BASEHOR, KANSAS,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM AND ORDER

The matter comes before the Court on Plaintiff's Motion to Compel Discovery **(ECF No. 205)**. After careful consideration of the parties' briefing, the Court **GRANTS in part and DENIES in part** Plaintiff's motion for the reasons set forth below.

This motion addresses document production associated with Plaintiff's Re-Issuance of Requests 4-6 of Third Request for Production of Documents to Defendants ("Reissued RFP's 4-6"). Plaintiff has long alleged counsel for the City, the City Attorney, Shannon Marcano, and insurance defense counsel, first Terelle Mock and later Michelle Stewart, were directly involved in investigations by KPERS and the Leavenworth County Sheriff's Department into Plaintiff's income reporting to KPF.

Reissued RFP's 4-6 seek, among other things, documents or communications between the Defendants or their lawyers and various City representatives, including the City's insurer, which contain factual information or discussion of Plaintiff's EPA claim and the investigations by KPERS or Leavenworth County Sheriff. The City alleges all

1

responsive documents have been produced with all attorney-client communications and work product having been identified on its privilege logs.

## I.   Background[1]

This is the parties' ninth discovery motion brought before this Court.[2] In addition to the discovery motions, the Court has held numerous discovery conferences to resolve deposition issues.[3] Given the number of opinions the Court has written outlining the facts in this case, it will not go into full detail here. Highly summarized, the relevant facts are as follows:

In his Third Amended Complaint Plaintiff brought a claim against Defendant, City of Basehor, Kansas, ("City") alleging violation of the Equal Pay Act ("EPA") by paying disparate benefits and wages. He brought claims against all Defendants, the City; its Mayor, David Breuer ("Mayor"); and City Administrator, Leslee Rivarola ("City Administrator" or "Rivarola") alleging they retaliated against him in violation of the EPA and the First Amendment.

Plaintiff served as the City's Police Chief from 2008 until July of 2018. At various times between 2009 and July of 2018, Plaintiff, in addition to serving as Police Chief, also

---

[1] Unless otherwise indicated, the information recited in this section is taken from the Third Amended Complaint (ECF No. 150), the Answers (ECF Nos. 4, 153), City Administrator's Motion to Dismiss (ECF No. 154), and Memorandum and Order granting the City Administrator's Motion to Dismiss (ECF No. 196). This background information should not be construed as judicial findings or factual determinations.

[2] Five motions to quash and/or for protective order - see ECF Nos. 39, 123, 124, 128, and 174; three motions to compel, including the one here – see ECF Nos. 130, 180, and 205; and a motion to amend the Scheduling Order regarding logging of privileged communications with counsel and documents created by counsel even after suit was filed – see ECF No. 129.

[3] ECF Nos. 100, 101, 103, 171, and 195.

served as city administrator. He retired from both positions in July of 2018. After Plaintiff's retirement, the City hired Rivarola as the new City Administrator. Plaintiff contends the City paid him significantly less than what it paid her for performing the same job.

The City and Mayor deny they violated the EPA. They primarily contend because Plaintiff served as Police Chief, he served as a part-time city administrator, and therefore did not perform work substantially equal to that of Rivarola. They also deny any retaliation against Plaintiff. After filing a motion to dismiss, the retaliation claims against the City Administrator were dismissed without prejudice.[4]

## II.    Plaintiff's Motion to Compel Discovery (ECF No. 205)

By way of history, Plaintiff's Third Request for Production of Documents were initially propounded on November 20, 2020 and Defendants served their response on December 18, 2020. Prior to the January 27, 2021 oral arguments on several unrelated discovery motions, Plaintiff made an informal request for extension of time to extend his deadline to file any motion to compel on the Third Request for Production. During the oral arguments the Court and counsel discussed not only the request for extension of time, but also the scope of Requests 4-6 of the Third Request for Production. In the Court's January 28, 2021 Order (ECF No. 149), Plaintiff was directed to revise Requests 4-6 to narrow the scope of information sought. Those requests were reissued on February 11, 2021 and the City served its response and objections to Reissued RFP's 4-6 on March 10, 2021.

---

[4] ECF No. 196.

