## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| LLOYD MARTLEY, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) |
| | ) Case No. 2:19-cv-02138-DDC-GEB |
| | ) |
| CITY OF BASEHOR, KANSAS, | ) |
| DAVID BREUER, and | ) |
| LESLEE RIVAROLA, | ) |
| | ) |
| **Defendants.** | ) |

### PLAINTIFF'S OBJECTION TO, AND MOTION FOR REVIEW OF,
### MAGISTRATE BIRZER'S 12/15/2021 MEMORANDUM AND ORDER
### (DOC. 236)

COME NOW Plaintiff, by and through his attorneys and, pursuant to FED. R. CIV. P.72(a) and Local Rule 72.1.4(a), and files his Objections to, and Motion for Review of Magistrate Birzer's December 15, 2021 Memorandum and Order (hereinafter "the Order") (Doc. 236).

## I.     INTRODUCTION

On November 20, 2020, Plaintiff served his Third Request for Production of Documents to Defendants. On December 18, 2020, Defendants served their responses to Plaintiff's Request for Production. Pursuant to a Court order, on February 11, 2021, Plaintiff narrowed the scope of Requests for Production 4-6 ("Reissued RFPs 4-6). On March 10, 2021, the City served its response and objections to Reissued RFP's 4-6. Subsequently, Plaintiff filed a Motion Compel Discovery (Doc. 205).

Plaintiff asked the trial court to: 1) compel the City and its lawyers to search for and produce responsive documents to Reissued RFP 4-6; 2) submit Items 1-18 and 21 ("Relevant Documents") of the City's privilege log to the Court for an *in camera* review to assess whether the

City has properly withheld the documents as privileged and/or work product; and 3) order the production of the Relevant Documents.

On December 15, 2021, the trial court granted Plaintiff's Motion to Compel as to the first category (compelling the City and its lawyers to search for and produce responsive documents to Reissued RFP 4-6) (Doc. 236). The trial court denied Plaintiff's Motion to Compel as to categories two (submitting Items 1-18 and 21 ("Relevant Documents") of the City's privilege log to the Court for an *in camera* review to assess whether the City has properly withheld the documents as privileged and/or work product; and three (ordering the production of the Relevant Documents."

Plaintiff objects to, and seeks review of, Magistrate Birzer's December 15, 2021 Memorandum and Order (Doc. 236) as it pertains to the last two categories:

2)      the trial court's denial of Plaintiff's Motion to Compel as requiring Defendants to submit Items 1-18 and 21 ("Relevant Documents") of the City's privilege log to the Court for an *in camera* review to assess whether the City has properly withheld the documents as privileged and/or work product; and

3)      ordering the production of the Relevant Documents.


## II.     STANDARD OF REVIEW

Plaintiff seeks review pursuant to FED. R. CIV. P. 72(a), which provides, in pertinent part: "A party may serve and file objections to the order within 14 days after being served with" the Magistrate's Order. "The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Rule 72(a). *See also* 28 U.S.C. § 636(b)(1).

In reexamining a non-dispositive issue decided by a magistrate judge, "the district court [is] required to 'defer to the magistrate judge's ruling unless it [was] clearly erroneous or contrary to law.'" *Allen v. Sybase, Inc.,* 468 F.3d 642, 658 (10th Cir. 2006) (quoting *Hutchinson v. Pfeil,* 105 F.3d 562, 566 (10th Cir. 1997)). Under the clearly erroneous standard, "the reviewing court [must] affirm unless it on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* (internal quotations omitted).

## III.   ARGUMENT

The trial court denied Plaintiff's Motion to Compel asking for an Order requiring Defendants to submit Items 1-18 and 21 ("Relevant Documents") of the City's privilege log to the Court for an *in camera* review to assess whether the City has properly withheld the documents as privileged and/or work product. The trial court also denied Plaintiff's Motion to Compel asking for an Order requiring Defendants to produce the Relevant Documents.

