IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LLOYD MARTLEY,

    **Plaintiff,**

    v.

BASEHOR, KANSAS, CITY OF, et al.,

    **Defendants.**

Case No. 2:19-cv-02138-HLT-GEB

## MEMORANDUM AND ORDER

Plaintiff Lloyd Martley brings this Equal Pay Act ("EPA") case against his former employer, Defendant City of Basehor, Kansas, and one of its officials, Defendant David Breuer. Plaintiff alleges violation of the EPA and retaliation stemming from the initiation of a criminal investigation into the reporting of his income to a state retirement system. The matter is now before the Court on Plaintiff's motion for review of Magistrate Judge Gwynne E. Birzer's order granting in part and denying in part Plaintiff's motion to compel production of communications between Defendants and their lawyers. Doc. 239. For the reasons stated below, the motion is denied.

**I.    BACKGROUND**

At issue are certain document requests by Plaintiff. The requests seek communications between City representatives and their attorneys regarding Plaintiff's EPA claim, the City's defense of that claim, and the investigation into Plaintiff's retirement contributions. Plaintiff believes the investigation was retaliatory.[1] After some initial back and forth and involvement by Judge Birzer, *see* Doc. 236 at 3-4, Defendants indicated they either produced responsive

---

[1] The details of this dispute and the other claims in this case are laid out in more detail in Judge Birzer's underlying order, Doc. 236, and in other orders by the Court, Doc. 229 and Doc. 196.

documents or had otherwise asserted privilege. *Id.* at 1-2. Plaintiff filed a motion to compel seeking an order (1) compelling Defendants and their counsel to search for additional responsive documents, (2) requiring submission of all but two of the items identified on the privilege log for in camera review, and (3) requiring Defendants to produce the documents. *Id.* at 4. Judge Birzer granted the motion in part and denied it in part. *Id.* at 1.

Judge Birzer ordered Defendants to conduct searches at the two law firms who have represented Defendants and the City's insurance carrier, and to either produce or identify on a privilege log any additional responsive documents. *Id.* at 7-8. One additional document was found, and Defendants added it to their privilege log. *See* Doc. 241. Plaintiff does not challenge this aspect of the order or the search results.

As to the privilege log, Judge Birzer found Defendants provided sufficient information to make a determination regarding privilege without in camera review. Doc. 236 at 10. Judge Birzer found that Items 1-6, 8-18, and 21 were protected by the attorney-client privilege. *Id.* at 11. Item 7, which was withheld only on the basis of the work-product protection, was found to be work product, and Plaintiff did not show a substantial need for it. *Id.* at 12-13.[2]

After finding that the documents on the log were privileged, Judge Birzer considered whether they were nevertheless discoverable due to either an exception to privilege or a waiver of privilege. *Id.* at 13-21. Judge Birzer found that Plaintiff had not carried his burden of showing a factual basis for application of the crime-fraud exception, or sufficient facts to warrant in camera review of the documents to further investigate this issue. *Id.* at 16. With regard to Plaintiff's argument that Defendants had waived privilege by asserting certain affirmative defenses, Judge Birzer found that mere assertion of a good-faith defense did not waive privilege and that

---

[2] Plaintiff did not seek in camera review of Items 19-20. Doc. 236 at 4.

2

Defendants had not asserted any affirmative defense based on the advice of counsel. *Id.* at 19-20. Finally, Judge Birzer was not persuaded by Plaintiff's argument that Defendants waived privilege by pleading the "functional equivalent" of the *Faragher/Ellerth* affirmative defense. *Id.* at 20-21.

Plaintiff now seeks review under Rule 72(a). *See* Doc. 239. He challenges Judge Birzer's ruling that the privilege log was sufficient to make a determination about privilege without in camera review, her finding that Plaintiff had not made a sufficient showing for application of the crime-fraud exception, and her finding that Defendants have not waived privilege.

