## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

LLOYD MARTLEY,               )
                                         )
                  Plaintiff,     )
                                         )
v.                               )     Case No.  19-02138-DDC-GEB
                                         )
CITY OF BASEHOR, KANSAS, and   )
DAVID BREUER,
                                       )
                  Defendants.   )
_____ )

## <u>MEMORANDUM AND ORDER</u>

Defendants seek to quash an amended subpoena[1] Plaintiff served on the City of Basehor's ("City") former IT service provider, NetStandard Data Center ("NetStandard"). A notice of intent to issue the subpoena was filed on April 7, 2022, just one week prior to the close of discovery. The subpoena seeks to have NetStandard run certain searches on City email data that might still be housed on NetStandard's servers and produce all responsive emails.

On May 2, 2022, the Court heard the arguments of counsel regarding Defendants' Motion to Quash Subpoena and Incorporated Memorandum in Support (ECF No. 272) and conducted the Pretrial Conference. Plaintiff appeared through counsel, Patrick  Reavey.

---

[1] Plaintiff filed an initial Notice of Service of Subpoena to NetStandard Data Center on April 6, 2022 (ECF No. 268). An Amended Notice of Service of Subpoena was filed on April 7, 2022 with another second subpoena to NetStandard changing the location for performance from Kansas City, MO to De Soto, KS.

Defendants appeared through counsel, Michelle Stewart. After careful review of all pleadings, attached exhibits, and hearing arguments of counsel, the Court **GRANTED** Defendants' Motion to Quash Subpoena and Incorporated Memorandum in Support **(ECF No. 272)**, but ordered certain relief set out below for Plaintiff.

## I.    Background[2]

This is now the tenth discovery motion the parties have brought before the Court. Given the number of opinions the Court has written outlining in detail the facts of this case, a full recitation will not be repeated here. Highly summarized, the relevant facts are as follows.

In his Third Amended Complaint, Plaintiff brought a claim against Defendant, City of Basehor, Kansas, alleging violation of the Equal Pay Act ("EPA") by paying disparate benefits and wages. He brought claims against all Defendants, the City; its Mayor, David Breuer ("Mayor"); and City Administrator, Leslee Rivarola ("Rivarola") alleging they retaliated against him in violation of the EPA and the First Amendment.

Plaintiff served as the City's Police Chief from 2008 until July of 2018. At various times between 2009 and July of 2018, Plaintiff, in addition to serving as Police Chief, also served as City Administrator. He retired from both positions in July of 2018. Around the same time, a criminal investigation was initiated into Plaintiff regarding his KPERS

---

[2] Unless otherwise indicated, the information recited in this section is taken from the Third Amended Complaint (ECF No. 150), the Answers (ECF Nos. 4, 153), City Administrator's Motion to Dismiss (ECF No. 154), and Memorandum and Order granting the City Administrator's Motion to Dismiss (ECF No. 196). This background information should not be construed as judicial findings or factual determinations.

contributions. After Plaintiff's retirement, the City hired Rivarola as the new City Administrator. Plaintiff contends the City paid him significantly less than what it paid her for performing the same duties.

The City and Mayor deny they violated the EPA. They primarily contend because Plaintiff served as Police Chief, he served as a part-time City Administrator, and therefore did not perform work substantially equal to that of Rivarola. They also deny any retaliation against Plaintiff. After filing a motion to dismiss, the retaliation claims against Rivarola were dismissed without prejudice.[3]

## II. Defendants' Motion to Quash Subpoena and Incorporated Memorandum in Support (ECF No. 272)

### A. Parties' Arguments

#### 1. Defendants' Position

Defendants object to the subpoena pursuant to Federal Rules 26(c), 34, and 45(a)(4). Specifically, they argue the subpoena was issued in violation of Fed. R. Civ. P. 45(a)(4) because Defendants were not provided notice of the subpoena before it was served upon NetStandard. Additionally, Defendants argue Plaintiff attempts to use a subpoena to avoid compliance with Federal Rules 26 and 34. They argue Plaintiff seeks to obtain documents via subpoena after failing to obtain them when he served his Sixth Request for Production too late for the response to occur prior to the close of discovery. Defendants also seek fees and costs for having to file a Motion to Quash to prevent response to a purported improperly served subpoena.

---

[3] ECF No. 196.

