IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LLOYD MARTLEY,⁣⁣⁣⁣⁣⁣⁣⁣⁣⁣⁣)
⁣⁣⁣⁣⁣⁣⁣⁣⁣⁣⁣Plaintiff,⁣⁣⁣⁣⁣⁣⁣)
⁣⁣⁣⁣⁣⁣⁣⁣⁣⁣⁣)
v.⁣⁣⁣⁣⁣⁣⁣⁣⁣⁣⁣)⁣⁣⁣⁣⁣⁣⁣Case № 2:19-CV-02138-HLT-GEB
⁣⁣⁣⁣⁣⁣⁣⁣⁣⁣⁣)
CITY OF BASEHOR, KS and DAVID BREUER⁣⁣⁣)
⁣⁣⁣⁣⁣⁣⁣⁣⁣⁣⁣Defendants.⁣⁣⁣⁣⁣⁣⁣)

**DEFENDANTS' MEMORANDUM
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

COME NOW, Defendants City of Basehor, Kansas and David Breuer, ("Defendants"), by and through their counsel of record, and provide the following Memorandum in support of Defendants' Motion for Summary Judgment.

## I.   INTRODUCTION

Plaintiff Lloyd Martley ("Plaintiff") sues his former employer, the City of Basehor, Kansas, for violation of the Equal Pay Act ("EPA") (29 U.S.C., Chapter 8 sec. 206(d)).  Plaintiff alleges he was paid less wages in his three years as a part time City Administrator/full time Chief of Police than the subsequent full time female City Administrator, Leslee Rivarola ("Rivarola").  During the pendency of the lawsuit, when an issue arose during discovery regarding how Plaintiff reported his City income to Kansas Police and Fire Retirement System ("KP&F"), Plaintiff added claims for EPA retaliation and a 42 U.S.C. § 1983 cause of action for First Amendment retaliation against the City and its Mayor, David Breuer ("Breuer") stemming from an investigation into Plaintiff's reporting of his income to KP&F.

Plaintiff, originally hired by the City of Basehor in 1994 as a police officer, served as Basehor's Chief of Police beginning in 2008.  In June 2009, Plaintiff also assumed the job of part time Interim City Administrator.  In August 2009, the City hired Mark Loughry as the new full

time City Administrator.[1] In September 2011, following Mark Loughry's termination, the City Council appointed Plaintiff as part time Interim City Administrator. On February 18, 2014, pursuant to Resolution 2014-02, Plaintiff was named part time City Administrator. Plaintiff served first as Chief of Police and then, in the time remaining, served second as City Administrator.

Throughout Plaintiff's various terms as City Administrator, his position was always part time. When the City decided to make the City Administrator a full time position, the job description expanded and the qualifications for the position increased. Serving in the role of City Administrator part time, Plaintiff did not perform substantially the same work as the new full time City Administrator. Because of the expanded job description, the full time position, and the greater qualifications, the job paid more. Gender was not a factor in the increase of pay. Plaintiff's EPA claim fails as a matter of law. Because the City took no adverse job action against Plaintiff when it reported his pay irregularities to KP&F, Plaintiff's First Amendment and EPA retaliation claims also fail as a matter of law. Finally, Plaintiff's claims against Defendant Breuer are barred by qualified immunity. Summary Judgment on all counts for the Defendants is warranted and appropriate.

## II.    STATEMENT OF UNCONTROVERTED FACTS

1.    The City of Basehor, Kansas is a municipal corporation and political subdivision of the State of Kansas located in Leavenworth County, Kansas. (Stipulated Fact #3, Doc. 284).

2.    David Breuer was appointed Mayor in March 2012, to complete the term of former Mayor Terry Hill. (Stipulated Fact #3, Doc. 284).

---

[1] Plaintiff fails to recognize that the first time the City hired a full-time administrator to replace his part-time services, that person (male) was paid at a much higher rate because he was filling a full-time position.

3.      David Breuer became the duly elected Mayor of the City of Basehor in April 2013 and served in that capacity until December 31, 2021. (Stipulated Fact #4, Doc. 284).

4.      Plaintiff began working at the City of Basehor in 1994 as a police officer. (Stipulated Fact #5, Doc. 284).

5.      Plaintiff was appointed Chief of Police for the City of Basehor in 2008. (Stipulated Fact #6, Doc. 284).

6.      In June 2009, the City Administrator for the City of Basehor resigned and the City Council appointed Plaintiff to serve as part time Interim City Administrator pursuant to Resolution 2009-08. (Stipulated **Exhibit 1**, Doc. 284, attached hereto; Affidavit of K. Renn, **Exhibit 23,** attached hereto).

7.      Resolution 2009-08 stated that: "The City and Chief Martley agree that Chief Martley's first responsibility is to continue to be in charge of, and provide leadership to, the Basehor Police Department, and that his undertaking of City Administrator duties on a temporary basis will not adversely affect the Governing Body's view of his performance as Police Chief." *Id.*

8.      Resolution 2009-08 stated, ". . . the Governing Body understands and acknowledges that Chief Martley is not trained as a City Administrator and is likely unfamiliar with many of the duties performed by an Administrator." *Id.*

9.      Resolution 2009-08 provided that when the City hired a new City Administrator, Plaintiff would transition out of the role and return to performing full time Police Chief duties. *Id.*

10.     In August 2009, the City hired Mark Loughry as the new full time City Administrator. (Stipulated Fact #8, Doc. 284).

11.     Mark Loughry's base salary as full time City Administrator was $88,000.00 annually, in addition to a $250.00 monthly car allowance. (Loughry Employment Agreement, attached hereto as **Exhibit 3,** Affidavit of K. Renn, **Exhibit 23)**.

12.     Mr. Loughry received a higher salary as full time City Administrator than Plaintiff received as the part time Interim City Administrator. *Id.* (Pl.'s Rule 26 Disclosures 12, LM0005, attached hereto as **Exhibit 5**).

13.     In September 2011, following Mark Loughry's termination, the City Council appointed Lloyd Martley part time Interim City Administrator. (Stipulated Fact #9, Doc. 284).