The crux of the dispute is Plaintiff reported the entirety of his earnings, for both jobs, as the police chief and city administrator, to the Kansas Police and Firemen's Retirement System ("KPF") which is part of the Kansas Public Employees Retirement System ("KPERS"). The City alleges this resulted in it overpaying retirement benefits into KPERS for Plaintiff. But, Plaintiff alleges he was directed to report his earnings in that fashion by KPF.

The City and arguably its counsel communicated with KPERS regarding Plaintiff's reporting and any overpayment. After confirmation from KPERS that Plaintiff reported all of his income to KPF, the City brought the issue to local law enforcement. Plaintiff alleges the City reported the issue to law enforcement in retaliation because he filed his EPA lawsuit. He further alleges the City's counsel participated in the retaliation. In Reissued RFP's 4-6 Plaintiff seeks information in support of his retaliation claims. He requests documents or communications between any of the Defendants or their lawyers and City employees, elected officials, or representatives, including insurance representatives which contain factual information about Plaintiff's EPA claim, the City's defense of the claim, and the discovery or investigation into Plaintiff's income reporting.

Plaintiff filed the current motion requesting the Court: 1) compel the City and its lawyers to search for and produce responsive documents to Reissued RFP 4-6; 2) submit Items 1-18 and 21 ("Relevant Documents") of the City's privilege log to the Court for an *in camera* review to assess whether the City has properly withheld the documents as privileged and/or work product; and 3) order the production of the Relevant Documents.

### A.    Parties' Arguments

### 1.    Plaintiff's Position

Plaintiff alleges: a) counsel for Defendants, in their meet and conferral process, admitted searches for responsive documents were not run by the law firms that have represented the City, or by its insurance company, and documents in their possession are within the possession and/or control of the City; b) the City has not met its burden of establishing the Relevant Documents are attorney-client privileged and/or attorney work product; and c) the Relevant Documents are discoverable pursuant to the crime-fraud exception to the attorney-client privilege and work product protection doctrine; because the City implicitly waived the attorney-client privilege by putting the subject matter at issue; and because the City has pled the equivalent of the *Faragher-Ellreth* affirmative defense.

### 2.    Defendants' Position

Defendants allege four key arguments in this dispute: First, there is no evidence they are withholding responsive documents and pursuant to *Taylor v. LM Insurance Corp.*[5] without such evidence, the court "cannot compel the production of documents that have not been uncovered after a reasonable search;" Second, their privilege log meets the requirements for a log in this District and establishes that the Relevant Documents are privileged communications not subject to disclosure; Third, Plaintiff has not made a prima facie case of any crime, thus the crime-fraud exception is not applicable, and the attorney-

---

[5] *Taylor v. LM Insurance Corp.,* No. 19-1030-JWB, 2019 WL 5696861 (D. Kan. Nov. 4, 2019).

client privilege has not been waived; and Fourth, the Relevant Documents are work product and Plaintiff has not shown substantial need for the documents to overcome the privilege.

## B.    Compliance with D. Kan. Rule 37.2

Pursuant to D. Kan. Rule 37.2, this Court "will not entertain any motion to resolve a discovery dispute" unless counsel have "conferred or has made reasonable effort to confer with opposing counsel" before filing a motion. Based upon the certification of Plaintiff's counsel and review of correspondence between the parties, the Court finds the parties have complied with D. Kan. Rule 37.2 to the best of their temperament.

## C.    Discussion

### 1.    Search for Responsive Documents

Defendants answered each Reissued RFP's 4-6, making no objection. Rather, they state "[a]ll responsive documents [from the relevant time period] have been produced with the exception of attorney/client communications and work product documents that have been identified" on Hinkle and Fisher Patterson's relevant privilege logs. During the parties' meet and conferral process, Plaintiff's counsel took specific steps in an effort to comply: They identified documents which it thought were responsive and which Defendants would not confirm had been reviewed, they indicated a search for documents responsive to RFP 2 would not have identified all documents responsive to Reissued RFP's 4-6, and they thought it unlikely that there were no additional responsive documents.[6]

---

[6] ECF No. 205-3 at 3.