Plaintiff feared the District Court's blunt assessment in Doc. 229 -- essentially that Plaintiff was wasting his time pursuing investigation materials that Defendants claim are privileged[1] -- would adversely influence Plaintiff's ability to have his motion to compel (Doc. 205) fairly and objectively considered and ruled on by the Magistrate Judge. Unfortunately, Doc. 236 appears to confirm what Plaintiff feared. First, the Magistrate focuses on several of the privilege log entries that, on their face -- and absent any connection to the investigations lodged against Plaintiff -- appear to be privileged communications. In reciting the entries, the Magistrate does not acknowledge that Plaintiff only sought those items *to the extent the documents they described included information about the income reporting issue and/or the investigations against*

---

[1]   *See* Doc. 229 at pp. 6-7, footnotes 3 and 4.

*Plaintiff. See* Doc. 205 at p. 1, footnote 1. Without this acknowledgement and any critical analysis about whether the documents being withheld detail what the attorneys were doing as part of the investigations, a finding of privilege was inevitable. Second, the Magistrate erroneously assumes that the activities by the attorneys within the investigations were typical, expected, non-retaliatory, and completely above-board. Beyond the lawyer-prepared privilege log entries, Defendants have never produced any evidence to the Court explaining why attorneys -- after Plaintiff filed his EPA claim -- became actively involved in the KPERS and criminal investigations against him. In fact, the only explanation (but, again, with no evidentiary support) cited by Defendants appears in Doc. 189 at pp. 5-6:

> Plaintiff points to the rather unsurprising fact that litigation counsel, Terelle Mock, was "involved" in the income reporting matter only *after* the lawsuit was filed. Doc. 180, pp. 15-16. <u>The fact is unsurprising because litigation counsel should be expected to investigate a claim or defense after a lawsuit is filed – namely the amount of Plaintiff's compensation and benefits during his employment with the City.</u>[2]

(emphasis added). With Plaintiff having to fight tooth and nail to get basic discovery throughout the proceedings in this case, and serious questions having been raised and challenged about the attorneys' activities within the investigations, the Magistrate's assumptions clearly are erroneous.[3]

---

[2] Similarly, Defendants (nor Ms. Stewart) have explained why Ms. Stewart was in communication with the criminal investigator about Plaintiff. The Magistrate has simply and improperly assumed her discussions were about the EPA claim and were not retaliatory. But Defendants continue to refute any connection between the EPA Claim and the criminal investigation so this begs the question why was Ms. Stewart reaching out to the criminal investigator?

[3] *See, e.g., Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 267 (D. Md. 2008) ("If . . . after this has been done, the requesting party challenges the sufficiency of the assertion of privilege/protection, the asserting party may no longer rest on the privilege log, but bears the burden of establishing an evidentiary basis—by affidavit, deposition transcript, or other evidence—for each element of each privilege/protection claimed for each document or category

Third, in assessing whether Plaintiff set forth a factual basis to support a good faith belief that in camera review of the withheld documents *may* reveal evidence that the attorneys were assisting Defendants in using the investigations of Plaintiff as leverage and/or retaliation against the EPA Claim, and/or assisting Defendants in violating K.S.A. 21-5904 and/or K.S.A. 21-5908 (by providing false and misleading information to law enforcement), the Magistrate ignored Plaintiff's evidence[4] and misstated other evidence of record in order to reach the conclusion that the threshold for in camera review had not been met. (Doc. 236 at pp. 15-16). Specifically, the Magistrate relies on portions of Defendants' briefing wherein Defendants cited to Sheriff Dedeke's deposition testimony indicating *he* was not under the impression that Defendants were using the criminal investigation as retaliation against Plaintiff. But this completely ignores Plaintiff's briefing that points out that Sheriff Dedeke *did not conduct* the investigation and his investigator that did clearly believed the investigation was being used as leverage, and the attorneys were involved in having discussions with him that caused him concern about retaliation. *See* Doc. 216 at p. 9. Moreover, the Magistrate had an abundance of evidence before her clearly setting forth Sheriff Dedeke's minimal involvement in the investigation, and serious concerns raised by

---

of document. A failure to do so warrants a ruling that the documents must be produced because of the failure of the asserting party to meet its burden. If it makes this showing, and the requesting party still contests the assertion of privilege/protection, then the dispute is ready to submit to the court, which, after looking at the evidentiary support offered by the asserting party, can either rule on the merits of the claim or order that the disputed documents be produced for *in camera* inspection."); *Blackmon v. Bracken Constr. Co., Inc.*, No. CV 18-142-BAJ-SDJ, 2020 WL 6731113, at *17 (M.D. La. Nov. 16, 2020), *appeal denied,* No. CV 18-00142-BAJ-SDJ, 2021 WL 3824819 (M.D. La. Aug. 26, 2021) ("But even more important, after those assertions of privilege were challenged by Plaintiffs, the Insurer Defendants did nothing more to substantiate them. They did not produce any supporting evidence or affidavits from the attorneys or other individuals listed on the log.").