## II.   STANDARD

Under Rule 72(a), a district judge may set aside a magistrate judge's order on a nondispositive matter "that is clearly erroneous or is contrary to law." *See also* 28 U.S.C. § 636(b)(1)(A). Under the "clearly erroneous" standard, a reviewing court must affirm a magistrate judge's order unless it is "left with the definite and firm conviction that a mistake has been committed." *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988) (internal quotation and citation omitted). The "contrary to law" standard permits "an independent review of purely legal determinations." *Norwood v. United Parcel Serv., Inc.*, 2021 WL 75641, at *1 (D. Kan. 2021). Where an order fails to apply or misapplies relevant law, the order is "contrary to law." *Id.* (citation omitted).

## III.   ANALYSIS

### A.   Sufficiency of Privilege Log

Judge Birzer first considered the sufficiency of Defendants' privilege claims. She found that the privilege log met the requirements for privilege logs in this district and contained sufficient information to make a determination regarding privilege. Doc. 236 at 10. She rejected Plaintiff's argument that the actions described in the log were not related to litigation and distinguished a

3

prior ruling about attorney billing records, noting that the communications now at issue conveyed legal advice, unlike the billing records. *Id.* at 8-10.[3] For Item 7, which was claimed only as work product, Judge Birzer found that Plaintiff had not attempted to show substantial need and that the underlying factual information had already been produced to Plaintiff. *Id.* at 12-13.

Plaintiff argues that Judge Birzer ignored that the documents all pertained to Plaintiff's retirement income and the subsequent investigation and that consideration of "what the attorneys were doing as part of the investigations" was critical to the privilege analysis. Doc. 239 at 4. According to Plaintiff, Judge Birzer erroneously assumed the activities by attorneys were "typical, expected, non-retaliatory, and completely above-board," *id.*, and that he is entitled to know why Defendants' attorneys took the actions they did.

"The attorney-client privilege protects confidential communications between an attorney and client where legal advice is sought." *Burton v. R.J. Reynolds Tobacco Co.*, 170 F.R.D. 481, 484 (D. Kan. 1997). The work-product doctrine protects materials prepared in anticipation of litigation by or for a party or party's representative, and such materials are only discoverable if the requesting party shows a substantial need and that the information cannot be obtained through other means. *S.E.C. v. McNaul*, 271 F.R.D. 661, 665 (D. Kan. 2010); Fed. R. Civ. P. 26(b)(3).

Notably, Plaintiff does not challenge the claimed privilege as to any of the specific items on the privilege log or argue that any specific items do not meet the definition of either attorney-client communications or work product. He even admits that the documents at issue appear to be privileged. *See* Doc. 239 at 3. But nevertheless, Plaintiff argues that in camera review is warranted because he believes the documents are relevant and because he harbors suspicions about the

---

[3] The billing records were nevertheless protected as work product. *See generally* Doc. 229.

involvement of Defendants' attorneys in the investigation into his retirement contributions. He never explains why or how this is the case.

Judge Birzer found that Defendants' privilege log complied with the requirements for privilege logs in this district—a finding Plaintiff does not challenge. She also found that that the majority of the relevant documents are described as communications between City officials and attorneys regarding the case and were for the purpose of seeking or rendering legal advice—a finding Plaintiff does not challenge. The remaining document was work product for which Plaintiff did not demonstrate substantial need—a finding Plaintiff does not challenge.

Rulings regarding the attorney-client privilege and work-product protection are within the discretion of the district court. *See United States v. Ary*, 518 F.3d 775, 782 (10th Cir. 2008). "Because a magistrate is afforded broad discretion in the resolution of nondispositive discovery disputes, the court will generally grant the magistrate great deference and overrule the magistrate's determination only if this discretion is clearly abused." *Smith v. MCI Telecomms. Corp.*, 137 F.R.D. 25, 27 (D. Kan. 1991). Based on the arguments raised in Plaintiff's motion for review, the undersigned cannot conclude that Judge Birzer's decision to rely on the privilege log instead of conducting an in camera review was clearly erroneous.