### 2.   Plaintiff's Position

Plaintiff argues he did not attempt to avoid objection by Defendants and the amended subpoena does not violate Fed. R. Civ. P. 45. Plaintiff alleges he filed his Notice of Service of Subpoena (ECF No. 268) around lunchtime on April 6, 2022 and counsel's legal assistant served the subpoena on NetStandard on his way home after work the same day. Plaintiff argues the Amended Notice of Service of Subpoena (ECF No. 269) was handled in a similar fashion the following day with both subpoenas being served on Defendants via CM/ECF's delivery of the notice prior to the subpoena being served on NetStandard.

Additionally, Plaintiff alleges Defendants' purported failure to appropriately search the City and Police Department servers and produce documents he previously requested. He sets out a timeline of events involving the City's efforts to have NetStandard image those servers, counsel's possession of a hard drive purporting to contain the images of the servers, counsel's communications with NetStandard regarding the data on the hard drive and accessing all of same, requests for production requesting searches of the servers, and the City's supplementation of response to the requests which did not identify any new documents to be produced. Plaintiff argues based on Defendants' failures to fully search for responsive documents, his use of a subpoena to NetStandard is justified.

### B.   Compliance with D. Kan. Rule 37.2

Pursuant to D. Kan. Rule 37.2, this Court "will not entertain any motion to resolve a discovery dispute…or a motion to quash or modify a subpoena" unless counsel have "conferred or has made reasonable effort to confer with opposing counsel" before filing a

4

motion. Based upon the Court's review of correspondence between the parties, and their participation in the April 7, 2022 informal discovery conference, the Court finds the parties have complied with D. Kan. Rule 37.2 to the best of their abilities.

### C.    Discussion

As a threshold matter, Defendants must demonstrate standing in order to oppose the subpoena. Generally, a "motion to quash or modify a subpoena duces tecum may only be made by the party to whom the subpoena is directed."[4]  The court may make an exception if the party seeking to challenge the subpoena has a personal right or privilege regarding the information requested.[5] Where the subpoena seeks to have searches run on the City's email data remaining on NetStandard's servers for the period of time when Defendant Breuer was Mayor, the Court finds Defendants have a personal right regarding the information requested.  Thus, the Court holds Defendants have standing to move to quash the subpoenas served on NetStandard.

### 1.    Notice to Defendants Prior to Service of the Subpoena on NetStandard

Fed. R. Civ. P. 45 provides guidelines for the issuance of subpoenas to non-parties. Defendants allege that Plaintiff failed to confer about the subpoena prior to filing his notice. But the plain language of Rule 45 does not require the parties to confer prior to a party filing the required notice.[6]

---

[4] *Warkins v. Piercy*, No. 16-MC-216-CM, 2016 WL 7188284, at *3 (D. Kan. Dec. 12, 2016).
[5] *Id*.
[6] Fed. R. Civ. P. 45; *see also Schneider v. CitiMortgage, Inc.,* No. 13-4094-SAC, 2014 WL 4749181, at *1 (Sept. 24, 2014).

"If the subpoena commands the production of documents, electronically stored information, or tangible things…then before it is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party."[7] Defendants argue that because the subpoena was served on the same day it was issued, Plaintiff violated Fed. R. Civ. P. 45(a)(4). But the Tenth Circuit has found Fed. R. Civ. P. 45 requires "notice to be given prior to service of a subpoena" rather than prior to production.[8] "[T]he purpose behind the notice requirement is to provide opposing counsel an opportunity to object to the subpoena."[9]

As previously stated, Plaintiff alleges he filed the original notice around lunchtime on April 6, 2022 and his paralegal served the subpoena on NetStandard after he left work for the day. The amended notice and subpoena were purportedly handled in a similar fashion the following day. While the Court would certainly encourage parties to give more than half a day's notice, court's in this circuit have found less notice to be sufficient.[10] Here, where: 1) Plaintiff filed its initial notice on April 6, 2022, approximately a half a day before serving the subpoena; 2) Plaintiff filed a second notice the following day amending the subpoena only to change the place of performance; 3) Defendants emailed the undersigned's chambers at 10:04 a.m. on April 7, 2022 seeking a discovery conference

---

[7] Fed. R. Civ. P. 45(a)(4).
[8] *Butler v. Biocore Med. Techs., Inc.* 348 F.3d 1163, 1173 (10th Cir. 2003).
[9] *Allender v. Raytheon Aircraft Co.,* 220 F.R.D. 661, 664 (D. Kan. 2004) (quoting *Biocore Med. Techs.,* 348 F.R.D. at 667)).
[10] *Osborne v. Google Inc.,* No. 18-mc-32-JCH, 2019 WL 1472311, at *2 (D.N.M. April 3, 2019) (finding less than 3 hours' notice was nonetheless notice before service and with a production date 14 days away was enough time to object).

related to the subpoena; 4) the Court held a discovery conference at 2:45 p.m. the same day; 5) Defendants filed the subject motion to quash on April 8, 2022; and 6) thereafter the Court asked Plaintiff to email NetStandard to advise them of the pending motion to quash. On these facts, the Court finds Defendants received notice under Fed. R. Civ. P. 45(a)(4) to satisfy the purpose of the rule and will not quash the amended subpoena on this basis.