14.     On February 18, 2014, pursuant to Resolution 2014-02, Plaintiff was named the part time City Administrator until it was determined that a separate, full time City Administrator should be hired. (Stipulated **Exhibit 2**, Doc. 284, attached hereto, Affidavit of K. Renn, **Exhibit 23**).

15.     Resolution 2014-02 stated, "The City and Chief Martley agree that Chief Martley's first responsibility is to continue to be in charge of, and provide leadership to, the Basehor Police Department, and that his undertaking of City Administrator duties on a temporary basis will not adversely affect the Governing Body's view of his performance as Police Chief." *Id.*

16.     Resolution 2014-02 provided that Plaintiff's pay as part time City Administrator, "shall continue at the rate previously established for his as the Interim City Administrator, and shall be subject to cost of living and merit increases." *Id.*

17.     Plaintiff agreed to serve as City Administrator at the rate previously established for him as part time Interim City Administrator and agreed not to enter into an employment contract. *Id.;* (**Exhibit 4**, L. Martley Depo., Vol. I, p. 34: 16-23; p. 35: 8-25, attached hereto).

18.     Plaintiff's salary as part time City Administrator was between $37,000.00 - $39,000.00 annually. (**Exhibit 5,** Pl.'s Rule 26 Disclosures 12, LM0005).

19.     Plaintiff served as part time City Administrator pursuant to the terms of Resolution 2014-02 until he retired in 2018. Stipulated **Exhibit 2**, Doc. 284, Affidavit of K. Renn, **Exhibit 23**).

20.     As the City experienced growth, The City Council and Mayor Breuer determined that the City needed to hire a full time, qualified City Administrator. (**Exhibit 6,** Basehor City Council Planning Retreat, April 27, 2018 Minutes, Deposition Exhibit 103, attached hereto, Affidavit of K. Renn, **Exhibit 23**).

21.     Plaintiff notified the City Council of his retirement as both Police Chief and City Administrator during the June 20, 2018, City Council Meeting. (Stipulated Fact #11, Doc. 284).

22.     Following Plaintiff's retirement, the City worked with Human Resources Consultant Dennis Dumovich in developing a City Administrator job description, job posting and to assist in the search for a new, full time City Administrator. (**Exhibit 7,** K. Renn Depo., p. 72:20- p. 73:1, attached hereto; **Exhibit 8,** Dfs Rule 26 Disclosures CITY00004-CITY00005, attached hereto, Affidavit of K. Renn, **Exhibit 23**; and **Exhibit 16**, Pl's Rule 26 Disclosures, LM0072- LM0073, attached hereto).

23.     In addition, the City conducted an informal salary survey of similarly sized municipalities to determine the market value of a full-time City Administrator. (**Exhibit 10,** D. Breuer Depo., p. 136:9-137:11, attached hereto).

24.     The job posting stated the following qualifications:

> At least five years of progressively responsible experience in municipal government, including three years of administrative and leadership responsibility. Strong managerial experience, economic development experience and the ability to

work closely with the City Council is essential. An exceptional ability to develop effective partnerships required. A Bachelor's degree from an accredited college or university or any equivalent combination of education and experience.

(**Exhibit 8, Exhibit 23**).

25.     The job posting listed the salary for the full time City Administrator at $100,000 or commensurate with experience/qualifications. *Id.*

26.     The job posting stated that the full time City Administrator would be "responsible for managing all city departments and overseeing the finances, personnel, and short and long-range planning of the City of Basehor." (**Exhibits 8 and 23**).

27.     The job posting also stated that the City Administrator would also be responsible for setting program goals and objectives, writing grants, developing and implementing policies, performing public relations, fielding the general public's comments and complaints, coordinating activities with multiple city departments, managing city property, and other duties. *Id.*

28.     City of Basehor Interim City Administrator/City Clerk Katherine Renn and City Attorney Shannon Marcano reviewed applicant submissions for the City Administrator position and narrowed the list to five applicants for council review as reported at the City Council Meeting on November 21, 2018.   (**Exhibit 17,** Dfs Rule 26 Disclosures CITY000043-CITY000045, attached hereto, Affidavit of K. Renn, **Exhibit 23**); (**Exhibit 7,** K. Renn Depo., p. 84:3-10; 86:2-14; and **Exhibit 9,** T. Garver Depo., p. 40:24 – p. 41: 4, attached hereto).

29.     Plaintiff did not apply for the full time City Administrator position when the position was advertised in 2018. (**Exhibit 4,** L. Martley Depo., Vol. II, p. 239: 25- p. 240: 3).

30.     In accordance with City Resolution No. 2019-02, The Basehor City Council authorized Mayor David Breuer to negotiate an employment contract with Leslee Rivarola to serve as the full time City Administrator for the City of Basehor. (**Exhibit 18,** Dfs Rule 26 Disclosures

CITY000049-CITY000052, attached hereto; and **Exhibit 19,** Dfs Rule 26 Disclosures CITY000024-CITY000032, attached hereto, Affidavit of K. Renn, **Exhibit 23**).

31.     The City of Basehor entered into an employment contract with Leslee Rivarola at the City Council Meeting on January 16, 2019, at an annual salary of $117,000.00. *Id.*

32.     On February 6, 2019, Plaintiff's lawyer, Patrick Reavey, sent a letter to Mayor Breuer notifying the City that Plaintiff intended to pursue an EPA claim based on the alleged disparity in compensation paid to him versus Rivarola. (**Exhibit 11**, Deposition Exhibit 35 attached hereto; **Exhibit 22,** S. Marcano Depo., p. 123:1-11, attached hereto).

33.     From the time Plaintiff was first appointed as the part time interim City Administrator until his retirement, he did not have any training on city administration, municipal government or city administrator duties and responsibilities. (**Exhibit 4,** L. Martley Depo., Vol. I, p. 33: 1 – 13).