Plaintiff's counsel asked Defendants if anyone had specifically searched for responsive documents at Hinkle, Fisher Patterson, and the Defendants' insurance company.[7] Counsel responds only saying she is "not sure what you are referring to when asking about searches conducted" at the law firms and insurance company.[8] Plaintiff's counsel alleges during an extended telephone conference with defense counsel that counsel asserted Defendants had no obligation to "ensure that searches for responsive documents are conducted at the law firms that represented the City in this case or at the insurance company."[9]

Defendants neither dispute that the law firms and insurer are under its control, nor do they address whether searches were run at the firms and insurance company for any responsive documents. Defendants, instead allege there is no evidence Defendants are withholding responsive documents and citing *Taylor v. LM Insurance Corp.*[10] without such evidence, the court "cannot compel the production of documents that have not been uncovered after a reasonable search." But Defendants' argument evades the issue. The Court is unable to tell from the meet and conferral correspondence and the Defendants' briefing whether a reasonable search has been made. As counsel are aware, Rule 34(a)(1) requires the responding party to produce items in the "responding party's possession, custody or control." The concept of "control" "goes beyond actual physical possession and extends to documents the party has the legal right to obtain; in some circumstances, it can

---

[7] *Id.*
[8] *Id.* at 2.
[9] ECF 205 at 3-4.
[10] *Taylor v. LM Insurance Corp.,* No. 19-1030-JWB, 2019 WL 5696861 (D. Kan. Nov. 4, 2019).

even extend to documents the party has the practical ability to obtain."[11] Here, clearly Hinkle; Fisher Patterson; and OneBeacon, the City's insurance company are all within Defendants' control.[12] As such, the Court orders Defendants to forthwith conduct searches for any documents responsive to Reissued RFP's 4-6 at Hinkle, Fisher Patterson, and OneBeacon and to either produce or identify on a privilege log any responsive documents not previously produced, or identified no later than **December 31, 2021**.

### 2. Burden to Establish the Relevant Documents are Attorney-Client Privileged and/or Attorney Work Product

Plaintiff next argues Defendants have not established any of the Relevant Documents are privileged and asks the Court to conduct an *in camera* review to determine if the documents are privileged or alternatively to find they are not privileged and order they be produced. Defendants, in their privilege log, claim Item Nos. 1-6, 8-18, and 21 are protected by the attorney-client privilege and Item Nos. 7-9 and 11-12 are protected by the attorney work product doctrine.[13]

Plaintiff makes much of this Court's previous ruling that the Defendants' billing records were not privileged. But, this argument overlooks a key distinction between the Defendants' billing records and the communications now at issue. A distinction the Court raised in its previous Order, that being Hinkle and Fisher Patterson were not relaying legal advice to their clients through their monthly billing statements. The legal advice, if any,

---

[11] *Ad Astra Recovery Servs., Inc. v. Heath*, No. 18-1145-JWB, 2020 WL 374685, at *8 (D. Kan. Jan. 23, 2020) (citing 8B Charles Alan Wright, et al., *Federal Practice and Procedure* § 2177 (3d ed)). *See also Noaimi v. Zaid*, 283 F.R.D. 639, 641 (D. Kan. 2012).

[12] *Comeau v. Rupp,* 810 F.Supp. 1127, 1166 (D. Kan. 1992).

[13] ECF No. 205-2 at 2-7.

would have been relayed in the telephone conferences and emails identified in the billing statements.[14] Now Plaintiff seeks the production of those communications referenced in the billing records.

Defendants, as the parties asserting privilege, have the burden to establish applicability.[15] "The attorney-client privilege protects confidential communications between an attorney and client where legal advice is sought."[16] The purpose of the privilege is to encourage complete and candid communication between a client and his or her attorney.[17] The protection is afforded only to confidential communications seeking or rendering legal advice.[18]

It is well-settled Fed. R. Civ. P. 26(b)(5) requires a party to "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." "[I]f a party fails to make the required showing, by not producing a privilege log or by providing an inadequate one, the court may deem the privilege waived."[19]

The party asserting the privilege/work product protection "must also provide sufficient information to enable the court to determine whether *each element* of the asserted

---

[14] ECF No. 212 at 8.
[15] *Johnson v. Gmeinder*, 191 F.R.D. 638, 642 (D. Kan. 2000).
[16] *Burton v. R.J. Reynolds Tobacco Co.*, 170 F.R.D. 481, 484 (D. Kan. 1997).
[17] *Id.* (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)).
[18] *Burton at 484.*
[19] *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 232 F.R.D. 669, 671 (D. Kan. 2005).