[4]  The facts referenced in Plaintiff's motion (Doc. 205 at p. 5, referencing Doc. 180 at pp. 3-9) clearly meets the threshold for in camera review but the Magistrate simply gives them no credence.

Investigator Patzwald during his deposition about Defendants (and their attorneys) using the criminal investigation as leverage in Plaintiff's EPA Case. *See* Doc. 193 at pp. 6-8.

Fourth, on at least two occasions in her ruling, the Magistrate recites Defendants' briefing regarding testimony by KPERS general counsel about the City having a fiduciary duty to report overpayments. Yet, there is ***nothing*** in the record supporting that KPERS first raised the reporting issue with the City, and then the City decided it should have the matter investigated. Instead, it is undisputed it was the City who exclusively first raised the income reporting issue, first with KPERS, then with the Sheriff, and both of these actions by the Defendants and their attorneys were done after Plaintiff filed his EPA Claim. Citing to testimony by KPERS' counsel, given long after the City initiated the investigations, does not in any way exonerate Defendants from having initially and exclusively initiated the investigations as a way to retaliate against Plaintiff.

Fifth, in connection with disposing of Plaintiff's "at-issue" waiver, the Magistrate recites a legal argument about the *Harlow v. Fitzgerald* case that was not raised nor briefed by Defendants.

The above erroneous rulings by the Magistrate have resulted in a clearly erroneous and unjust decision as to Plaintiff's motion to compel.

> ### A.   Motion to Compel regarding an in camera review of the "Relevant Documents"

The trial court determined that Items 1-6, 8-18, and 21 are protected by the attorney-client privilege and Item 7 is protected by the work product doctrine (Doc. 236, pp. 11-13).[5] Although Plaintiff contends none of the documents are privilege or protected, even in an analysis that starts with the presumption that the documents are privileged, the documents are still discoverable under

---

[5] The trial court had previously held that the attorney-client privilege protects Items 8-9 and 11-12.

any one of three theories – the crime-fraud exception, waiver, and because Defendants pled the functional equivalent of a Faragher-Ellerth defense.

### 1.      __The crime-fraud exception.__

The crime-fraud exception renders attorney-client privilege unavailable "where the client consults an attorney to further a crime or fraud." *Motley v. Marathon Oil Co.,* 71 F.3d 1547, 1551 (10th Cir. 1995).

> There is a privilege protecting communications between attorney and client. The privilege takes flight if the relation is abused. A client who consults an attorney for advice that will serve him in the commission of a fraud will have no help from the law. He must let the truth be told.

*Clark v. United States,* 289 U.S. 1, 15 (1933).

The crime-fraud exception also applies to documents claimed to be protected from discovery as work product. *See In re Vargas*, 723 F.2d 1461, 1467 (10th Cir. 1983) (court's analysis of crime-fraud exception applied to "both the attorney-client and work-product privileges"). The purpose of the crime-fraud exception is to assure that the seal of secrecy does not extend to communications made for the purpose of getting advice for the commission of a fraud or crime. *United States v. Zolin*, 491 U.S. 554, 563 (1989); *Burton v. R. J. Reynolds Tobacco Co.,* 167 F.R.D. 134, 140 (D. Kan. 1996).

Magistrate Birzer found that Detective Patzwald (the "Sheriff's Officer" referred to in the Memorandum and Order) "did not believe the City's motivation in having Plaintiff investigation was to use the investigation as leverage in plaintiff's lawsuit" (Doc. 236, p. 16). That finding is contrary to the testimony. During his deposition, Detective Patzwald confirmed he had concerns about the City using the criminal investigation as leverage in the civil lawsuit brought by Plaintiff. When asked if the thought crossed his mind that the City was pushing the criminal investigation

because City officials thought Plaintiff would drop his case, settle, or bail out, Detective Patzwald

testified: "Absolutely it did." He testified he had that conversation with his direct supervisor at the

Sheriff's Department, who is second in command at the Department, because  "we just need to

make sure we're not like using this investigation to get back at [Plaintiff] for filing that lawsuit".