### B. Crime-Fraud Exception

Plaintiff next challenges Judge Birzer's rulings regarding the application of the crime-fraud exception. The attorney-client privilege does not extend to legal communications sought to aid in the commission of a crime or fraud. *See Burton v. R.J. Reynolds Tobacco Co.*, 167 F.R.D. 134, 140 (D. Kan. 1996). A party seeking discovery of documents under the crime-fraud exception may pursue in camera review to determine the applicability of the exception. *United States v. Zolin*, 491 U.S. 554, 568 (1989). But to justify in camera review, there must be an adequate factual basis

5

that supports a reasonable, good-faith belief that in camera review may reveal that the crime-fraud exception applies. *Id.* at 572. Whether to conduct in camera review is ultimately a matter of discretion. *Id.* The district court should consider the "facts and circumstances of the particular case, . . . the volume of materials the district court has been asked to review, the relative importance to the case of the alleged privileged information, and the likelihood that the evidence . . . will establish that the crime-fraud exception does apply." *Id.*

Judge Birzer focused on whether Plaintiff had made a sufficient factual showing about the applicability of the crime-fraud exception to justify in camera review. Judge Birzer noted that Plaintiff argued "without analysis" that Defendants' actions in reporting his retirement contributions to law enforcement "could implicate several state and federal crimes." Doc. 236 at 14. Plaintiff relied on factual allegations made in a previous motion to compel to argue that there was a sufficient factual basis to inquire further about the crime-fraud exception, *see* Doc. 180 at 3-9, including that City officials communicated with KPERS and law enforcement about his retirement contributions, that it was the City who initially decided how to report his retirement income, and that there was an exculpatory email not initially provided to law enforcement. Doc. 236 at 15.

Judge Birzer concluded Plaintiff failed to make a sufficient factual showing for in camera review, and thus also had not made a prima facie showing that the crime-fraud exception applied. *Id.* at 16. She pointed to testimony by a KPERS representative that the City had a fiduciary duty to report miscalculations or overpayments, and to testimony by the sheriff that it was important for the City to find out the truth. On this record, Judge Birzer was disinclined to assume that that the City was pursuing the investigation to be in a better position in this lawsuit. *Id.* at 15-16.

6

Plaintiff challenges three of Judge Birzer's findings regarding the factual record and argues that the testimony of a detective supports application of the crime-fraud exception. Doc. 239 at 5, 7-10. The undersigned disagrees that these arguments demonstrate that Judge Birzer's ruling was clearly erroneous.

Regarding the factual record, Plaintiff first argues that Judge Birzer wrongfully concluded that Detective Patzwald did not believe the City had any ill intent in initiating the investigation. Doc. 239 at 7. But although Judge Birzer referred to a "Sheriff's Officer," that was in reference to Sheriff Dedeke. Doc. 236 at 15-16 (referring to "Sheriff's Office Dedeke" and citing to Dedeke's deposition). Dedeke's testimony was in line with Judge Birzer's findings. *See* Doc. 207-7 at 5-8 ("But there's no indication from them that the work that they were asking us to do was to help them perhaps be in a better position.").

Second, Plaintiff argues it was wrong for Judge Birzer to rely on Dedeke's testimony because Plaintiff believes Dedeke was misled by City officials who did not provide him with an email that Plaintiff believes is exculpatory. Doc. 239 at 8. But Judge Birzer specifically addressed this in her order, stating that although "Plaintiff argues the City never advised the Sheriff about the existence of an email," Plaintiff's prior motion to compel "admitted the email had been provided to the Sheriff by Defendants, after the criminal investigation was started." Doc. 236 at 15. Given his testimony, Dedeke clearly did not believe he had been misled. *See* Doc. 207-7 at 7 ("My decision would not be any different if I made it today as when I made it back then.").

Third, Plaintiff takes issue with Judge Birzer's reliance on the testimony of a KPERS representative that the City had a fiduciary duty to report overpayments. *See* Doc. 236 at 15. Plaintiff argues that it was not KPERS that first raised the issue to the City, but the City who brought the issue to KPERS. Doc. 239 at 6. But this doesn't discount the testimony that there was

7

a fiduciary duty on the part of the City, which would counter the notion that the City reported Plaintiff's retirement contributions for some improper purpose.

Finally, Plaintiff points to testimony of Patzwald, the detective who conducted the investigation into Plaintiff's retirement contributions. Patzwald apparently did question whether the investigation would give Defendants leverage in the litigation. But the undersigned cannot conclude based on Patzwald's suspicion alone that this represents a good-faith belief that Defendants were using their attorneys to perpetrate a crime.[4]

Accordingly, Judge Birzer's conclusion that Plaintiff failed to adequately invoke the crime-fraud exception was not clearly erroneous.