### 2.      Control of the Documents at issue

Defendants raised in their conferral correspondence, that NetStandard does not have control over the City's servers or documents. The Court is uncomfortable with Plaintiff's tactic of going around Defendants to their former IT vendor to conduct searches on any of the City's email data it may still have in its possession after its services were terminated. The Court questions whether the documents are in the control of NetStandard and questions whether it should be burdened with the production. "[A] requesting party should seek documents or ESI from the party that controls the information through a Rule 34 request….where a party to the litigation has control over the requested documents and ESI that are in the possession or custody of  a non-party, document requests to a party, rather than subpoenas to the custodial non-party, are the appropriate method to obtain discovery of those documents and ESI."[11] Documents are in the control of a party if the party has the legal right to obtain the documents on demand.[12] Here, where Defendants have requested and been provided images of the City's and Police Department's servers which were in

---

[11] The Sedona Conference, *Commentary on Rule 45 Subpoenas to Non-Parties, Second Edition,* 22 SEDONA CONF. J. 1, 17 (forthcoming 2021).
[12] *FDIC v. McCaffree,* 289 F.R.D. 331, 339 (D. Kan. 2012).

NetStandard's possession, the Court finds the City has control over any of the City's email data NetStandard might still have in its possession.

"It is a well-established principle that the burdens of discovery should fall on the parties to the litigation instead of non-party."[13] "A party to the litigation may also be the best positioned and have incentive to properly address issues concerning, privilege, data privacy, and confidentiality, while a non-party often has no capability nor incentive to do so."[14] In this case, the parties have a Protective Order,[15] and any production could be initially marked as confidential. Therefore, the Court does not have a strong concern regarding the protection of the confidentiality of any information that might be produced. However, Plaintiff has long alleged counsel for the City, the City Attorney, Shannon Marcano, and insurance defense counsel, first Terelle Mock and later Michelle Stewart, were directly involved in investigations by KPERS and the Leavenworth County Sheriff's Department into Plaintiff's income reporting to KPF. The Court in reviewing documents *in camera* and privilege logs related to prior motions knows these attorneys were sometimes, at least included, in communications with KPERS and the Sheriff's Department. Section B of Plaintiff's subpoena seeks emails exchanged between City Administrator, Leslee Rivarola and personnel at both KPERS and the Sheriff's Department. Section C seeks email between City Attorney, Shannon Marcano, and the same personnel at KPERS and the Sheriff's Department. The Court is concerned about

---

[13] The Sedona Conference, *Commentary on Rule 45 Subpoenas to Non-Parties, Second Edition,* 22 SEDONA CONF. J. 1, 20 (forthcoming 2021).
[14] *Id.*
[15] ECF No. 26.

having NetStandard produce documents produced pursuant to either of these requests without Defendants' counsel having the opportunity to review the documents for privilege.

Although this is anticipating arguments that would possibly be raised in any motion to quash filed by NetStandard, the Court questions whether NetStandard would be permitted to divulge the contents of the City's communications under the Stored Communications Act without the City's consent.[16] "Under the Stored Communications Act, . . . remote computing service providers may not divulge communications that are carried or maintained on that service (absent the customer's consent)."[17] For these reasons, the Court will quash Plaintiff's subpoena, both the original and amended, to NetStandard. However, that does not mean the Court will leave Plaintiff without relief.

### 3.    Additional Searches on Devices in the Possession, Custody or Control of Defendants or their Counsel

For the reasons discussed above, the Court does not believe a third-party subpoena to NetStandard is the appropriate vehicle to get the information Plaintiff seeks. However, it troubles the Court that documents continue to come to light are presumably responsive to requests for production Plaintiff has already served but have not been produced by Defendants. Plaintiff asked a deponent to run a search during a remote deposition that turned up documents that unintentionally had not been produced. Now it appears,

---

[16] 18 U.S.C. §§ 2701 *et seq*.
[17] The Sedona Conference, *Commentary on Rule 45 Subpoenas to Non-Parties, Second Edition,* 22 SEDONA CONF. J. 1, 22-23 (forthcoming 2021).