34.     Plaintiff does not have a four-year college degree. (**Exhibit. 4**, L. Martley Depo., Vol. I, p. 98: 2-15).

35.     Prior to being hired as City Administrator, Leslee Rivarola had 2 years' experience as a Public Works Director, 3 years' experience as an Assistant City Administrator and 3 years' experience as a City Administrator as well as 4 years' experience as a Public Administration Consultant. (**Exhibit 20**, Dfs Rule 26 Disclosures CITY000019-CITY000022, attached hereto, Affidavit of K. Renn, **Exhibit 23**).

36.     Plaintiff was the City's payroll administrator and performed payroll administration during Mr. Loughery's tenure as full time City Administrator and continued to do so when he was appointed as part time Interim City Administrator.  (**Exhibit 4**, L. Martley Depo., Vol. I, p. 51: 13 – p. 53:17).

37.     In 2016, 2017 and 2018, Plaintiff reported his compensation for serving as the City's Police Chief and the City's part time City Administrator to KP&F. (**Exhibit. 4**, L.Martley Depo., Vol. I, p.141:16-142:1; 144: 9-12).

38.     Contributions to KP&F Retirement are to be taken from all compensation earned with the same employer only if the additional work is considered KP&F duty. (**Exhibit 12,** L. McKinnon Depo., p. 185:9-21, attached hereto.)

39.     KP&F duty is defined as policeman or fireman, not City Administrator. (**Exhibit 12,** L. McKinnon Depo., p. 192:15-193:1).

40.     In reviewing Plaintiff's payroll and benefit records after he notified the City that he was bringing a claim for discrimination under the EPA, the City discovered that his total income, including covered and non-covered work had been combined and reported to KP&F. (**Exhibit 13,** L. Rivarola Depo., p. 15:2-14; p.19:7-14; p.46:2-10; p. 49:10-18, p. 93:23 – p. 94:15; City 30(b)(6) Deposition of L. Rivarola, Vol. II p. 300: 5-24, attached hereto).

41.     The City payroll records indicate that 100% of Plaintiff's income was reported to KP&F. (**Exhibit. 13,** L. Rivarola p. 94: 8-15).

42.     If an overpayment or suspicion of overpayment is discovered, the City has a fiduciary obligation to report this to KPERS. (**Exhibit.12,** L. McKinnon Depo., p. 199: 9-15).

43.     The City advised KP&F of Plaintiff's mis-reporting of his income and requested an investigation, which KPERS conducted. (**Exhibit 21,** Pls Rule 26 Disclosures LM0332-0333, attached hereto; and **Exhibit 13,** L. Rivarola Depo., p. 114: 2-10).

44.     Defendant Breuer testified that he did not have any input into the decision to ask the Sheriff's Department to look into Plaintiff's income mis-reporting. (**Exhibit 10,** D. Breuer Depo., p. 98: 16-23).

45.     At the conclusion of its investigation, KPERS notified Plaintiff via written correspondence that based upon its investigation, his compensation as part time City Administrator was erroneously reported to KPERS and included in his KP&F salary, so that it was incorrectly used in his final average salary retirement benefit calculation.  (**Exhibit 14,** Deposition Exhibit 57, attached hereto; **Exhibit. 4**, L. Martley Depo., p. 309: 24 – p. 311: 21; and **Exhibit 12,** L. McKinnon Depo., p. 205:24 – 206: 2)

46.      City Administrator Rivarola and City Attorney Marcano requested the assistance of the Leavenworth County Sheriff's Department in investigating irregular amounts of money contributed by Plaintiff to his KP&F account. (**Exhibit 15,** A. Dedeke Depo., p. 20:14-25, attached hereto).

47.     Sheriff Dedeke believed that the City recognized discrepancies in Plaintiff's income reporting to KP&F and wanted it investigated because he believed that the allegations were worthy of being investigated. (**Exhibit. 15,** A. Dedeke Depo., p. 81:8-20; 101:16-21).

48.     No criminal charges have been made against Plaintiff based on the Leavenworth County Sheriff's Department's investigation. (**Exhibit. 15,** A. Dedeke Depo., p. 151:6-8; 24-p. 152:2); See also, Doc. 3, ¶¶138, 188, 189, Case No.: 2:22-cv-02169, **Exhibit 24,** attached hereto).

## III.    ARGUMENTS AND AUTHORITIES

### A.    <u>Standard For Summary Judgment</u>

Summary judgment is appropriate where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *McDaniels v. McKinna*, No. 03-1231, 2004 WL 887356, *2 (10th Cir. Apr. 27, 2004) (quoting Fed.R.Civ.P. 56(c)).

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once that burden is met, the nonmoving party "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)); *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp.*, 477 U.S. at 325).   There are no material facts at issue that would prevent the grant of summary judgment in favor of Defendants in this case.

### B.  <u>Plaintiff Can Not Support A Claim For Violation of The EPA.</u>

Historically, the City has paid a full time City Administrator more than a part time City Administrator. In June 2009, City Council appointed Plaintiff to serve as part time Interim City Administrator pursuant to Resolution 2009-08. (SOF # 6). In August 2009, the City hired Mark Loughry as the full time City Administrator, with an annual salary of $88,000.00 and a $250.00 monthly care allowance. (SOF # 10 and 11). Following Mark Loughry's termination in September 2011, the City Council appointed Plaintiff as part time Interim City Administrator. (SOF # 13). It is undisputed that Mr. Loughry received a higher salary as full time City Administrator than Plaintiff received as the part time Interim City Administrator. (SOF # 12). At all times he served as part time City Administrator, Plaintiff's salary was between $37,000.00 - $39,000.00 annually. (SOF # 18). Yet, Plaintiff brings an EPA violation claim on the basis of a discrepancy in pay between a full time City Administrator (who happens to be female) and himself, a retired part time City Administrator.

Plaintiff cannot support a claim for violation of the EPA. Plaintiff did not perform substantially similar job duties to the new full time City Administrator and Plaintiff's pay disparity

was based on factors other than sex. To succeed on a claim under the EPA, a plaintiff must prove

that:

> (1) the plaintiff was performing work which was substantially equal to that of
> employees of the opposite sex, taking into consideration the skills, duties,
> supervision, effort and responsibilities of the jobs; (2) the conditions where the
> work was performed were basically the same; [and] (3) employees of the opposite
> sex were paid more under such circumstances.