9

objection is satisfied."[20] Courts in the District of Kansas have generally outlined the requirements for an adequate privilege log.[21] "At the very least, a privilege log should contain sufficient information so that the opposing party and the court can evaluate the claimed privilege. If a party fails to carry its burden of establishing that any documents withheld are subject to privilege, the court may conclude that the privilege is waived."[22]

The Court has reviewed Defendants privilege log together with their briefing that expounds on the information in their log. The Court **finds** the privilege log comports with the guidelines in this District, and it provides sufficient information for the Court to make a determination regarding privilege.

Plaintiff argues the descriptions of action in the log "implicate conduct by lawyers that does not facially appear to be in the realm of litigation counsel." The Court disagrees. The descriptions include "[c]ommunication from outside legal counsel to City

---

[20] *Marten v. Yellow Freight Sys. Inc.,* No. 96–2013–GTV, 1998 WL 13244, at *4 (D. Kan. Jan.6, 1998) (citing *Jones v. Boeing Co.,* 163 F.R.D. 15, 17 (D. Kan. 1995)) (emphasis added).

[21] *See In re Syngenta AG MIR 162 Corn Litig.*, No. 14-MD-2591-JWL, 2017 WL 1106257, at *4-5. ("1. A description of the document explaining whether the document is a memorandum, letter, e-mail, etc.; 2. The date upon which the document was prepared; 3. The date of the document (if different from # 2); 4. The identity of the person(s) who prepared the document; 5. The identity of the person(s) for whom the document was prepared, as well as the identities of those to whom the document and copies of the document were directed, 'including an evidentiary showing based on competent evidence supporting any assertion that the document was created under the supervision of an attorney;' 6. The purpose of preparing the document, including an evidentiary showing, based on competent evidence, 'supporting any assertion that the document was prepared in the course of adversarial litigation or in anticipation of a threat of adversarial litigation that was real and imminent;' a similar evidentiary showing that the subject of communications within the document relates to seeking or giving legal advice; and a showing, again based on competent evidence, 'that the documents do not contain or incorporate non-privileged underlying facts;' 7. The number of pages of the document; 8. The party's basis for withholding discovery of the document (i.e., the specific privilege or protection being asserted); and 9. Any other pertinent information necessary to establish the elements of each asserted privilege.")

[22] *Id.* (internal citations omitted).

Administrator…requesting information for Initial Rule 26 Disclosures," "[m]ultiple email communications relating communications from Plaintiff's counsel as to Amended Complaint and discussion as to response…," and "[c]ommunication from client regarding responsive documents to Plaintiff's discovery requests…."[23] Even those entries related to the City's investigation or discussion with KPERS appear to be confidential communications seeking or rendering legal advice. For example, "[c]ommunication from outside legal counsel during pending lawsuit to the City…regarding litigation issues and communication with KPERS counsel regarding information discovered in review of Plaintiff's payroll records as to Plaintiff's potential miss-reporting of salary for the purposes of advising the City regarding same," "[c]ommunication from City Administrator to outside counsel…requesting advice on documentation discovered in search for Plaintiff's payroll information. Responsive emails to set up conference call to discuss same;" and "[c]ommunications from City Administrator to outside legal counsel with questions as to claims asserted by Plaintiff related to income and claimed damages and outside litigation counsel's response and analysis of same."[24] The Court finds Item Nos. 1-6, 8-18, and 21 are protected by the attorney-client privilege.

A number of the Relevant Documents are alleged to be protected by both the attorney-client privilege and the work product doctrine.[25] Where the Court has already found those that Defendants claim as protected by both privileges are protected by the

---

[23] ECF No. 205-2, Item Nos. 10, 16, and 21.
[24] ECF No. 205-2, Item Nos. 1, 3, and 11.
[25] Item Nos. 8-9 and 11-12.

attorney-client privilege, it will only review the one Item No. 7, where Defendants claim is only protected as work product,[26] to determine if Defendants have properly established the doctrine.