**From his dealings with Rivarola and Marcano, Patzwald inferred that  --  in the event**

**Plaintiff was charged with a crime -- "that would benefit [Defendants'] case or would give**

**them some, I don't know, advantage in whatever the legal proceedings were.**" *See generally*

Doc. 193 at pp. 6-8.

      While it was, as Magistrate Birzer noted, Sheriff Dedeke's decision to move forward with

an investigation, he did so only after receiving erroneous and untruthful information from Rivarola

and the City Attorney – neither of whom referenced or provided Sheriff Dedeke with the clearly

exculpatory email from March of 2014. In Kansas, it is a crime to interfere with law enforcement.

Pursuant to K.S.A. § 21-5904, **c**riminal interference includes:

> (1) Falsely reporting to a law enforcement officer, law enforcement
>     agency or state investigative agency:
>
> (A) That a particular person has committed a crime, knowing
>     that such information is false and intending that the
>     officer or agency shall act in reliance upon such
>     information
>                              * * *
> (C) any information, knowing that such information is false
>     and intending to influence, impede or obstruct such
>     officer's or agency's duty.

      It is also a crime to intimidate a witness or victim. A "victim" includes any person who has

suffered a "civil injury or loss." K.S.A. § 21-5908(b)(2).

> (a) Intimidation of a witness or victim is preventing or dissuading,
>     or attempting to prevent or dissuade, with an intent to vex,
>     annoy, harm or injure in any way another person or an intent to

- 8 -

> thwart or interfere in any manner with the orderly administration
> of justice:
>
> (1) Any witness or victim from attending or giving testimony
>     at any civil or criminal trial, proceeding or inquiry
>     authorized by law

K.S.A. § 21-5909(a)(1).

Either or both of these crimes could apply to Defendants' conduct. Rivarola's communication of information about Martley which knew to be false (by withholding exculpatory evidence) to the Sheriff's Department in an effort to have Plaintiff investigated for Defendant's use as leverage in Plaintiff's civil case violates K.S.A. § 21-5909(a)(1) and/or K.S.A. § 21-5904. Rivarola did not do this alone. After she convinced the Sheriff's Department to open a criminal investigation, Rivarola referred to the criminal investigation as "our case" (Doc. 150-8). In an email to Detective Patzwald, Rivarola stated that the City's "special counsel," Michelle Stewart, would be reaching out to him to discuss "our case" (Doc. 150-8; Rivarola Depo., p. 149). In other words, the case -- the criminal investigation -- was that of Rivarola's, Stewart's, and the City. That criminal investigation was part of a concerted effort to retaliate against Martley for filing his Equal Pay Act claim and to interfere with his civil rights by coercing the Sheriff's Department to conduct a manufactured criminal investigation.

Mock was also involved in this illicit conduct. By comparing the time entries and billing records Mock/FPSS against the privilege log provided by Defendants, we know that Mock's 05/02/2019 bill includes time spent communicating with "KPERS counsel regarding information discovered in review of Plaintiff's payroll records as to Plaintiff's potential miss-reporting [sic] of salary for the purpose of advising the City regarding the same" (Compare Exhibit **, p. 1 with Exhibit **, pp. 1-2). Defendants have argued the KPERS/KPF issue is separate from the Equal Pay Act claim. If they were separate issues, why was Mock/FPSS -- who was hired by the

insurance company to defend against the Equal Pay Act claim (and not hired to participate or pursue the KPERS/KPF issue) -- communicating with KPERS counsel and "advising the City regarding the same." The reason is because Defendants' defense of the Equal Pay Act claim is inextricably intertwined with their pursuit of the KPERS/KPF issue against Martley for the purpose of retaliation – that misconduct fits squarely within the crime-fraud exception.