### C. Waiver

Judge Birzer next evaluated Plaintiff's argument that Defendants waived privilege by asserting affirmative defenses that they acted in good faith, that their actions were not willful or retaliatory, and that Defendants had a fiduciary and ethical duty to refer the retirement-contribution issue for investigation. Doc. 236 at 17. Judge Birzer found there was no waiver because the subjective motivations of Defendants were not relevant to a qualified-immunity defense and there were no defenses based on advice of counsel. *Id.* at 19-20.

A party can waive privilege where it places protected information at issue through an affirmative act and it would be unfair to the opposing party to protect information that is otherwise vital to the opposing party's case. *Sprint Commc'ns Co., v. Comcast Cable Commc'ns LLC*, 2015 WL 11121848, *2 (D. Kan. 2015) (applying the intermediate approach outlined in *Hearn v. Rhay* to determine waiver); *see also Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.* 136 F.3d 695, 699

[4] Although Plaintiff focuses primarily on the conduct of Defendants or other City officials, he argues that the crime-fraud exception is implicated because Defendants' attorneys were involved in the communications. Given the rulings above, the Court does not reach the question of whether that is sufficient to implicate the crime-fraud exception.

(10th Cir. 1998) (describing *Hearn* approach as providing "that the privilege is waived only when the material to be discovered is both relevant to the issues raised in the case and either vital or necessary to the opposing party's defense of the case"). But merely pleading a defense based on reasonableness or reliance is not sufficient to place advice of counsel at issue. *Sprint Commc'ns*, 2015 WL 11121848, at *3. Additionally, the mere fact that privileged material is relevant to an affirmative defense does not effect a waiver. *See id.*

Given this standard, it is unclear how Defendants' affirmative defenses could effect a waiver. A good-faith defense alone does not automatically effect a waiver. *Williams v. Sprint/United Mgmt. Co.*, 464 F. Supp. 2d 1100, 1103 n.3 (D. Kan. 2006). The same is true for qualified immunity. *Leftwich v. City of Pittsburg, Kan.*, 2017 WL 1338838, at *4 (D. Kan. 2017) ("The mere assertion of a defense, here qualified immunity, does not operate to waive the privilege."). Further, qualified immunity does not turn on subjective considerations, and it is unclear how the motivations of Defendants or communications between Defendants and their attorneys would be relevant to that defense, let alone "vital." *See Harlow v. Fitzgerald*, 457 U.S. 800, 817-19 (1982); *see also In re Itron, Inc.*, 883 F.3d 553, 563 (5th Cir. 2018) (describing *Hearn* as "a holding plainly incorrect under modern immunity law").[5]

Although Defendants' attorneys were apparently involved in or facilitated discussions with KPERS and law enforcement, the actual defenses pertaining to Defendants' motivations or duties do not seem to be based on the advice of counsel, as Judge Birzer found. *See* Doc. 236 at 20.

---

[5] Plaintiff relies on *Hearn*'s findings that a qualified immunity or "good faith" defense waives privilege. But *Hearn* applied an earlier version of qualified immunity that had both subjective and objective aspects, which put at issue whether the defendant acted with malice. *Hearn v. Rhay*, 68 F.R.D. 574, 581 n.5 (E.D. Wash. 1975). As Judge Birzer noted, the subjective aspect of qualified immunity was eliminated by the Supreme Court in *Harlow v. Fitzgerald*. Doc. 236 at 19. Plaintiff argues that *Harlow* did not change *Hearn*'s law regarding waiver of privilege where the matter is put at issue. Doc. 239 at 12. While that may be correct, *Harlow*'s clarification of qualified immunity did change what is at issue.