Plaintiff's counsel has reached out to a former city council member who had documents which Plaintiff alleges have not been produced in this case.

Also troubling is that Defendants have known there were issues with the images of the City and Police Department servers and of Plaintiff's computer created by NetStandard, but the parties and the Court have seemingly never gotten to the bottom of the issues. Defendants' counsel reported the images prepared were not the mirror images they requested and thought they received. Defendants asked NetStandard to prepare a .pst file of all City emails. After discussion, it appears the .pst file was requested but never received. Counsel reached out to NetStandard in February 2020 with questions when the images appeared to be limited to Plaintiff's emails and workstation, yet it had been reported the information from his computer had been deleted. And lastly, pursuant to the Court's January 28, 2021 Order Defendants supplemented their response to RFP No. 2 of Plaintiff's Second Request for Production but identified no additional documents. This, despite the response covering a time period not previously addressed and after running additional searches on additional devices.

Where there are more questions than answers regarding the document production in this case, it is not surprising that Plaintiff distrusts Defendants' efforts to search for responsive documents. To be clear, the Court is not accusing the City or its counsel of any misconduct. But it appears the City personnel, counsel, and even its IT vendor, involved in the litigation hold, imaging, and searching processes may not have been up to the technical nature of the task.

The Court agrees with Plaintiff that the information sought in the subpoena to NetStandard is not new information. The Court finds RFP No. 2 of Plaintiff's Second Request for Production of Documents, although for a slightly shorter timeframe, is broad enough to encompass the information sought in the requests in the subpoena to NetStandard. The timeframe in the subpoena to NetStandard is June 21, 2018 through December 31, 2020. Plaintiff retired from the City in July 2018 thus the beginning date of June 21, 2018 is permitted. However,  Plaintiff has documented in his response that the criminal investigation into Plaintiff was ongoing through May 2020, therefore the Court finds that May 31, 2020 is the appropriate end date for the information sought.

Although the Court will not reopen discovery, the Court orders the parties to cooperate and share the expense to have a digital forensic or eDiscovery vendor run the searches set out in the subpoena to NetStandard, with the limited timeframe as above, on the timeline and as set out below:

1)      no later than May 5, 2022 the parties shall confer and agree upon a digital forensic or eDiscovery vendor to run the searches, if the parties are unable to agree on a vendor, they shall contact the undersigned's chambers and the Court will choose a vendor for use;

2)      no later than May 9, 2022, Defendants shall deliver the hard drive prepared by NetStandard and kept in counsel's office, a .pst file to be prepared by the City's IT vendor to comply with the searches in the subpoena, and the three iPads in the City's vault to the chosen vendor;

3)      the vendor shall run the searches identified in the subpoena to NetStandard, segregating any responsive email that include Michelle Stewart, Terelle Mock, and other defense counsel identified by Defendants who might be involved in any of the responsive communications;

4)      no later than May 20, 2022 the vendor shall produce the results of the searches to the Court;

5)      beginning on May 23, 2022 at 10:00 a.m. Mr. Reavey and Ms. Stewart shall review the segregated documents including counsel for privilege in the undersigned's chambers so the Court may resolve any disagreements regarding privilege;

6)      following the privilege review the vendor shall provide both parties with a copy of the non-privileged search production and provide Defendants with the privileged search production; and

7)      no later than 30 days after receipt of privileged search production, Defendants shall produce a privilege log, following the requirements of this District, for any documents Defendants withholds or redacts on the basis of attorney-client or other privilege.

### 4.      Attorney's Fees

Finally, Defendants seek an award of attorney's fees for its time to prepare the motion to quash arguing there was no basis for issuing a subpoena to NetStandard. But where the parties have each taken legitimate positions in the motion, the Court finds each party shall be responsible for its own costs and expenses.

### III.    Conclusion

Based on the foregoing, the Court orders both the original and amended subpoenas to NetStandard be quashed. The parties shall cooperate and share the expense incurred to have a neutral digital forensic or eDiscovery vendor run the searches set out in the subpoena to NetStandard on the devices identified in this Order as set out above.

**THEREFORE**, Defendants' Motion to Quash Subpoena and Incorporated Memorandum in Support **(ECF No. 272)** is **GRANTED** for the reasons set forth above.

**IT IS SO ORDERED.**

Dated May 2, 2022.

s/ Gwynne E. Birzer
GWYNNE E. BIRZER
U.S. Magistrate Judge