*Allen v. Garden City Co-Op, Inc.*, 651 F.Supp.2d 1249, 1255 (D. Kan. 2009) (internal citation

omitted). Irrespective of whether the plaintiff can establish a prima facie case under the EPA, the

defendant employer will still succeed on a motion for summary judgment if it can "establish that

the wage disparity was justified because of '(1) a seniority system; (2) a merit system; (3) a pay

system based on quantity or quality of output; [or] (4) a disparity based on any factor other than

sex.'" *Id.* at 1256. To succeed, the employer "must present sufficient evidence such that no rational

jury could conclude but that the proffered reasons actually motivated the wage disparity of which

the plaintiff complains." *E.E.O.C. v. Swift Transp. Co., Inc.*, 120 F. Supp. 2d 982, 986 (D. Kan.

2000) (citing *Stanziale v. Jargowsky*, 200 F.3d 101, 108 (3rd Cir. 2000)). The defendant need only

prove one of the "affirmative defense[s]" so that "no rational jury could find to the contrary." *Id.*

(internal citation omitted).

### 1.     Plaintiff did not perform substantially similar job duties as full time City Administrator Rivarola.

Plaintiff fails to establish a prima facie case for a violation of the EPA because Plaintiff

and Ms. Rivarola did not perform substantially similar duties and responsibilities in their

employment with the City. To establish a prima facie case under the EPA, a plaintiff must

demonstrate "that employees of the opposite sex were paid differently for performing substantially

equal work." *Mickelson v. New York Life Ins. Co.*, 460 F.3d 1304, 1311 (10th Cir. 2006). "Work

is 'substantially equal' for purposes of the EPA if it requires 'equal skill, effort, and responsibility.' 29 U.S.C. § 206(d)(1). This determination turns on the actual content of the job—not mere job descriptions or titles. *Riser v. QEP Energy*, 776 F.3d 1191, 1196 (10th Cir. 2015) (citing *EEOC v. Cent. Kan. Med. Ctr.,* 705 F.2d 1270, 1273 (10th Cir.1983), *overruled on other grounds by McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133 n. 10, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988)). The fact that Plaintiff and Rivarola both shared the title City Administrator is not controlling. Rather, the question is whether they performed the same job – including time spent and duties performed.

The Tenth Circuit does "not construe the 'equal work' requirement of the EPA broadly, and [has] stated that failure to furnish equal pay for 'comparable work' or 'like jobs' is not actionable." *Lewis v. D.R. Horton, Inc.*, 375 F. App'x 818, 823 (10th Cir. 2010) (internal citations omitted). "At the same time, the jobs need not be identical, but rather, they must be 'substantially equal.'" *Id.* To satisfy this burden, "there must be evidence that [the plaintiff] performed substantially *all* of the duties of a higher-paid co-worker, and not simply that a higher-paid co-worker took over *some* of [the plaintiff's] job duties." *Id.* (granting summary judgment for employer and finding that the plaintiff and higher paid co-worker did not perform substantially similar work and reasoning that co-workers' statement that he "took a lot of responsibilities that were part of the responsibility of the CFO position, that prior to [him] starting, that [plaintiff] was doing" was not sufficient to support an inference that the plaintiff and co-worker performed substantially equal work" and without sufficient evidence to compare the jobs at issue, the plaintiff failed to meet her prima facie case under the EPA.); *see, e.g., Miller v. Auto. Club of N.M., Inc.*, 420 F.3d 1098, 1119 (10th Cir. 2005) *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 ("[T]he record makes clear that

while Ms. Miller did perform some of the duties that were included in the newly created post, she did not perform all of those duties. She simply has not made a *prima facie* case that the jobs were substantially similar.").

In *Daniels v. United Parcel Service, Inc.*, the District of Kansas granted summary judgment in favor of the employer because the plaintiff failed to show her job was substantially similar to the higher-paid co-worker. 797 F.Supp.2d 1163, 1192 (D. Kan. 2011). The Court reasoned that the plaintiff "did not perform *all* of the duties of [the full-time supervisors]." *Id.* The uncontroverted facts showed that the "differences in job duties and responsibilities between the dispatch specialist position and the full-time supervisor position were significant." *Id.* Significantly, "dispatch specialists were not responsible for discharging, evaluating, training, or disciplining subordinate employees and full time supervisors were required to cover the twilight window." *Id.* Without performing these duties, the plaintiff could not show that her job duties were substantially equal to the higher paid male co-workers. *Id.*

Performance of a fraction of the job duties is insufficient for a claim of "substantially equal work" under the EPA. Plaintiff and Rivarola **did not** perform "substantially equal work." Plaintiff was a part time City Administrator performing the job functions of City Administrator on a *part time basis.* (SOF # 6 and 14).  When the City hired a new City Administrator, it was hiring for a full time position, and it is undisputed that Ms. Rivarola serves as the full time City Administrator for the City of Basehor. The part time nature of Plaintiff's service as the City Administrator is evidenced by both Resolutions naming Plaintiff as the part time Interim and then part time City Administrator.  (SOF # 6 and 15).  Both Resolutions specify the part time nature Plaintiff's role as City Administrator as part-time by clarifying that his first responsibility is to be the Chief of Police. The 2014 resolution specified: "The Governing Body has determined that Chief Plaintiff shall be

the City Administrator, <u>until it is determined that a separate, full time City Administrator should be hired.</u>"  (SOF #15).

Clearly serving in a position only part-time does not meet the first element of a claim for violation of the EPA.  Summary Judgment in favor of Defendants for Plaintiff's EPA violation claim on this argument alone is warranted.