Fed. R. Civ. P. 26(b)(3) provides "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial **by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)** (emphasis added)." To establish work-product protection, a party must show "(1) the materials sought to be protected are documents or tangible things; (2) they were prepared in anticipation of litigation or for trial; and (3) they were prepared by or for a party or a representative of that party."[27] Item No. 7 is a memorandum prepared by counsel, Terelle Mock, after litigation commenced. It purportedly contains "[s]preadsheets and analysis regarding Plaintiff's income from the City of Basehor from 2009-2018." Since the document was prepared after litigation commenced, there should be no doubt that litigation was anticipated. It was prepared by counsel and it analyzes Plaintiff's income which is related to his damages. The Court finds Item No. 7 is protected by the work product doctrine.

To overcome the work product protection, Plaintiff must show a substantial need for the document and "cannot, without undue hardship, obtain their substantial equivalent by other means."[28] Plaintiff makes no argument that he has a substantial need and cannot

---

[26] Item No. 7.
[27] *Kannaday v. Ball*, 292 F.R.D. 640, 648 (D. Kan. 2013); s*ee also S.E.C. v. McNaul*, 271 F.R.D. 661, 665 (D. Kan. 2010).
[28] Fed. R. Civ. P. 26(b)(3)(A).

find the substantial equivalent by other means. Where the Court believes the underlying information regarding Plaintiff's income from the City of Basehor from 2009-2018 has been produced, the Court **finds** he has no substantial need for Ms. Mock's analysis of the underlying information.

Having determined Defendants have met their burden to establish that the Relevant Documents are privileged, the Court will now look at whether the Relevant Documents are discoverable due to an exception to privilege or a waiver of privilege.

### 3.    Are the Relevant Documents Discoverable

#### a.    Crime-Fraud Exception

Plaintiff contends even if the Relevant Documents are privileged, they are discoverable because of the crime-fraud exception to the attorney-client privilege and attorney work product doctrine. Where Plaintiff's claims arise under federal law, questions of privilege that surface during the course of the adjudication of those claims are governed by federal common law.[29] The attorney-client privilege does not apply when a client consults an attorney to further a crime or fraud.[30] Before the crime-fraud exception applies and the privilege is lost, "there must be '*prima facie*' evidence that [the allegation of attorney participating in a crime or fraud] has some foundation in fact."[31] The same is true for claims of work product protection.[32] "The evidence must show that the client was

---

[29] Fed. R. Evid. 501; *United States v. Zolin,* 491 U.S. 554, 562 (1989).
[30] *In re Vargas,* 723 F.2d 1461, 1467 (10th Circ. 1983) (citing *Clark v. United States*, 289 U.S. 1, 15 (1933).
[31] *Id.*
[32] *Id. at 1467.*

engaged in or was planning the criminal or fraudulent conduct when it sought the assistance of counsel and that the assistance was obtained in furtherance of the conduct or was closely related to it."[33] The determination of whether a prima facie showing has been made is within the sound discretion of the court.[34]

A court may conduct an *in camera* review to determine the applicability of the crime-fraud exception where the requesting party shows a "factual basis adequate to support good faith belief by a reasonable person that in camera review of documents may reveal evidence to establish the crime-fraud exception applies."[35] Whether to conduct an *in camera* inspection lies within the sound discretion of the court.[36]

Plaintiff contends, without analysis, the City contacting the Leavenworth County Sheriff regarding his income reporting to KPF could implicate several state and federal crimes: 1) criminal interference with law enforcement, pursuant to K.S.A. 21-5904; 2) criminal victim intimidation, pursuant to K.S.A. 21-5909(a)(1); 3) criminal false communication, pursuant to K.S.A. 21-6103(a)(1)-(2); 4) tampering with a witness or victim, pursuant to 18 U.S.C. 1512(b)-(c); and 5) conspiracy to tamper with a witness or victim, pursuant to 18 U.S.C. 1512(k).