The crime-fraud exception precludes Defendants' reliance on privilege to hide documents that tend to show the commission of those crimes. *Clark,* 289 U.S. at 15; *Zolin*, 491 U.S. at 563; *Motley,* 71 F.3d at 1551; *In re Vargas*, 723 F.2d at 1467; *Burton,* 167 F.R.D. at 140. Rivarola reported to the Sheriff's Department information she knew to be false and, in doing so, intended to influence a criminal investigation into Plaintiff. She tried to intimidate Martley by spurring a criminal investigation in retaliation for Plaintiff bringing a civil case against the City which violates K.S.A. § 21-5909(a)(1) (it is a crime to *attempt* to intimidate or otherwise attempt to dissuade a witness or victim from giving testimony at a civil trial). By pushing for the investigation of Plaintiff's reporting of income *because* Plaintiff brought an equal pay act claim against Defendants, Defendants attempted to dissuade Plaintiff from giving testimony necessary to his civil trial. It is Defendants' retaliation that violates, or may violate, K.S.A. § 21-5909(a)(1).

Accordingly, Martley respectfully asks this Court to reverse Magistrate Birzer's finding that the crime-fraud exception does not apply, and ordering Defendant to produce the documents to Plaintiff or, at a minimum, to Magistrate Birzer for an *in camera* review.

## 2. <u>Waiver</u>

The trial court agreed with Plaintiff that the standard for determining waiver as set forth in *Hearns v. Rhay*, 68 F.R.D. 574 (E.D. Wash. 1975) (Doc. 236, p. 17). Under the *Hearn* standard, a court must find each of three conditions present to find a waiver: 1) the assertion of the privilege

was the result of some affirmative act, such as filing suit, by the asserting party; 2) through this affirmative act, the asserting party put the protected information at issue making it relevant to the case; and 3) application of the privilege would deny the opposing party access to information vital to its defense (Doc. 236, p. 21).

*Hearn* is particularly instructive because the plaintiff in *Hearn* brought a civil rights' suit pursuant to 42 U.S.C. § 1983. Plaintiff's claims in this case are based, in part on Defendants' violation of his civil rights and are brought pursuant to 42 U.S.C. § 1983. *Compare Hearn* 68 F.R.D. at 581. The plaintiff in *Hearn* asserted an affirmative defense that they "acted in good faith" and their decisions "were discretionary acts of public officials for which they are immune from suit for damages." *Id.* at 578. Here, Defendants assert a nearly identical defense:

> Any and all actions or acts committed by them or on their behalf were discretionary in nature and taken in good faith and that defendants are protected from liability by the doctrines of qualified immunity, official immunity, absolute immunity and/or judicial immunity.

(Defendants' Answer to Plaintiff's Third Amended Complaint, ¶ 41).

Magistrate Birzer held that *Hearn's* application was limited because "Courts in this District have held that merely asserting a good faith defense does not waive privilege" (Doc. 236, p. 18). Relying on *Harlow v. Fitzgerald*, Magistrate Birzer held a "crucial difference between *Hearn* and *Williams* is in *Hearn*, the attorney-client communications were integral to the Civil Rights Claim, while in *Williams* the privileged communications were merely relevant to the claim (Doc. 236, p. 18). Here, the attorney-client communications are integral to his claim or refuting a defense to that claim..

In *Harlow v. Fitzgerald* (cited by the trial court), the Supreme Court held:

> [G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as

their conduct does not violate **clearly established statutory** or constitutional **rights** of which a reasonable person would have known.

\* \* \*

[o]n summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to "know" that the law forbade conduct not previously identified as unlawful. Until this threshold immunity question is resolved, discovery should not be allowed. If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct. Nevertheless, if the official pleading the defense claims extraordinary circumstances and can prove that he neither knew nor should have known of the relevant legal standard, the defense should be sustained. But again, the defense would turn primarily on objective factors..

457 U.S. at 818-819.

*Harlow* did not change the law which holds a defendant waives privilege upon the assertion of an immunity affirmative defense. *Harlow* only holds that discovery is permissible after the plaintiff shows the defendant violated a statutory or constitutional law which was "clearly established" at the time of the violation. Here, the law is clear --  Plaintiff has a statutory right to be free from retaliation for instituting a proceeding related to the Equal Pay Act. That law was in effect when Defendants retaliated against Plaintiff.

Under any test (*Hearn*, *Williams*, or *Harlow*), Defendants' claim of privilege fails because Defendants have waived that defense when they pled good faith and immunity.

3.      **Faragher-Ellerth defense.**

For reasons similar to why Defendants have waived their claims of privilege by putting the subject matter at issue, Defendants have waived their claim of privilege as to Items 1-5, 8, 9, 12-15, and 18-20 by pleading what is tantamount to a *Faragher-Ellerth* affirmative defense.