Probing the motivations of Defendants can occur without delving into the communications between them and their attorneys.[6] *See Sprint Commc'ns*, 2015 WL 11121848, at *5 (finding that protected information is not "vital" where "information regarding a company's state of mind and motivations is available from witnesses without reference to protected information"). Although Defendants' communications with their attorneys may be <u>relevant</u> to Plaintiff's retaliation claim and any defenses, and Plaintiff is undoubtedly curious or suspicious about what was discussed between Defendants and their attorneys, this is not sufficient to effect a waiver. *Hearn*, 68 F.R.D. at 582 (discerning between communications that are "inextricably merged" with claims and defenses versus those merely "incidental" to the case); *see also Sprint Commc'ns*, 2015 WL 11121848, at *8 (noting that production of privileged documents cannot be compelled just so one party can check the veracity of the opposing party's statements); *Itron*, 883 F.3d at 568 (noting that if the measure of waiver was relevance, "waiver could become near automatic in any case touching on [a party's] knowledge or state of mind—unjustifiably eliminating the privilege in a substantial swath of cases"). Based on this, there was no error in concluding there was no waiver.

### D.     *Faragher/Ellerth* Defense

Finally, Judge Birzer rejected Plaintiff's argument that any privilege was waived because Defendants have pleaded "the functional equivalent" of the *Faragher/Ellerth* defense. She concluded that the defense was only applicable in Title VII sexual-harassment cases, has not been pleaded by Defendants in this case, and that Plaintiff did not cite any law that expanded the defense and the related waiver to this case. Doc. 236 at 20-21. Plaintiff challenges this, arguing that the "functionally equivalent defenses" are that Defendants' actions were discretionary, taken in good

---

[6]   To the extent Defendants do fall back on advice of counsel, the calculus would change, as Judge Birzer noted. *See* Doc. 236 at 20.

faith, and were not willful, that Defendants are protected from liability from various immunities, and Defendants had a fiduciary and ethical duty to refer the matter for investigation. Doc. 239 at 14.

The *Faragher/Ellerth* defense was developed by the Supreme Court. It provides that where "no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages" by showing "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998). "When a party puts the reasonableness of an internal investigation at issue by asserting the *Faragher*/*Ellerth* defense, that party waives any privilege that might otherwise apply to documents concerning the investigation." *Doe v. USD No. 237*, 2019 WL 1925107, at *5 (D. Kan. 2019).

Plaintiff contends that Defendants are relying "on their confidential and privileged investigation which they claim [was] taken in good faith and required Defendants to refer the case for a criminal investigation." Doc. 239 at 14. Plaintiff concedes that Defendants' defense is not identical to *Faragher/Ellerth*, but "the effect is the same." *Id.* Frankly, the Court struggles to follow Plaintiff's argument. It's unclear how Plaintiff's contention on this point is any different than Plaintiff's waiver argument, or how any defense in this case is the "functional equivalent" to *Faragher/Ellerth*.[7] Nor has Plaintiff cited to any caselaw that expands *Faragher/Ellerth* beyond

---

[7] Plaintiff suggests that Defendants are attempting to justify their actions based on an internal investigation. Doc. 239 at 14-15. Defendants dispute this, stating that the investigation was conducted by KPERS and law enforcement. Doc. 249 at 7-8. Plaintiff points to a line in the privilege log referring to "communication with KPERS as part of investigation of plaintiff's lawsuit." Doc. 254 at 6 n.6. This seems to be a reference to the fact that the investigation into Plaintiff's retirement contributions came about in the course of this lawsuit—though the parties strenuously dispute how or why. The issue is whether the <u>initiation</u> of an investigation was retaliatory, not whether any internal investigation by Defendants was reasonable. Accordingly, Plaintiff's reliance on *Faragher/Ellerth* seems misplaced.

11

the Title VII sexual-harassment context—a fact noted by Judge Birzer in her order. *See* Doc. 236 at 21. Finally, the case primarily relied on by Plaintiff, *Barbini v. First Niagara Bank, N.A.*, involved a defendant "raising the quintessential *Faragher/Ellerth* defense," 331 F.R.D. 454, 462 (S.D.N.Y. 2019), something that has not happened here.

Based on this, Judge Birzer's rejection of Plaintiff's *Faragher/Ellerth* argument was not clearly erroneous.

## IV.  CONCLUSION

THE COURT THEREFORE ORDERS that Plaintiff's Objection to, and Motion for Review of, Magistrate Birzer's 12/15/2021 Memorandum and Order (Doc. 239) is DENIED.

IT IS SO ORDERED.

Dated: February 11, 2022         /s/ *Holly L. Teeter*
                                 HOLLY L. TEETER
                                 UNITED STATES DISTRICT JUDGE