### 2.      **Plaintiff's pay differential was made pursuant to a merit system, *inter alia.***

The City used a merit system when determining to pay Rivarola a higher salary than it paid Plaintiff.  Therefore, that higher salary did not violate the EPA.  Merit systems must use organized, predetermined, systematic evaluating criteria. See *Grove v. Frostburg Nat'l Bank*, 549 F. Supp. 922, 934 (D. Md. 1982); *EEOC v. Shelby County Government, Bd. of County Comm'rs*, 707 F. Supp. 969, 984 (W.D. Tenn. 1988). Appropriate criteria include skill, prior experience, and quantity of work. See *Fedrick v. Wichita State University*, 1988 U.S. Dist. LEXIS 13901, at *12, 21–22 (D. Kan. Nov. 10, 1988) (finding the "merit system" exception met when a college math department's chairman made salary increase recommendations for professors based on a points system in which he allocated points for "hours taught, their service on committees, any grants, research publications, other publications, professional development activities, service, and other relevant matters"); *Ambrose v. Summit Polymers, Inc.*, 172 Fed. Appx. 103, 107 (6th Cir. 2006) (granting summary judgment when the defendant determined new employees' starting salaries based on their relevant prior experience as well as market conditions, which determined how much the defendant would have to offer to convince prospective employees to leave their current jobs).

The City paid Rivarola more than it had paid Plaintiff because Rivarola had greater experience and education than Plaintiff, and would be required to perform a greater quantity of

work. (SOF #31 and 35).  Rivarola had 12 years of relevant experience (5 more than Plaintiff had) and had a Bachelor's degree. (SOF #35).  Therefore, she demonstrated greater experience and education, which together suggest greater skill, than Plaintiff possessed.  Rivarola was also required to work full time, whereas Plaintiff had only worked part time in the role of City Administrator.  Therefore, the City required her to produce a higher quantity of work than it did of Plaintiff. By paying Rivarola more because of her superior experience, skill, and quantity of work, the City was using a merit system. Therefore, summary judgment should be entered in favor of Defendants as to Plaintiff's EPA violation claim because they did not violate the EPA.

### 3.      Plaintiff's pay differential was based on factors, those of which did not include his gender.

Even assuming *arguendo* that Plaintiff could demonstrate that in his part time capacity, he performed substantially similar work as the full time City Administrator, Plaintiff's EPA claim still fails.   Plaintiff's wage disparity was based on factors other than sex, namely based on his part-time status, the acknowledged lack of experience and lack of educational background.  Most importantly, it is uncontroverted that in hiring a full time Administrator, any applicant being hired was going to be paid more than Plaintiff was earning in his part time capacity. (SOF # 25). Clearly the differential in pay was not based on gender and summary judgment is appropriate.

An employer will succeed on a motion for summary judgment where it provides that its reasons for providing a wage disparity was based on factors other than sex. *Casalina v. Perry*, 708 Fed.Appx. 938, 941 (10th Cir. 2017) (citing *Riser v. QEP Energy*, 776 F.3d 1191, 1198 (10th Cir. 2015)). "Courts have determined that an individual's experience, market value, management potential, and former salary are "factors other than sex" as defined under 29 U.S.C. § 206(d)(1), and thus permit an employer to pay higher salaries based on these factors." *Varley v. Superior*

*Chevrolet Auto. Co.*, No. CIV. A. 96-2119-EEO, 1997 WL 161942, at *11 (D. Kan. Mar. 21, 1997); *Casalina*, 708 Fed.Appx. at 941 (citing *Mickelson v. N.Y. Life Ins. Co.*, 460 F.3d 1304, 1312 (10th Cir. 2011)). Similarly, "[w]here a pay differential is not based on sex, but rather, is 'attributable to the existence of two distinct salary programs, neither of which had sex discrimination as a purpose or as an effect,' the EPA is not violated." *Id.*   In *Casalina v. Perry*, the plaintiff alleged that her employer violated the EPA by paying her male co-employee ("Decker") counterpart a higher wage for substantially the same duties and responsibilities. *Id.* at 940. The Tenth Circuit granted the employer's motion for summary judgment finding that the pay disparity was based on factors other than sex. *Id.* at 941-942. The Court reasoned that the plaintiff had less experience than Decker, that Decker had a more extensive educational background for the position than plaintiff, that Decker was under a different salary plan implemented to achieve different goals in hiring and retaining employees, and that the plaintiff's male predecessor received a similar salary to plaintiff. *Id.*

Similarly, the wage disparity was completely justified between Ms. Rivarola and Plaintiff. Analogous to Decker in *Casalina*, Ms. Rivarola was significantly more qualified than Plaintiff in both her extensive education and her prior experience in public administration.  Ms. Rivarola had 2 years' experience as a Public Works Director, 3 years' experience as an Assistant City Administrator and 3 years' experience as a City Administrator as well as 4 years' experience as a Public Administration Consultant. (SOF #35). In contrast, Plaintiff has no college degree, no training in public administration and only has 'on the job experience' for 7 years' with the City of Basehor when he resigned.[2] (SOF #33 and 34).

---

[2] Martley concedes that Ms. Rivarola was qualified for the position, but dismisses her qualifications as mere 'credentials to hang on a wall.' (**Ex. 4,** L. Martley Depo., p. 215: 10-18)

Further, similar to the different and pre-determined salary plan upon the hiring of Decker, when the City decided to hire a full time City Administrator it made it clear that it desired relevant experience and education and also clearly stated that the salary would be $100,000.00 or commensurate with experience. It is uncontroverted that anyone hired as the new City Administrator – regardless of gender – was going to be paid more than Plaintiff received in his part time role. From the start, there was a predetermined salary and predetermined qualifications and experience for hiring the desired employee. (SOF # 24 and 25). In addition, the City conducted an informal salary survey of similarly sized municipalities to determine the market value of a full-time City Administrator. (SOF # 23). Ms. Rivarola's salary is in line with the market for City Administrators in similarly sized municipalities.[3] Moreover, this case is even further removed than that of *Casalina*. Here, Plaintiff did not complain of inadequate wages during the time he was employed with the City. Additionally, it is stipulated that Plaintiff was only a *part-time* City Administrator. (SOF # 18). Accordingly, because of Ms. Rivarola's extensive qualifications in her education and experience, the City's published job description, published salary range, hiring plan for the required applicants, the informal salary survey, and that Plaintiff never complained about his salary while he worked in this position and was only employed as a part-time employee in this position, the City clearly considered factors other than sex in determining Ms. Rivarola's salary. Most telling is that the salary for anyone being hired as the full time City Administrator was going to be substantially more that Plaintiff was receiving.  Gender played no role in the salary the new City Administrator was paid. Plaintiff's EPA claim fails as a matter of law because the City based Ms. Rivarola's salary on a basis other than her gender.