---

[33] *In re Grand Jury Subpoenas*, 144 F.3d 653, 660 (10th Cir. 1998) (collecting cases).
[34] *Motley v. Marathon Oil Co.,* 71 F.3d 1547, 1551 (10th Cir. 1995).
[35] *Burton v. R.J. Reynolds Tobacco Co.,* 167 F.R.D. 134, 141 (D. Kan. 1996).
[36] *Id.* at 144, fn 3.

Plaintiff points the Court to its factual statement in his previous motion to compel the production of billing records from Defendants' attorneys.[37] There, Plaintiff lays out evidence of the City's conduct, largely through Rivarola and to a much lesser extent, through the City Attorney and/or outside counsel, in communicating initially with KPERS and then the Leavenworth County Sheriff ("Sheriff") regarding irregularities in Plaintiff's income reporting. Plaintiff alleges others at the City, not he, made the decision regarding how his income should be reported, and KPF told him he should report his entire earnings, for both the police chief and city administrator jobs, to KPF. Generally, Plaintiff alleges the City withheld this evidence, which he felt was exculpatory, from the Sheriff. And in the current motion, Plaintiff argues the City never advised the Sheriff about the existence of an email where he told the City that KPF directed him to report his entire income to it. Yet, in the prior motion to compel he admitted the email had been provided to the Sheriff by Defendants, after the criminal investigation was started.[38]

KPERS' general counsel testified in her deposition the City had a fiduciary duty to discuss any discrepancy or suspected overpayment with KPERS, and the City had an obligation to report a miscalculation or an overpayment as a KPERS member.[39] And Sheriff's Officer Dedeke, who initially met with Rivarola and the City Attorney regarding looking into potential irregularities in Plaintiff's contributions to KPF, testified in his

---

[37] Plaintiff's Motion to Compel Production of Billing Records Responsive to Subpoena Served on Hinkle Law Firms and Fisher Patterson Sayler & Smith (ECF No. 180 at 3-9). The Court decided the motion there without having to consider the crime-fraud exception (ECF No. 212).
[38] ECF No. 180 at 7.
[39] ECF No. 207-9 at 2-3.

opinion it was important to the City to find out the truth.[40] The Court is not inclined to take the leap for purposes of this motion, that the City was asking the Sheriff to help them be in a better position with Plaintiff's lawsuit. The Sheriff's Officer did not believe the City's motivation in having Plaintiff investigated was to use the investigation as leverage in Plaintiff's lawsuit[41] and his interaction with the City regarding the investigation was limited to one call with the City Attorney and one meeting with Rivarola and the City Attorney.[42] It was his decision as to whether to move forward with the investigation.[43]

The Court has reviewed the parties' briefing, exhibits, and referenced materials. The Court in its discretion, does not find that Plaintiff has shown the factual basis such that a reasonable person would determine that an *in camera* review of documents might reveal evidence to establish the City engaged in or was planning criminal conduct which it sought the assistance of counsel and the assistance was obtained in furtherance of any such conduct. Where the Court does not find Plaintiff has made the lesser showing for an *in camera* review, it goes without saying the Court does not find Plaintiff showed "'*prima facie*' evidence that [the allegation of attorney participating in a crime or fraud] has some foundation in fact." The Court will not order an *in camera* review and does not find that the crime-fraud exception to privilege is applicable here.

---

[40] ECF No. 207-7 at 5.
[41] ECF No. 207-7 at 6.
[42] *Id.* at 8.
[43] *Id.* at 7.

### b.      Waiver

### i.      Putting subject matter at issue

In addition to his argument that the crime-fraud exception to privilege applies, Plaintiff raises multiple arguments that Defendants have waived privilege. As mentioned above, the Relevant Documents are 19 of the 21 documents listed on the City's privilege log. Plaintiff alleges Defendants implicitly waived any claim of privilege to the Relevant Document when they asserted as affirmative defenses they acted in good faith; their actions were neither willful nor retaliatory; and the City, acting through its employees had a fiduciary and ethical duty to refer the matter for investigation. Plaintiff alleges Defendants, by asserting these affirmative defenses, put the subject matter of the privileged communications in the Relevant Documents, the legal advice they sought and received, at issue.