The trial court noted that, in this district, the *Faragher-Ellerth* defense applies the "Hearn test" (Doc. 236, p. 21 (quoting *Doe v. USD 237,* No. 16-2801, 5 (D. Kan. June 26, 2019)). As discussed *supra*, applying the *Hearn* tests shows Defendants waived their claims of privilege.

The trial court also limited the *Faragher-Ellerth* waiver to only Title VII sexual harassment claims (Doc. 236, p. 21). As Plaintiff noted in briefing to the trial court, the defense Defendants raised herein are the functional equivalent of the Faragher Ellerth defense. The particular statute Defendants violated does not change the fundamental purpose of a *Faragher-Ellerth* waiver.

In *Barbini v. First Niagara Bank, N.A.*, the defendant raised affirmative defenses that its sexual harassment investigation was handled according to protocol and had nothing to do with it subsequently firing the plaintiffs for violating policy. 331 F.R.D. 454, 462 (S.D.N.Y. 2019). This defense was not identical to the *Faragher-Ellerth* defense. Nevertheless, the Court held the affirmative defense was the "functional equivalent" of the *Faragher-Ellerth* defense because, in making the defense, the defendant "is unilaterally relying on the confidential and privileged sexual harassment investigation, which it suggests was handled appropriately. Such one-sided reliance creates the type of unfairness to opposing counsel that waives the communication's privilege." *Id.* (citing *In re County of Erie*, 546 F.3d 222 (2nd Cir. 2008) (Explaining that underlying the case-by-case determination that a privilege should be forfeited is the notion of fundamental unfairness—that is "the type of unfairness to the adversary that results in litigation circumstances when a party

uses an assertion of fact to influence the decisionmaker while denying its adversary access to privileged material potentially capable of rebutting the assertion.").

Defendants herein make the following functionally equivalent defenses:

41.    Any and all actions or acts committed by them or on their behalf were discretionary in nature and taken in good faith and that defendants are protected from liability by the doctrines of qualified immunity, official immunity, absolute immunity and/or judicial immunity.

43.    Any actions taken by the City was not willful.

48.    Plaintiff's improper reporting of his KP&F-eligible income to KP&F required a criminal investigation. The City, acting through its employee, had a fiduciary and ethical duty to refer the matter for an investigation.

(Def. Answer to Plaintiff's Third Amended Complaint, p. **, ¶ **).

Defendants rely on their confidential and privileged investigation which they claim were taken in good faith and required Defendants to refer the case for a criminal investigation. "Such one-sided reliance creates the type of unfairness to opposing counsel that waives the communication's privilege." *Barbini,* 331 F.R.D. at 462. Where, as here, Defendants have placed the information at issue through their affirmative acts (both the attorneys' investigation and the affirmative defense necessarily relying on the attorneys' investigation) "to allow the privilege to protect against disclosure of such information would [be] manifestly unfair to the opposing party." *Williams v. Sprint/United Mgmt. Co.*, 464 F. Supp. 2d 1100, 1104-1105 (D. Kan. 2006) (quoting *Hearn*, 68 F.R.D. at 581).

Although Defendants' affirmative defenses are not identical to the *Faragher-Ellerth* affirmative defense, the effect is the same. In *Doe v. USD 237, Smith Center School Dist.,* a defendant sought to use an investigation to support its defense while invoking privileges to deny a plaintiff access to the investigation. Case No. 16-2801-JWL, *9-10 (D. Kan. June 26, 2019),

"[T]his is precisely the sword and shield approach that the courts have rejected." *Id.* at 14. "To allow the privilege to protect against disclosure of the Report under these circumstances would be manifestly unfair to the opposing parties." *Id.*

Courts have uniformly held that the invocation of the *Faragher-Ellerth* defense waives the attorney client and work product privilege as to the results or reports of an internal investigation, as well as for all documents, witness interviews, notes and memoranda created as part of and in furtherance of the investigation.[6] It would be manifestly unfair for Defendants to rely on the criminal investigation as a defense to Plaintiff's claims (an investigation spearheaded by Defendants' attorneys) while at the same time allowing Defendants to hide behind privileges to prevent Plaintiff from testing the affirmative defenses. Therefore, Defendants should be required