---

[3] Plaintiff in fact had a salary survey commissioned while he was the part-time City Administrator that showed the average salary for a full time City Administrator was over $100,000.00 (**Ex. 4,** L. Martley Depo., p. 185: 5-19).

### C.  **Plaintiff Can Not Support A Claim For EPA Retaliation.**

Plaintiff's claim for retaliation under the EPA fails as a matter of law because no retaliation occurred and there is no adverse action and there is no causal connection between Plaintiff's activity and the allegedly adverse action. "Retaliation claims brought under the EPA/Fair Labor Standards Act ("FLSA") are subject to the same burden-shifting analysis brought under Title VII." *Allen v. Garden City Co-op, Inc.*, 651 F. Supp. 2d 1249, 1258 (D. Kan. 2009) (citing *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1393-94 (10th Cir. 1997)). For retaliation, a plaintiff must prove: "(1) he or she engaged in activity protected by the FLSA; (2) he or she suffered adverse action by the employer subsequent to or contemporaneous with such employee activity; and (3) a causal connection existed between the employee's activity and the employer's adverse action." *Id.* (citing *Pinkerton v. Colo. Dep't of Transp.*, 563 F.3d 1052, 1064 (10th Cir. 2009)). Notably, it is immaterial whether the plaintiff is male or female, reverse discrimination is actionable. *Argo v. Blue Cross and Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006).

### 1.  **Plaintiff did not suffer any adverse action.**

Plaintiff's claim for retaliation fails because he was not retaliated against and he did not suffer any adverse action.  After receiving notice that Plaintiff was advancing a claim for violation of the EPA because the City was compensating its new City Administrator at a higher salary than Plaintiff received in his part time position, the City learned that Plaintiff's total income, including covered and non-covered work had been combined and reported to KP&F.  (SOF #40 and 41).  ). Contributions to KP&F Retirement are to be taken from all compensation earned with the same employer only if the additional work is considered KP&F duty. (SOF # 38).  KP&F duty is defined as policeman or fireman, not City Administrator. (SOF # 39).  The City reported the income mis-reporting to KPERS for investigation, and then requested assistance from the Leavenworth County

Sheriff's Department. (SOF #43 and 46). Plaintiff claims the Defendants retaliated against him by referring the KP&F retirement reporting matter to the Sheriff's office for investigation, contending that the only reason the report was made was because he filed a suit for violation of the EPA.

Investigation and filing of a police report does not constitute an adverse action for purposes of retaliation. "A materially adverse employment action is one that 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Spencer v. Virginia State University*, 224 F. Supp. 3d 449, 459 (E.D. Va. 2016) (citing *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 165 L.Ed.2d 345 (2006)); *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1123 (10th Cir. 2007) ("the employer's actions must be harmful to the point that they could well dissuade a reasonable worker form making or supporting a charge of discrimination").

A criminal investigation, without more, does not constitute an adverse action. The Tenth Circuit has recognized that a criminal charge that leads to a criminal trial may constitute an adverse action because it "carries a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects." *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 984, 986 (10th Cir. 1996). However, when a criminal investigation ends without any charge or trial, courts have held that this did not constitute an adverse action. For example, the Tenth Circuit has also held that filing a police report, allegedly in retaliation against an employee's harassment claim, was not an adverse action. *Dick v. Phone Directories Co., Inc.*, 397 F.3d 1256, 1269 (10th Cir. 2005). The court explicitly distinguished its prior holding in *Berry* because no charge or trial had occurred. *Id.* In a more recent case, the Tenth Circuit again distinguished *Berry* because no charge or trial resulted from the criminal investigation. *Lincoln v. Maketa*, 880 F.3d 533, 540-541 (10th Cir. 2018). Finally, this Court dismissed a retaliation claim against former defendant Rivarola in the

instant case, agreeing with the Tenth Circuit that "[s]omething more [than a criminal investigation' is required to rise to the level of an adverse action." *Martley v. Basehor,* 537 F. Supp. 3d 1260, 1267 (D. Kan. 2021). Plaintiff has merely claimed that he was criminally investigated. He has alleged no facts suggesting that he was criminally charged or tried. No charges have been filed against Plaintiff. (SOF # 48). He never faced trial or prosecution from the reporting. Any publicity of his criminal investigation occurred because he filed two lawsuits related to it. Aside from conclusory statements, there are not facts before the Court that the report to law enforcement and subsequent investigation was an adverse action. Therefore, Plaintiff has failed to plead facts alleging an adverse action. Because there is no adverse action, Plaintiff's EPA retaliation claim fails as a matter of law and summary judgment in favor of Defendants is warranted.

### D.   Plaintiff Fails to State a Claim for Retaliation under the First Amendment.

Similar to his claims for retaliation under the EPA, Plaintiff's First Amendment retaliation claim also fails as a matter of law. A First Amendment retaliation claim requires plaintiff to establish that he (1) engaged in a constitutionally protected activity, (2) the defendant's actions caused the plaintiff to suffer an injury that would chill a person from engaging in constitutionally protected activity, and (3) the defendant's actions were substantially motivated as a response to the constitutionally protected activity. *Salemi v. Colo.Pub. Employees' Ret.Ass'n,*, 747 F.App'x 675, 698 (10th Cir. 2018). Plaintiff has the burden of demonstrating the violative nature of the conduct at issue. *Knopf v. Williams,* 884 F.3d 939, 944 (10th Cir. 2018). Although the second factor differs slightly from the adverse-action standard for retaliation under the EPA, the Tenth Circuit has found that they are analogous. *Lincoln*, 880 F.3d at 540.