Plaintiff characterizes his EPA suit as a civil rights action where he makes one claim of First Amendment retaliation pursuant to 42 U.S.C. §§ 1983(3) and 1988. Based on *Hearn,*[44] he argues Defendants' assertion they acted in good faith protecting them from liability under the doctrine of qualified immunity implicitly waives Defendants assertion of privilege. The test set out in *Hearn* has been applied to federal question actions brought in this District.[45] The Court agrees the *Hearn* standard is appropriate here.

---

[44] *Hearn v. Rhay*, 68 F.R.D. 574 (E.D. Wash. 1975).
[45] *Williams v. Spirit/United Mgmt. Co.,* 464 F.Supp.2d 1100 (D. Kan. 2006); *New Jersey v. Sprint Corp.*, 258 F.R.D. 421 (D. Kan. 2009).

Under the *Hearn* standard, a court must find each of three conditions present to find a waiver: 1) the assertion of the privilege was the result of some affirmative act, such as filing suit, by the asserting party; 2) through this affirmative act, the asserting party put the protected information at issue making it relevant to the case; and 3) application of the privilege would deny the opposing party access to information vital to its defense.[46] The privilege is implicitly waived when the party, through its own actions, "places information protected by it at issue through some affirmative act for his own benefit, and to allow the privilege to protect against such disclosure of such information would [be] manifestly unfair to the opposing party."[47]

In *Hearn*, the defendants asserted an immunity defense to plaintiff's claim under the Civil Rights Act. The *Hearn* court found because consultation with counsel was essential to the good faith defense, the attorney-client privilege was waived where a plaintiff showed "substantial merit to his claim" and asserted an immunity claim.[48] Courts in this District have held that merely asserting a good faith defense does not waive privilege.[49] The crucial difference between *Hearn* and *Williams* is in *Hearn*, the attorney-client communications were integral to the Civil Right Act claim, while in *Williams* the privileged communications were merely relevant to the claim.[50]

---

[46] *Williams* at 1104. See also *Heglet v. City of Hays*, No. 13-2228-KHV, 2014 WL 1094458, at *3 (D. Kan. March 19, 2014).
[47] *Williams* at 1105 (citing *Hearn* 68 F.R.D. at 581).
[48] *Heglet* at *3 (citing *Hearn* at 574).
[49] *Williams* at 1105 (court rejected argument that reliance on good faith compliance with internal policies in an ADEA case waived privilege, even where the policies required a legal review).
[50] *Heglet* at *4.

In *Hearn*, the critical issue which made the attorney-client communications integral to the claim was that at the time "the ultimate inquiry" of whether the good faith or qualified immunity defense applied was whether the state official had acted "reasonably, in light of all circumstances, and without malice."[51] The *Hearn* court cited *Wood v. Strickland*,[52] and found "the defense of good faith has both subjective and objective requirements, for it is not available if the defendant state official acted with **actual malice** or with subjective good faith  but 'with such disregard of the [plaintiff's] clearly established constitutional rights that his action cannot reasonably be characterized as being in good faith."[53] It was the need for a plaintiff to show subjective malice that made the attorney-client communications integral to the claim. The *Hearn* court noted "legal advice received by defendants is highly probative of whether they acted with malice."[54]

However, since *Hearn* was decided, the Supreme Court found in *Harlow v. Fitzgerald*[55] that the "previously recognized 'subjective' aspect of qualified or 'good faith' immunity" was problematic. Thus, the qualified immunity standard was changed and now governmental officials performing discretionary functions "generally are shielded from liability for civil damages insofar as their conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known."[56] With the subjective portion of the good faith or qualified defense no longer applicable, the Court

---

[51] *Hearn* at 578.
[52] *Wood v. Strickland*, 420 U.S. 308, 322 (1975).
[53] *Hearn* at 578.
[54] *Hearn* at 583, fn 5.
[55] *Harlow v. Fitzgerald*, 457 U.S. 800 (1982).
[56] *Id.* See also *Lewis v. Tripp,* 604 F.3d 1221, 1225 (10th Cir. 2010).

finds the holding in *Williams*, that merely asserting a good faith defense does not waive privilege, persuasive.