---

[6] *Angelone v. Xerox Corp.,* 09-CV-6019, 2011 WL 4473534 at *3 (W.D.N.Y. Sept. 26, 2011) ("[A]ny document or communication considered, prepared, reviewed, or relied on by [the defendant] in creating or issuing the [investigatory report] must be disclosed to [the] plaintiff."). *Brownell v. Roadway Package Sys., Inc.,* 185 F.R.D. 19, 25 (N.D.N.Y.1999) (requiring defendant to produce statements collected as part of internal investigation, including a statement collected after plaintiff was fired); *Koumoulis v. Indep. Fin. Mktg. Grp., Inc.,* 295 F.R.D. 28, 40-41 (E.D.N.Y. 2013) aff'd, 10-CV-0887 PKC VMS, 2014 WL 223173 (E.D.N.Y. Jan. 21, 2014); *Musa–Muaremi v. Florists' Transworld Delivery, Inc.,* 270 F.R.D. 312, 317–19 (N.D. Ill. 2010) ("By asserting the Faragher–Ellerth defense, the employer "waives any attorney-client privilege that might apply to a defendant's investigation documents or communications."); *E.E.O.C. v. Outback Steakhouse of Fla., Inc.,* 251 F.R.D. 603, 611–12 (D .Colo. 2008) (where defendants pled Faragher–Ellerth affirmative defense, they waived any applicable attorney-client privilege and work product doctrine regarding investigations into employees' complaints); J*ones v. Rabanco, Ltd.,* No. C03–3195P, 2006 WL 2401270, at *4 (W.D. Wash. Aug.18, 2006) (assertion of Faragher-Ellerth defense waived any applicable attorney-client privilege and "cause[d] any investigation and remedial efforts into the discrimination alleged in this case, in which Defendants engaged and in which their attorneys were involved, to become discoverable, despite any attorney-client privilege that may have normally attached to such communications"); *Walker v. County. of Contra Costa,* 227 F.R.D. 529, 535 (N.D. Cal. 2005) (defendants waived any attorney-client privilege and work product protection for investigatory report prepared by attorney by asserting as a defense the adequacy of their pre-litigation investigation of plaintiff's discrimination claims); *McGrath v. Nassau County. Health Care Corp.,* 204 F.R.D. 240, 245–46 (E.D.N.Y. 2001) (defendant's invocation of the Faragher–Ellerth defense waived the work-product privilege).

to produce the documents identified in Items 1-5, 8, 9, 12-15, and 18-20 or, at a minimum, submit them to the Court for an *in camera* review.

### B.    Production of "Relevant Documents"

Even if the privilege is somehow implicated in the documents, the Supreme Court "has approved the practice of requiring parties who seek to avoid disclosure of documents to make the documents available for in camera inspection." *Zolin*, 491 U.S. at 569 (citing *Kerr v. United States District Court*, 426 U.S. 394, 404-405 (1976)). "In camera review enables protection of privileged material." *Team Sys. Int'l, LLC v. Haozous*, No. 16-6277, 6 (10th Cir. Aug. 23, 2017) (citing *Kerr*, 426 U.S. at 405).

## II.    CONCLUSION

WHEREFORE, for the reasons set forth herein, Plaintiff prays for an Order of this Court setting aside Magistrate Birzer's Order (Doc. 236) and for such other and further relief as this Court deems just and proper.

Respectfully submitted,

REAVEY LAW LLC

By:    /s/ Patrick G. Reavey          .
             Patrick G. Reavey KS# 17291
             Livestock Exchange Building
             1600 Genessee Suite 303
             Kansas City, MO 64102
             Ph: 816.474.6300
             Fax: 816.474.6302
             Email: preavey@reaveylaw.com
             Website: www.reaveylaw.com

**Certificate of Service**

I hereby certify that on this 29th day of December 2021, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Michelle R. Stewart
Suzanne R. Bruss
HINKLE LAW FIRM LLC
8711 Penrose Lane, Suite 400
Lenexa, Kansas 66219-8197
mstewart@hinklaw.com
sbruss@hinklaw.com
ATTORNEYS FOR DEFENDANTS

 /s/Patrick G. Reavey     .
Attorney for Plaintiff