In *Lincoln*, a sheriff's deputy brought a First Amendment retaliation claim under Section 1983 after the sheriff conducted a pretextual criminal investigation into whether the deputy had improperly taken an internal affairs document.  The plaintiff alleged that the investigation was in retaliation for his support for a political opponent of the sheriff.  The plaintiff cited *Berry* to support his claim that the criminal investigation was an adverse employment action.  The *Lincoln* court distinguished *Berry* because unlike in *Berry* where the plaintiff was facing a criminal *trial*, the *Lincoln* case only involved an *investigation*.  *Id*. at 540 (citing *Belcher v City of M*cAlester, 324 F.3d 1203, 1207 n. 4 (10th Cir. 2003) ("If the action taken by the employer . . . has only speculative consequences, there can be no basis for a First Amendment claim.").  "A workplace investigation generally does not constitute an adverse employment action."  *Id*. (citing *Couch v. Bd. of Trs. of Mem'l Hosp. of Carbon County*, 587 F.3d 1223, 1235-36 (10th Cir. 2009).  The fact that the investigation in *Lincoln* had a criminal aspect to it did not necessarily create an adverse employment action.  *Id*. (citing *Dick v. Phone Directories Co*., 397 F.3d 1256, 1269 (10th Cir. 2005) (holding that an employer's instruction to the plaintiff's coworkers to file a police report against the plaintiff did not constitute an adverse employment action).

Plaintiff relies on the same set of operative facts – that the request for investigation into his income mis-reporting – was retaliation for exercising his rights under the First Amendment in filing a lawsuit.  Again, Plaintiff has no facts to support the second element of his claim.  The Tenth Circuit has held that the second element is analogous to the "adverse action" element of an EPA retaliation claim.  *Lincoln v. Maketa*, 880 F.3d 533, 540 (10th Cir. 2018).  As explained previously, a criminal investigation alone is not an adverse action.  This Court used this reasoning to find that previous defendant Rivarola, another city employee, could not be liable for First Amendment retaliation.  *Martley v. Basehor*, 537 F. Supp. 3d 1260, 1267 (D. Kan. 2021).

Therefore, Plaintiff is unable to support this second element for the same reasons he is unable to prove an "adverse action."[4]

Plaintiff also fails to meet the third element for a retaliation under the First Amendment because there is no evidence that the Defendant's actions were substantially motivated as a response to Plaintiff's Petition.  As explained previously, Plaintiff has not provided any evidence – other than his allegation of temporal proximity – to support his claim that the City investigated his income statements in retaliation for his lawsuit.  Plaintiff admits that he reported his total compensation – both covered and non-covered work -- to KP&F, claiming that he was told to do so by KP&F.  The City, in providing facts and documents to the sheriff's office to investigate KP&F contributions that Plaintiff admits were made, cannot be retaliatory because the facts are undisputed that Plaintiff contributed to KP&F based upon his total compensation.  Further, the reporting of potential criminal activity is a civic duty that satisfies an important public policy and is therefore not retaliatory. See *Palmer v. Brown*, 242 Kan. 893, 899 (Kan. 1988).  The City of Basehor is a steward of taxpayer dollars. According to the attorney for KPERS, if an overpayment is discovered, the City has a fiduciary obligation to report it to KPERS. (SOF # 42). Therefore, Plaintiff is unable to support this third element.

Again, Plaintiff makes no claim that the criminal investigation was made public or that it resulted in humiliation, damage to reputation, or harm to his future employment prospects.  *Lincoln* at 541.   No criminal charges have been made against Plaintiff based on the Leavenworth County Sheriff's Department's Investigation. (SOF # 48). Plaintiff's claims for retaliation under the First

---

[4] Far from chilling Plaintiff from engaging in a constitutionally protected activity, Plaintiff's actions have demonstrated the opposite in that he has filed a second suit seeking redress for the same claims.

Amendment are based on the same conduct as previously discussed in his EPA Retaliation claim. Defendants are entitled to entry of summary judgment because as set forth previously, there has been no adverse action.

      **E.    Defendant Breuer is entitled to qualified immunity and Plaintiff's claims against him individually fail as a matter of law.**

The qualified immunity defense shields government officials from liability when performing discretionary functions, where the conduct of the government official "does not violate clearly established rights of which reasonable government officials would have known." *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006) (quoting *Perez v. Unified Gov't of Wyandotte County/Kansas City, Kansas*, 432 F.3d 1163, 1165 (10th Cir. 2005)). Generally, there are two elements that must be satisfied for the application of qualified immunity: "(1) the defendant officer violated a clearly established constitutional right; and (2) the infringed right at issue was clearly established at the time of the allegedly unlawful activity such that 'every reasonable official would have understood what he was doing' violated the law." *Kerns v. Bader*, 663 F.3d 1173 (2011) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011)). This is a "heavy, two-part burden" that the plaintiff must meet. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir.2001) (quoting *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir.1995)). Failure on either element is fatal to the plaintiff's claims. *Kerns v. Bader*, 663 F.3d 1173, 1180 (10th Cir.2011). The plaintiff bears this heavy burden because we presume that law enforcement officers "are immune from lawsuits seeking damages for conduct they undertook in the course of performing their jobs." *Id.*

When considering whether a particular constitutional right is clearly established, "it is 'not enough to look at,' and declare a law enforcement officer liable, based on … 'generalized

principles.'" *Id*. at 1182 (quoting *Medina v. City and County of Denver*, 960 F.2d 1493, 1497-98 (10th Cir. 1992)). In fact, the United States Supreme Court has historically "vigorously underscored the point" that courts should not "define clearly established law at a high level of generality." *Id*. (citing *Ashcroft*, 536 U.S. 731. 131 S.Ct. 2074, 2083). "The general proposition, for example, that an unreasonable search and seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established." *Id*. (quoting *Ashcroft*, 131 S.Ct. at 2084). Rather, the correct question is whether a "reasonable official would have understood that *what he did* violated that right." *Id*. (quoting *Ashcroft*, 131 S.Ct. at 2084 (emphasis added by *Kerns* Court, brackets from *Kerns* quotation of *Ashcroft* decision omitted)). "To satisfy this standard, 'we do not require a case directly on point, but neither may a district court deny immunity unless 'existing precedent has placed the statutory or constitutional *question beyond debate*." *Id*. (quoting *Ashcroft*, 131 S.Ct. at 2084 (emphasis added by *Kerns* Court, brackets from *Kerns* quotation of *Ashcroft* decision omitted)).