Plaintiff also argues Defendants affirmative defenses that their actions were neither willful nor retaliatory, and the City having a fiduciary duty and ethical duty to refer the matter for investigation should waive privilege. The Plaintiff argues these defenses were based upon the advice of counsel. As discussed above, it was KPERS' general counsel who testified in her deposition the City had a fiduciary duty to discuss any discrepancy or suspected overpayment with KPERS, and the City had an obligation to report a miscalculation or an overpayment as a KPERS member.[57] The Court **finds** the fiduciary duty affirmative defense is not based upon the advice of counsel. Further, Defendants have not asserted advice of counsel as an affirmative defense. However, should the Defendants "affirmatively and voluntarily" insert the reliance on the advice of counsel, the Court will revisit the issue of whether privilege was waived.[58]

`                    **ii**   *Faragher-Ellreth* **affirmative defense**

Lastly, Plaintiff argues that because the City has pled the "functional equivalent" of the *Faragher-Ellerth* affirmative defense they cannot hide behind privilege to prevent the discovery of documents put in issue by those affirmative defenses. The *Faragher-Ellerth* defense is an affirmative defense available to an employer where claims of vicarious liability for actionable sexual harassment by a supervisor are made under Title VII.[59] "The

---

[57] ECF No. 207-9 at 2-3.
[58] *New Jersey v. Spirit Corp.* 258 F.R.D. 421, 433 (2009).
[59] *Helm v. Kansas,* 656 F.3d 1277, 1285 (10th Cir. 2011).

defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."[60]

Plaintiff cites *Doe v. USD 237*[61] in support of its argument that the assertion privilege would deny Plaintiff access to the information vital to his ability to counter Defendants' *Faragher-Ellerth* defense. But in *Doe*, Judge Lungstrum found the *Hearn* test was applicable.

> While acknowledging that courts in this district have consistently applied the *Hearn* test, defendant suggests that the Court should apply a stricter test for at-issue waiver. This Court has previously stated its belief, however, that the Tenth Circuit would adopt *Hearn*'s intermediate approach, *see Williams*, 464 F. Supp. 2d at 1104, and since that time the Tenth Circuit has applied the *Hearn* test in applying Oklahoma privilege law, *see Seneca Ins. Co. v. Western Claims, Inc.*, 774 F.3d 1272, 1276 (10th Cir. 2014). Defendant has not analyzed the potential alternative tests or explained why the Tenth Circuit would likely favor such a test over the *Hearn* test. Accordingly, the Court concludes that the *Hearn* test is appropriately applied in this case.[62]

This case is not a Title VII sexual harassment claim and Defendants have pled no *Faragher-Ellerth* affirmative defense. Plaintiff has pointed to no Tenth Circuit or District cases that have expanded this waiver beyond the *Faragher-Ellerth* defense. The Court **finds** that *Faragher-Ellerth* defense is not applicable to this case.

---

[60] *Id. (*citing *Faragher v. City of Bota Raton*, 524 U.S. 775, 807 (1998) and *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 765 (1998)).
[61] *Doe v. USD 237*, No. 16-2801, 2019 WL 2612941, at *5 (D. Kan. June 26, 2019).
[62] *Id.*

III.    **Conclusion**

Based on the foregoing, the Court **finds** the Relevant Documents: 1) are protected by the attorney-client privilege and/or work product doctrine; 2) are not discoverable under the crime-fraud exception; and 3) privilege has not been waived by putting the subject matter at issue. However, the Court orders Defendants to conduct searches for any documents responsive to Reissued RFP 4-6 at Hinkle, Fisher Patterson, and OneBeacon and to either produce or log any responsive documents not previously produced or logged no later than December 31, 2021.

**THEREFORE**, Plaintiff's Motion to Compel Discovery **(ECF No. 205)** is **GRANTED in part and DENIED in part** for the reasons set forth above.

**IT IS SO ORDERED**.

Dated December 15, 2021.

s/ Gwynne E. Birzer
GWYNNE E. BIRZER
U.S. Magistrate Judge