There is no clearly established case law that commissioning a criminal investigation is an adverse action that would deter a reasonable person from exercising his or her First Amendment Rights.  The Supreme Court has declined to consider whether a retaliatory criminal investigation entails a constitutional violation. *Hartman v. Moore*, 547 U.S. 250, 262 n.9, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006). The Tenth Circuit held in *Lincoln* that "an investigation is a far cry from formally filing charges and bringing someone to trial," and "that the investigation had a 'criminal' aspect does not necessarily create an adverse employment action," *Lincoln*, 880 F.3d at 540 (citation omitted). The Tenth Circuit ultimately held in *Lincoln* that qualified immunity applied because the plaintiff failed to demonstrate that a criminal investigation would "obviously" constitute an adverse employment action. *Id.* at 541.  The uncontroverted facts demonstrate that

Defendant Breuer did not violate a clearly established constitutional law and qualified immunity operates to bar Plaintiff's claims. Defendant Breuer testified that he did not have any input into the decision to ask the Sheriff's Department to look into Plaintiff's income mis-reporting. (SOF # 44). There is no evidence that Breuer's participation in the investigation of the complaint was unreasonable given Plaintiff's admission that he based his KP&F contributions on his total compensation.

In dismissing identical claims Plaintiff attempted to assert against Leslee Rivarola, this Court followed *Lincoln*, finding that, "a First Amendment retaliation claim based on the instigation of a criminal investigation is <u>not</u> a clearly established constitutional issue." *Martley v. Basehor, Kansas, City Of, et.al.* 537 F.Supp.3d, 1260, 1268 (D. Kan. 2021) (emphasis added) (citing *Lincoln*, 880 F.3d at 540-541). This Court went on to find that because "neither the Supreme Court nor the Tenth Circuit has settled the question of whether or when a retaliatory criminal investigation can form the basis of a constitutional violation," qualified immunity applied. *Id.* (citing *Lincoln*, 880 F.3d at 541). Because there are no Supreme Court or Tenth Circuit cases that commissioning a criminal investigation would serve as a basis for violation of the First Amendment, and because Defendant Breuer's posture is analogous to that of Rivarola, Defendant Breuer is entitled to qualified immunity and summary judgment in favor of Defendant Breuer is warranted.

## VI.    CONCLUSION

Plaintiff's claim for violation of the EPA fails as a matter of law. The City of Basehor's compensation decisions for the subsequent full time City Administrator were founded on the position's increased job duties and responsibilities, the City's desired qualifications for prior experience and education, and full time nature, rather than gender. Ms. Rivarola's compensation

is commensurate with her experience, education and the increase the quantity of work to be performed. Plaintiff's work was not substantially similar to the scope of Ms. Rivarola's job duties. Therefore, Plaintiff's claim for violation of the EPA fails as a matter of law and summary judgment must be entered in favor of Defendants.

Plaintiff's claims for retaliation under the EPA and First Amendment also fail as a matter of law. The mere reporting and investigation of Plaintiff's mis-reporting of his own income is not an adverse action. With regard to Plaintiff's First Amendment retaliation claim, there is not clearly established constitutional issue. The City of Basehor is a steward of its constituents' tax funds. Because of public policy and of its duty to its citizens, the City of Basehor reported Plaintiff's mis-reporting of income. However, the investigation did not result in a trial or prosecution of Plaintiff and therefore no adverse action has been taken. *Lincoln v. Maketa*, 880 F.3d 533, 540-541 (10th Cir. 2018).

Finally, Plaintiff's claims against David Breuer fail as a matter of law because of qualified immunity. "The doctrine of qualified immunity protects public officials from civil liability as long as they do not 'violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Lincoln*, 880 F.3d at 537 (citing *Mullenix v. Luna*, -- U.S. --, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009))).

WHEREFORE, For the reasons set forth herein, Defendants, City of Basehor, Kansas and David Breuer respectfully request the Court enter an Order granting summary judgment and dismissing Plaintiff claims with prejudice, and issue such other relief as the Court deems just and proper.

Respectfully submitted,

HINKLE LAW FIRM LLC
8711 Penrose Lane, Suite 400
Lenexa, Kansas 66219-8197
913-345-9205/ FAX: 913-345-4832

By: _/s/ Michelle R. Stewart_
    Michelle R. Stewart, mstewart@hinklaw.com    #19260
    Suzanne R. Bruss, sbruss@hinklaw.com        #22959

**And**

LEWIS BRISBOIS BISGAARD & SMITH LLP
1605 N. Waterfront Parkway, Suite 150
Wichita, KS 67206
(316) 609-7900 / Fax: (316) 462-5746


/s/ _Alan L. Rupe_
Alan L. Rupe, alan.rupe@lewisbrisbois.com        #08914

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 6 day of June, 2022, the foregoing _Defendant's Memorandum in Support of Motion for Summary Judgment_ was filed electronically with the Clerk of the US District Court for the District of Kansas; and a copy was served via ECF electronic notification only on the following:

Patrick G. Reavey, #17291 (preavey@reaveylaw.com)
REAVEY LAW, LLC
1600 Genessee, Suite 203
Livestock Exchange Building
Kansas City, Missouri 64102
816-474-6300 / Fax: 816-474-6302
_Attorneys for Plaintiff_

        /s/ _Michelle R. Stewart_
        ATTORNEYS FOR DEFENDANTS